FILED
2022 Jul-25  PM 05:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 9

Part 2 of 3
George Rotramel Deposition Exhibits 3-11

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

DAVIS PRODUCT CREATION
AND CONSULTING, LLC d/b/a
BEESNTHINGS,

      Plaintiff,

v.

Case No.: 1:19-cv-00848-CLM

BRIAN BLAZER d/b/a
CARPENTER BEE SOLUTIONS,

      Defendant.

### NOTICE OF DEPOSITION OF DR. GEORGE L. ROTRAMEL

    To:    Dr. George L. Rotramel
           Rubin Anders
           1309 Beacon Street, Suite 300
           Brookline, MA 02446

    PLEASE TAKE NOTICE that the deposition of Dr. George L. Rotramel by oral

examination will be taken under oath before a qualified court reporter on June 16, 2022 at 9:00

a.m. at the offices of Hansen Reynolds LLC, 150 S. Wacker Dr., 24th Floor, Chicago, Illinois

60606 and will continue from day to day until completed.

    Dated this 8th day of June, 2022.

                    By: /s/Joseph J. Jacobi
                       Joseph J. Jacobi, *admitted pro hac vice*
                       Hansen Reynolds LLC
                       150 S. Wacker Dr., 24th Floor
                       Chicago, IL 60606
                       Telephone: 312-818-5696
                       Facsimile: 414-273-8476
                       Email: jjacobi@hansenreynolds.com



EXHIBIT 3
Rotramel
6-11-22   MH

Jeremy Adelson, *admitted pro hac vice*
Hansen Reynolds LLC
301 N. Broadway, Suite 400
Telephone: 414-455-7676
Facsimile: 414-273-8476
Email: jadelson@hansenreynolds.com


Steven M. Brom
Alabama Bar No. ASB-2541-N74B
Bachus Brom & Taylor, LLC
3536 Independence Drive
Birmingham, AL 35209
Telephone: 205-970-7775
Facsimile: 205-970-7776
Email: sbrom@bachusbrom.com

*Counsel for Defendant Brian Blazer,
d/b/a Carpenter Bee Solutions*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June 2022, I served the forgoing notice of

deposition via email on the following:

> C. Gregory Burgess
> Jeremy A. Smith
> LANIER FORD SHAVER & PAYNE P.C.
> PO Box 2087 (35804)
> 2101 West Clinton Avenue, Suite 102
> Huntsville, AL 35805
> Email: cgb@lanierford.com
> Email: jas@lanierford.com

> *s/Joseph J. Jacobi*
> Joseph J. Jacobi

3

Davis Product Creation and Consulting v Brian Blazer
Case No.: 1:19-cv-00848 CLM

### EXPERT REPORT

This case concerns carpenter bee traps and patents related to the same.

My opinions on the disputed claims in these patents are based on my personal experience with carpenter bees, insect traps and trapping methods, and reviewing the following materials:

Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions
Defendant/Counter-Plaintiff's Preliminary Infringement Contentions
Defendant Brian Blazer's Answer, Affirmative Defenses, and Counter Claims
Plaintiff's Second Amended Complaint
Defendant's Preliminary Invalidity Contentions and the prior art cited therein
Plaintiff's Preliminary Invalidity Contentions and the prior art cited therein
Deposition of Brian Blazer
The *Markman* Order entered in this matter.
U.S. Patent No. 6,138,402 ('402 patent)
U.S. Patent No. 5,231,792 ('792 patent)
U.S. Patent No. 7,757,432 ('432 patent)
U.S. Patent No. 7,766,611 ('611 patent)
U.S. Patent No. 8,375,624 B2 ('624 patent)
U.S. Patent No. D672, 426 ('428 patent)
U.S. Patent No. D690,384 ('384 patent)
U.S. Patent No. RE46,421 ('421 patent)
Hedges, S.A. (Editor). 2011. Handbook of Pest Control 10th Edition. Pp 845-47.
Olkowski, W., Daar, S., and Olkowski, H. 1991. Common-Sense Pest Control. Pp 451-53.

## BLAZER'S CARPENTER BEE TRAPS INFRINGE CLAIMS OF DPCC'S '611 PATENT

In my opinion:

Blazer's The Best Bee Trap, Simple Box Bee Trap, Super Bee Condo, Milled Bee Trap, Tall Bee Trap, Large Bee Trap and Cabin Style Bee Trap all infringe Claim 1, Claim 4 and Claim 6 of DPCC's '611 patent.

Blazer's The Best Bee Trap infringes Claim 1 of DPCC's '611 patent because the housing of The Best Bee Trap has a hollow interior with an entry hole for bees to enter. In addition, the Best Bee Trap infringes Claim 1 of DPCC's '611 patent because the diameter of the entrance hole is within the range claimed in the '611 patent and the interior wall of the hole is flat. And finally, like the traps claimed in the '611 patent, the trap does not contain bait.

Blazer's The Best Bee Trap infringes Claim 4 of DPCC's '611 patent because the interior surfaces of The Best Bee Trap are smooth.

1

Blazer's The Best Bee Trap infringes Claim 6 of DPCC's '611 patent because the diameter of the hole in the housing of the Best Bee Trap is within the range of from 5/16 to ½ inches.

Blazer's Simple Box Bee Trap infringes Claim 1 of DPCC's '611 patent because the housing of The Best Bee Trap has a hollow interior with an entry hole for bees to enter. In addition, the Simple Box Bee Trap infringes Claim 1 of DPCC's '611 patent because the diameter of the entrance hole is within the range claimed in the '611 patent and the interior wall of the hole is flat. And finally, like the traps claimed in the '611 patent, the Simple Box Bee trap does not contain bait.

Blazer's Simple Box Bee Trap infringes Claim 4 of DPCC's '611 patent because the interior surfaces of The Simple Box Bee Trap are smooth.

Blazer's Simple Box Bee Trap infringes Claim 6 of DPCC's '611 patent because the diameter of the hole in the housing of the Best Bee Trap is within the range of from 5/16 to ½ inches.

Blazer's Super Bee Condo trap infringes Claim 1 of DPCC's '611 patent because the housing of the Best Bee Trap has a hollow interior with an entry hole for bees to enter. In addition, the Super Bee Condo trap infringes Claim 1 of DPCC's '611 patent because the diameter of the entrance hole is within the range claimed in the '611 patent and the interior wall of the hole is flat. And finally, like the traps claimed in the '611 patent, the Super Bee Condo trap does not contain bait.

Blazer's Super Bee Condo Trap infringes Claim 4 of DPCC's '611 patent because the interior surfaces of The Super Bee Condo Trap are smooth.

Blazer's Super Bee Condo Trap infringes Claim 6 of DPCC's '611 patent because the diameter of the hole in the housing of the Super Bee Condo Trap is within the range of from 5/16 to ½ inches.

Blazer's Milled Bee Trap infringes Claim 1 of DPCC's '611 patent because the housing of the Milled Bee Trap has a hollow interior with an entry hole for bees to enter. In addition, the Milled Bee Trap infringes Claim 1 of DPCC's '611 patent because the diameter of the entrance hole is within the range claimed in the '611 patent and the interior wall of the hole is flat. And finally, like the traps claimed in the '611 patent, Blazer's Milled Bee trap does not contain bait.

Blazer's Milled Bee trap infringes Claim 4 of DPCC's '611 patent because the interior surfaces of the Milled Bee Trap are smooth.

Blazer's Milled Bee Trap infringes Claim 6 of DPCC's '611 patent because the diameter of the hole in the housing of the Milled Bee Trap is within the range of from 5/16 to ½ inches.

Blazer's Tall Bee Trap infringes Claim 1 of DPCC's '611 patent because the housing of Blazer's Tall Bee Trap has a hollow interior with an entry hole for bees to enter. In addition, the Tall Bee Trap infringes Claim 1 of DPCC's '611 patent because the diameter of the entrance hole is within the range claimed in the '611 patent and the interior wall of the hole is flat. And finally, like the traps claimed in the '611 patent, the Tall Bee Trap does not contain bait.

Blazer's Tall Bee Trap infringes Claim 4 of DPCC's '611 patent because the interior surfaces of the Tall Bee Trap are smooth.

Blazer's Tall Bee Trap infringes Claim 6 of DPCC's '611 patent because the diameter of the hole in the housing of the Tall Bee Trap is within the range of from 5/16 to ½ inches.

Blazer's Large Bee trap infringes Claim 1 of DPCC's '611 patent because the housing of the Large Bee Trap has a hollow interior with an entry hole for bees to enter. In addition, the Large Bee Trap infringes Claim 1 of DPCC's '611 patent because the diameter of the entrance hole is within the range claimed in the '611 patent and the interior wall of the hole is flat. And finally, like the traps claimed in the '611 patent, the trap does not contain bait.

Blazer's Large Bee Trap infringes Claim 4 of DPCC's '611 patent because the interior surfaces of The Large Bee Trap are smooth.

Blazer's Large Bee Trap infringes Claim 6 of DPCC's '611 patent because the diameter of the hole in the housing of the Large Bee Trap is within the range of from 5/16 to ½ inches.

Blazer's Cabin Style Bee Trap infringes Claim 1 of DPCC's '611 patent because the housing of the  Cabin Style Bee Trap has a hollow interior with an entry hole for bees to enter. In addition, the Cabin Style Bee Trap infringes Claim 1 of DPCC's '611 patent because the diameter of the entrance hole is within the range claimed in the '611 patent and the interior wall of the hole is flat. And finally, like the traps claimed in the '611 patent, the Cabin Style trap does not contain bait.

Blazer's Cabin Style Bee Trap infringes Claim 4 of DPCC's '611 patent because the interior surfaces of the Cabin Style Bee Trap are smooth.

Blazer's Cabin Style Bee Trap infringes Claim 6 of DPCC's '611 patent because the diameter of the hole in the housing of the Cabin Style Bee Trap is within the range of from 5/16 to ½ inches.

### CLAIMS 1, 4 AND 6 OF DPCC'S '611 PATENT ARE NOT INVLAID

In my opinion:

Claims 1, 4 and 6 of DPCC's '611 Patent are not anticipated by or obvious in view of the prior art cited in Defendant's Preliminary Invalidity Contentions.  None of the prior art cited therein, either alone or in combination, teach or render obvious the limitations of claims 1, 4 or 6.

### BLAZER'S CARPENTER BEE TRAPS INFRINGE DPCC'S '426 DESIGN PATENT

In my opinion:

The designs of Blazer's The Best Bee Trap and Blazer's Simple Box Bee Trap are so similar to the protected design in DPCC's '426 patent that an ordinary observer could not distinguish them from traps protected by DPCC's '426 patent based only on their design.

3

Instead, an ordinary observer would select a carpenter bee trap for purchase based on some factor other than design; perhaps selecting a trap based on price if they were priced differently but of roughly the same size and overall attractiveness, perhaps on size if the ordinary observer believed one to be slightly larger than the other but of the same price and overall appearance, perhaps on overall attractiveness if the ordinary observer believed the color or grain of the wood of one trap was more attractive than the color or grain of the wood of the other and the prices and sizes of the traps were indistinguishable.

## BLAZER'S CARPENTER BEE TRAPS INFRINGE DPCC'S '384 DESIGN PATENT

In my opinion:

The design of Blazer's Super Bee Condo is so similar to the protected design in DPCC's '426 patent that an ordinary observer could not distinguish them one from the other on the basis of their design.

Instead, an ordinary observer would select a carpenter bee trap for purchase based on some factor other than design; perhaps selecting a trap based on price if they were priced differently but of roughly the same size and overall attractiveness, perhaps on size if the ordinary observer believed one to be slightly larger than the other but of the same price and overall appearance, perhaps on overall attractiveness if the ordinary observer believed the color or grain of the wood of one trap was more attractive than the color or grain of the wood of the other and the prices and sizes of the traps were indistinguishable.

## CLAIMS 1, 2, 4, 7, 8, 13, 14, 15, 16, 17 AND 20 OF BLAZER'S '421 PATENT ARE INVALID

In my opinion:

The asserted claims of Blazer's '421 patent are not infringed by any of DPCC's patents because they are obvious to a POSITA, obvious in view the prior art cited in Plaintiff's Preliminary Invalidity Contentions.

## CLAIMS 1, 2, 4, 7, 8, 13, 14, 15, 16, 17 AND 20 OF BLAZER'S '421 PATENT ARE NOT INFRINGED

In my opinion:

Claim 1 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 1.

Claim 2 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 2.

Claim 4 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 4. Further, this claim is not novel and is obvious and familiar to POSITAs who have made insect traps from plastic soda bottles since these bottles first came to market more than half a century ago. In one such embodiment, a hole is drilled through the bottle cap to allow insects of a maximum size to enter, while excluding others. (This is the principle behind the 'queen excluders' used in honey bee hives.) The bottle cap is then used to reversibly attach the cap to the bottle which functions as the collection chamber. When it is desired to prevent the trapped insects from leaving the chamber, the bottle is cut into a top and bottom section just below the point at which it begins to taper to the cap end. The location of this cut is labeled 48 in Fig. 4A of the '421 patent and is shown as a circle just above the 48 in Fig. 4B of the '421 patent. The cap with its drilled hole is attached to the top section and the top section is then inverted and inserted into the bottom section. Insects that enter the trap and then attempt to get out are trapped beneath the junction of the top and bottom section.

Claim 7 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 7. A POSITA would know that there is no significant benefit to a ¼ inch increase in the diameter of the entrance hole because a carpenter bee can remove wood from the opening of an existing penetration until it is large enough to allow the bee to enter.

Claim 8 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 8. Further, this claim it obvious to both an ordinary person who is familiar with commercial bait stations for roaches, ants and other insects and to a POSITA such as a maintenance person or a pesticide applicator. Many traps for roaches, ants and other insects incorporate a flat surface with an adhesive strip that can be used to attach these devices to walls, floors and ceilings.

Claim 13 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 13. it is an obvious combination of three elements, none of which is novel. The first element, that the entrance hole goes from the outside of the trap to the inside of the trap would be obvious to even an ordinary person. In addition, a POSITA who is familiar with carpenter bees would know that the second element, that the entrance hole "extends substantially horizontally or at an upward angle" is obvious because the alternative arrangement, a hole that "extends at a downward angle" would promote the accumulation of moisture and debris; something that carpenter bees go to great lengths to avoid. Carpenter bees keep the sides of their upwardly directed and horizontally directed tunnels very clean and use fresh shavings to build walls to separate the egg and food in each cell from the egg and food in the next, working from the inside out. The third and last element, an exit hole with at least some light, would be obvious to any POSITA who has used a glass bottle or a clay pot to trap flies and other insects over the last several thousand years.

Claim 14 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 14.

Claim 15 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 15.

Claim 16 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 16.

Claim 17 of the '421 patent cannot be infringed because the accused bee traps do not contain each and every limitation of claim 17.

Claim 20 of the '421 patent cannot be infringed for the reasons that Claim 4 cannot be infringed.

I reserve the right to modify or supplement this expert report as permitted by the Federal Rules of Civil Procedure or the Local Rules of the Court.

Signed: *George Rotramel* Date: *MAY 27, 2022*
George Rotramel

6

# Tab 1

# CURRICULUM VITAE

**George L. Rotramel**

**Education**
- BS in Zoology with Chemistry/Physics minor.
  University of Illinois at Urbana Champaign. 1964. (Assigned laboratory space in Department of Entomology for independent research on wood borers.)
- MS in Entomology with Plant Ecology minor.
  University of Illinois at Urbana Champaign. 1966.
- PhD in Entomology. (Thesis research on wood borers.)
  University of California at Berkeley. 1971.

**Work History**
- Pest Management Consultant, 1988 - present
- Visiting Professor, UI at Chicago, 1999-2003
- Technical Services Director, Velsicol 1986-1988
- Ag Products R&D, Union Carbide, 1975-1986
- Vector Control, Calif. DPH & CDC 1971-1975

**Licenses and Certifications**
- Licensed to apply restricted and general use pesticides for vector and pest control in/around buildings, institutions and food facilities.
- State approved recertification class instructor for structural pest control in Illinois.

**Relevant Technical Experience and Publications**
- Field and laboratory experience with small carpenter bees (*Ceratina* spp) at U.C. Berkeley.
- US Patent 5,275,125. Animal Harborages. Device with entrances "sized for the pest" was selected as new product of the year at the national hardware show.
- Deposed as defense expert in litigation involving traps for bed bugs.

**Expert Testimony Since June 2016**
- Epich v Duran. (termites). Case # 2012CH005784. Retained by John Norton.
- Yosemite National Park Hantavirus Litigation. (rodents) Case # 3:14-md-02532-MMC. Retained by U.S. Department of Justice.
- Bed Bug Patent Litigation (bed bugs). Retained by Foley & Lardner.
- Jones and Dayer v Terminix Int. (termites). Case # 16-1068-111. Retained by
- Hinshaw and Culbertson.
- Thomas v Dollar Rent A Car (rodents). Case # 4:17-cv-586-JM. Retained by Watts Donovan and Tilley.
- Collins v Terminix Int. (termites). Case # 01-18-0004-3723. Retained by Hinshaw and Culbertson.
- Rogers v Terminix Int. (termites) Case # 48-CV-2018-102-1. Retained by Hinshaw and Culbertson.

Dec. 16, 2021

# Tab 2

Publications of George Rotramel since May of 2012

2014. Kard, BM, GJ Tompkins, GL Rotramel and LA Renello. *Dispersion of Standard and Cellulose-Augmented Termiticides in 'ABC' Gravel Foundation Fill.* Journal of the Kansas Entomological Society. 87(2) pp 205-218.

# Tab 3

DocuSign Envelope ID: 3C1BB9D7-FF36-4581-8161-5855D15F16B7

**RUBIN ANDERS**    1309 Beacon Street, Suite 300    P: (617) 547-7200    www.rubinanders.com
Brookline, MA 02446    F: (617) 547-7201

Cliff Davis
Davis Product Creation and Consulting, LLC
4413 Northern Blvd.
Montgomery, AL 36110

August 18, 2020

Re: *Davis Product Creation and Consulting, LLC d/b/a BeesNThings v. Blazer d/b/a Carpenter Bee Solutions*

Dear Mr. Davis:

This Agreement confirms that Davis Product Creation and Consulting, LLC ("DPCC") will retain Dr. George L. Rotramel ("Dr. Rotramel") through Rubin/Anders Scientific, Inc. ("RAS") to act as a consultant in the above referenced matter. The parties agree that any involvement of Dr. Rotramel in this or other related matters will be pursued through an agreement with RAS.

The billing rates for Dr. Rotramel's services are: $415 per hour for consulting; $565 per hour for depositions and trial or hearing testimony, with a 2-hour minimum; plus expenses, all subject to such work guidelines as you may choose to establish, in advance and in writing, with Dr. Rotramel. Prior to assigning tasks, DPCC may wish to direct Dr. Rotramel to provide a written estimate of the number of hours needed to perform these tasks.

All invoices are payable promptly upon receipt from RAS.  Payment should be made to:

> Rubin Anders Scientific, Inc.
> 1309 Beacon St., Suite 300
> Brookline, MA 02446

Dr. Rotramel shall perform his work in the capacity of an independent contractor and not as an employee of DPCC or RAS. It is agreed that RAS has made no warranty, express or implied, about Dr. Rotramel's abilities, nature of testimony, work habits, credentials, or any matters outside of RAS' direct control, and that DPCC has examined Dr. Rotramel's credentials to the extent it deems necessary to satisfy itself of his suitability in this consulting assignment. RAS shall not be liable for direct, indirect or consequential damages arising out of Dr. Rotramel's consultancy, his opinions, or conclusions.  Dr. Rotramel has the right to stop work under the Agreement at any time by providing at least thirty (30) days written notice of termination (or such shorter notice period as may be agreed) to DPCC and RAS.

Very truly yours,    **ACCEPTED AND AGREED:**

*[signature]*    *[signature: Clifford Davis]*
1801SD20145MAM

Louise Mizgerd    Cliff Davis  President
Research Contract Manager    Davis Product Creation and Consulting, LLC
Rubin/Anders Scientific, Inc.    Dated: 9/8/2020

# Tab 4

## CASES IN WHICH GEORGE ROTRAMEL HAS TESTIFIED SINCE MAY OF 2016.

CASE 1: SHAWNA R EPICH VS SANDRA DURAN

*Case Identifier*: Case Number: 2012CH005784

*Location*: 4724 Yackley Avenue, Lisle, DuPage County, Illinois.

*Parties:* Shawna R. Epich and Dante M. Royster, plaintiffs. Sandra Duran, ReMax/Maximum Action, Inc. and Frank Kresz Defendants.

*Judge*: Paul M. Fullerton, Circuit Court Judge

*Retained on/by*:  George Rotramel was retained on March 7, 2014 by Jim Ryan.

*Retaining firm's contact information*:
John E. Norton & Associates
400 West Roosevelt Road
Wheaton, Illinois 60187
Ph: 630-668-9440

*George Rotramel's primary contact*: James J. Ryan

*Primary contact's information*:
Mr. Ryan is no longer with John E. Norton & Associates

*Details of George Rotramel's testimony at trial*: During plaintiffs counsel's cross examination, judge Fullerton interrupted and questioned George Rotramel directly. In his ruling, Judge Fullerton said, "The court also heard from Dr. Rotramel, who has a doctorate in entomology. He provided expert testimony on behalf of ReMax. His conclusion was that while, at one time, the property suffered from active termites, such termite activity occurred approximately 20 years prior to the sale and that there were clearly no active termites when Plaintiffs purchased the home. He provided *extensive* (emphasis added) testimony as to why there were clearly no active termites and that any termite damage was caused a long time ago. His expert testimony was uncontroverted."

*Deposition was conducted by*:  NA

*Deposer's contact information*: NA

*Outcome*: Judge Fullerton ruled in favor of the defense on March 3, 2017.

**CASES IN WHICH GEORGE ROTRAMEL HAS TESTIFIED SINCE MAY OF 2016**

**CASE 2: YOSEMITE NATIONAL PARK HANTAVIRUS LITIGATION**

*Case Identifier*: 3:14-md-02532-MMC

*Location*: US District Court for the Northern District of California.
City and County of San Francisco, California.

Parties: Many. See public records.

*Judge*: Hon. Maxine M. Chesney

*Retained on/by*: George Rotramel was retained as a defense expert by Archer Norris, local
counsel located in Walnut Creek, CA through Rubin Anders Scientific on August 29, 2016.
Archer Norris declared bankruptcy in 2018.

*Retainer's contact information*:
Sheila Smith
Rubin Anders Scientific
1309 Beacon Street,
Suite 300
Brookline, MA 02446.
P: (617) 547-7200.

*George Rotramel's primary contact*: Adam Bain, Senior Trial Counsel, Torts Branch-USDOJ

*Primary contact's information*:
Adam Bain
Torts Branch-USDOJ
P.O. Box 340
Ben Franklin Station
Washington D.C. 20044.
P: 202-616-4209.

*Details of George Rotramel's deposition*: George Rotramel was deposed in Chicago, Illinois on
October 20, 2017. George Rotramel signed a protective order on September 12, 2017.
No further information can be provided about this case without permission from the Court.

*Outcome*: Settlement agreement was signed by Judge M. Chesney on February 21, 2017.

**CASES IN WHICH GEORGE ROTRAMEL HAS TESTIFIED SINCE MAY OF 2016**

**MATTER 3: BED BUG PATENT LITIGATION**

*Case Identifier*: United Industries

*Location*: NA

*Parties:*.NA

*Judge*: NA

*Retained on/by*: George Rotramel was retained on June 22, 2017 by Michael Houston of Foley & Lardner.

*Retaining firm's contact information*:
Foley & Lardner LLP
312 North Clark Street
Suite 2800
Chicago, Illinois 60654-4378
312-832-

*George Rotramel's primary contact*: Naikang Tsao

*Primary contact's information*:
 Foley & Lardner LLP
150 East Gilman Street
Suite 5000
Madison, WI 53703-1482
608-258-4258

*Details of George Rotramel's deposition*:
George Rotramel was deposed in Chicago, Illinois on June 26, 2017.

*Deposition was conducted by*: Naikang Tsao

*Deposer's contact information*:
Naikang Tsao
Foley & Lardner LLP
150 East Gilman Street
Suite 5000
Madison, WI 53703-1482
608-258-4258

*Outcome*: Deposition was for purposes other than trial or arbitration.

## CASES IN WHICH GEORGE ROTRAMEL HAS TESTIFIED SINCE MAY OF 2016

**CASE 4: JONES AND DAYER VS TERMINIX INTERNATIONAL**

*Case Identifier*: Garland County Circuit Court Case No.: 16-1068-III

*Location*: 118 Buccaneer Road, Hot Springs, Garland County, Arkansas

*Parties*: David Jones and Patrick Dayer, plaintiffs. The Terminix International Co., et al defendants.

*Judge*: Arbitrator David M. Fuqua, Esq.
Fuqua Campbell, P.A.
3700 Old Cantrell Rd
#205
Little Rock, AR 72202

*Retained on/by*: George Rotramel was retained on August 11, 2017 by April M. Zloch Dahl of the Ft. Lauderdale, FL office of Hinshaw & Culbertson

*Retainer's contact information*:
April M. Zloch Dahl
Hinshaw & Culbertson LLP
One East Broward Blvd,
Suite 1010
Ft. Lauderdale, FL, 33301

*George Rotramel's primary contact*: David J. Richards, Hinshaw & Culbertson LLP

*Primary contact's information*:
David J. Richards
Hinshaw & Culbertson
151 North Franklin Street
Suite 2500
Chicago, IL 60606
P: 312-704-3956

*Details of George Rotramel's deposition*: George Rotramel was deposed in Chicago, Illinois on January 15, 2019.

*Outcome*: Case was settled in March 2019.

# CASES IN WHICH GEORGE ROTRAMEL HAS TESTIFIED SINCE MAY OF 2016

### CASE 5: SOLA THOMAS V DOLLAR RENT A CAR

*Case Identifier*: Sola Thomas, et. al. v. Dollar Rent A Car, et al. United States Eastern District No. 4:17-cv-586 -JM

*Location*: Clinton National Airport, Little Rock, Pulaski County, Arkansas.

*Parties:* Sola Thomas and Charles Thomas, plaintiffs. Dollar Rent A Car,  Ed's Service Solutions, LLC, defendants

*Judge*: NA

*Retained on/by*: George Rotramel was retained on September 22, 2018 by Staci Dumas Carson of Watts, Donovan, Tilley and Carson.

*Retaining firm's contact information:*
Watts, Donovan, Tilley and Carson
200 River Market Avenue
Little Rock, AR 72201-1769
(501) 372-1209

*George Rotramel's primary contact*: Staci Dumas Carson

*Primary contact's information:*
Stacy Dumas Carson
Watts, Donovan, Tilley and Carson
200 River Market Avenue
Little Rock, AR 72201-1769
(501) 372-1209

*Details of George Rotramel's deposition*: George Rotramel was deposed in Chicago, Illinois on July 10, 2019.

*Deposition was conducted by*: Alan LeVar

*Deposer's contact information*:
Law Offices of Alan Lavar
702 Caddo Street
Arkadelphia, Arkansas 71923

*Outcome*:  Case was settled.

## CASES IN WHICH GEORGE ROTRAMEL HAS TESTIFIED SINCE MAY OF 2016

**CASE 6: JOHN W. COLLINS v THE TERMINIX INTERNATIONAL COMPANY, L.P.; TERMINIX INTERNATIONAL, INC.; AND DWIGHT REYNOLDS**

*Case Identifier*: Case No.: 01-18-0004-3723

*Location*: 14907 Boyd Street, Little Rock, Pulaski County, Arkansas 72206.

*Parties*: John W. Collins, claimant. Terminix Int./ Inc., Dwight Reynolds, respondents.

*Arbitrator*: Arbitrator David M. Fuqua, Esq.

*Retained on/by*: George Rotramel was retained on July 15, 2019 by April M. Zloch Dahl.

*Retainer's contact information*:
Hinshaw & Culbertson LLP
One East Broward Blvd,
Suite 1010
Ft. Lauderdale, FL, 33301

*George Rotramel's primary contact*: David J. Richards, Hinshaw & Culbertson LLP

*Primary contact's information*:
Hinshaw & Culbertson
151 North Franklin Street
Suite 2500
Chicago, IL 60606
P: 312-704-3956

*Details of George Rotramel's deposition*: George Rotramel was deposed in Chicago, Illinois in January of 2020.

*Deposition was conducted by*: Campbell Law. Copy of deposition not available.

Deposer's contact information:
Campbell Law, P.C.
5336 Stadium Trace Parkway
Suite 206
Birmingham, Al 35244
Ph: (205) 278-66

*Outcome*: Case settled in January. 2020

FILED

2020 Dec-14  PM 04:0
U.S. DISTRICT COUR
N.D. OF ALABAM/

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **DAVIS PRODUCT CREATION AND CONSULTING, LLC d/b/a BEESNTHINGS** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:19-CV-848-CLM** |
| **v.** | ) | |
| | ) | |
| **BRIAN BLAZER, d/b/a CARPENTER BEE SOLUTIONS** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

EXHIBIT

Lotrance)

## CLAIM CONSTRUCTION ORDER

Plaintiff Davis Product Creation and Consulting, LLC d/b/a BeeNThings ("DPCC") and Defendant Brian Blazer d/b/a Carpenter Bee Solutions ("Blazer") make traps to catch and kill carpenter bees.

DPCC sues Blazer for patent infringement, alleging that Blazer is infringing Patent Nos. 6,766,611 ("'611 Patent"), D672,426 ("'426 Patent"), and D690,384 ("'384 Patent")(collectively, the "DPCC Patents"). *See* Doc. 1. DPCC also seeks declaratory judgment about its rights under 35 U.S.C. § 252. *See* Doc. 34. Blazer filed counterclaims that allege DPCC has infringed RE46,421 ("'421 Patent") and that the DPCC Patents are invalid. Doc 35.

The parties ask the court to construe disputed and undisputed terms of the '611

and '421 Patents. The court held a *Markman* hearing and construes the terms at issue

below.

## I.   Factual Background

DPCC alleges that Blazer is infringing on claims of the '611 Patent with three

products.: (1) the "Best Bee Trap"; (2) the "Simple Box Bee Trap"; and (3) the

"Super Carpenter Bee Condo." Doc. 1 at 7. These products allegedly violate Claims

1 and 4 of the '611 Patent. Doc. 51 at 7. Claim 1 is an independent claim from which

Claim 4 depends. Doc. 31-1 at col. 3.

Blazer alleges that DPCC is infringing on claims of the '421 Patent with four

products: (1) the "Hanging AST Carpenter Bee Trap"; (2) the "BM Carpenter Bee

Trap"; (3) the "Carpenter Bee Natural Bee Trap"; and (4) the "BeesNThings Bottom

Receptacle Carpenter Bee Trap." Doc. 49 at 3. These products allegedly infringe on

Claims 1 and 13, which are independent claims, and Claims 2, 4, 7, 8, 14-17, and 20

which are dependent claims of the '421 Patent. *Id.* Claims 13-17, and 20 are the

reissue claims, while the rest were in the original '624 Patent. *Id.*

## II.   Applicable Law

### A.   Claim Construction

Claim construction is the process of a court determining the scope and

meaning of a patent's claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S 370 (1996). It is through a patent's claims that a patentee defines the space the patentee has the right to exclude others from. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim construction is a matter of law. *Markman*, 517 U.S at 191.

Claim construction requires a court to look to the patent's intrinsic evidence— *i.e.,* the written description, figures, claims, and (to a lesser extent) the prosecution history—to determine claim meaning. *Phillips*, 415 F.3d at 1312, 1317. If the intrinsic evidence can construe a term, the court stops. *Id.* at 1312. If it is not, the court turns to extrinsic evidence like "expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 1317.

Claims are to be giving their "ordinary and customary meaning" as understood by a person having ordinary skill in the art (PHOSITA). *Id.* at 1312. The effective filing date is the relevant time for construction of the PHOSITA. *Schering Corp. Amgen Inc.*, 222 F.3d 1347, 1353 (Fed. Cir. 2000).

Alternatively, a patentee may act as their own lexicographer:

Although an inventor is indeed free to define the specific terms used to describe his or her invention, this must be done with reasonable clarity, deliberateness, and precision. "Where an inventor chooses to be his own lexicographer and to give terms uncommon meanings, he must set out his uncommon definition in some manner within the patent disclosure" so as to give one of ordinary skill in the art notice of the change.

3

*In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994)

Patent claims carry a presumption of validity. 35 U.SC. § 282. So courts must construe claims to preserve validity unless proven otherwise by clear and convincing evidence. *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002).

B.    Means-Plus-Function

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof..." 35 U.S.C. § 112(f). When presented with a potential § 112(f) claim, a court must first determine whether that section applies. Means-plus-function claiming only applies to "purely functional limitations that do not provide that structure that performs the recited function." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 f.3d 1005, 1023 (Fed. Cir. 2006). "If the word 'means' appears in a claim element in association with a function" then there is a rebuttable presumption that the claim is means-plus-function. *Callicrate v. Wasworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005). But if the claim describes a structure or device that preforms the function, then the presumption is rebutted. *See Watts v. XL Sys., Inc.,* 232 F.3d 877, 880–81 (Fed. Cir. 2000); *Phillips*, 415 F.3d at 1311.

Once the term is determined to have a means-plus-function limitation,

construction begins. This is a two-step process: the court (1) determines the claimed function; and (2) identifies the corresponding structure in the written description that performs the function. *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005).

"Determining a claimed function and identifying structure corresponding to that function involve distinct, albeit related, steps that must occur in a particular order. In short, function must be determined before corresponding structure can be identified." *Id.* Moreover, a trial court should determine the function from the claims independently of any working embodiment. *Id.* at 1331.

After determining function, the court must determine the associated structure in the specification. In doing so, the court must account "for all structure in the specification corresponding to the claimed function." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1369 (Fed. Cir. 2005). This means that the structure should just not be limited to those found in the preferred embodiment, but structure found in any embodiment that has support in the specification. If there is no structure in the specification that corresponds to the claimed function, then the claim is invalid as indefinite, because it cannot be construed. *See e.g.*, *Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013).

## III. Construction of Claim Terms

The court finds the PHOSITA for all patents involved to be a skilled craftsman with a knowledge of carpenter bees and their characteristics. Both the '421 and '611 Patents refer to insect traps and carpenter bees under the Field of the Invention section. Doc. 31-1 at 2 ('611 Patent). Doc. 31-5 at 2 ('421 Patent).

### A. The '611 Patent

The disputed terms in the '611 Patent appear in Claims 1 and 4.

Claim 1 reads:

A carpenter bee trap comprising a housing having a hollow interior and at least one solid wall having a hole formed therein to permit carpenter bees to enter the hollow interior of the housing, said hole having about the same size as holes normally made by carpenter bees So that the hole tends to attract such bees, said housing containing no **bait, the interior surface of said solid wall forming the interior edge of said hole is substantially flat.**

Claim 4 reads:

The carpenter bee trap of claim 1 in which **the interior surfaces of said housing are smooth.**

#### 1. *Bait*

DPCC proposes that "bait" means food or other lure placed in a trap scientifically proven [sic] attract carpenter bees. Doc. 51 at 9. Blazer proposes that "bait" means an attractant for bees. Doc. 55 at 5.

The word "bait" only appears in the Claims. While the parties point to Claim

6

1, "bait" appears in Claims 1, 7, 11, 12, and 17, and its use in those claims shows why Blazer's proposed definition of "an attractant for bees" is too broad.

Claims 1, 7, 11, 12, and 17 all say that the bee trap housing unit contains a "hole" that "attracts" or "tends to attract" bees. If Blazer is right that "bait" is any attractant for bees, then the hole is bait. But the same claims also say that the housing unit "contain[s] no bait" (Claims 1, 7, 11) or that the bee trap is a "method of trapping carpenter bees without the use of bait" (Claims 12, 17). If the housing unit cannot contain bait, and the hole attracts bees, then bait cannot mean *anything* that attracts bees. So the court must define "bait" in some way that excludes the hole.

Because the patent does not define (or even mention) "bait" outside the claims, the court must turn to extrinsic evidence. DPCC points to this definition given by Merriam-Webster: "[f]ood or other lure placed on a hook or in a trap and used for the taking of fish, birds, or other animals." Doc. 50-2 at 5. Merriam-Webster also defines bait as "something (such as food) used in luring especially to a hook or trap." *Bait*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/bait. (last visited Oct. 2, 2020).

Neither of these extrinsic definitions requires "bait" to be "scientifically proven," a limitation that DPCC asks the court to include. Nor does a plain understanding of the word "bait" require preclearance by the scientific method.

7

Generations of grandfathers have baited their grandson's fishing hook with crickets or hotdogs without first consulting scientific journals for proof of effectiveness. The same can be said of putting bait inside a trap.

But the court agrees with DPCC that "bait" must be defined as some sort of substance that can be placed in the trap based on the last sentence of the Detailed Description of the Preferred Embodiments: "If desired, an attractant for the bees may also be placed in the interior of the trap." Defining "bait" as some type of substance that can be physically placed in the bee trap not only comports with this description, it excludes the "hole" as required by the Claims.

So the court construes "bait" to mean **a substance that attracts bees**.

2. *The interior surface of said solid wall forming the interior edge of said hole is substantially flat*

DPCC proposes that "the interior surface of said solid wall forming the interior edge of said hole is substantially flat" means "the interior surface of the wall is a planar surface." Doc. 51 at 10. Blazer proposes that this term means "the interior surface of the wall through which the hole is formed is smooth and even, without lumps or indentations." Doc. 55 at 8. The parties, through their claim construction briefs, then arrived at a compromise with the construction, "the interior surface of the wall through which the hole is formed is even and level."

The starting point for every term in claim construction is plain and ordinary

8

meaning. *Phillips*, 415 F.3d at 1312-13. The court should not seek to act as a thesaurus when the PHOSITA can understand the claim. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The court does not have a duty to construe every claim or limitation. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("[claim construction] is not obligatory exercise in redundancy.") This court is confident that the jury can determine this term's meaning—which boils down to interpreting the phrase "substantially flat"—through **plain and ordinary meaning**.

### 3. *The interior surfaces of said housing are smooth*

DPCC proposes that "the interior surfaces of said housing are smooth" means the interior surface of the housing is substantially free from irregularities. Doc. 51 at 11. Blazer proposes that this term means "the interior surfaces of the housing are even and regular and are free from perceptible projections, lumps or indentations." Doc. 55 at 9.

For the reasons noted above, the court determines that **plain and ordinary meaning** applies. The court needn't act as a thesaurus for the word "smooth."

### B. The '421 Patent

The agreed and disputed terms appear in independent Claims 1 and 13. The rest of the claims are dependent claims that derive meaning from Claims 1 and 13.

Claim 1 reads:

A carpenter bee trap comprising:

a trap entrance unit forming a plenum being made of **wood or a wood substitute**;

said trap entrance unit having at least one hole drilled there-through and sized to mimic a natural carpenter bee nest tunnel so as to provide a **primary attractant**;

said hole extending from the outside of the trap unit to a plenum interior, said hole being configured to extend substantially horizontally or at an upward angle; **a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light;**

said trap unit further comprising **a receptacle adapter** being substantially located at the bottom of said trap unit and **being configured to receive** a clear or translucent receptacle;

a receptacle received by said adapter situated to allow **ambient light** to enter through said bottom into said plenum interior, thereby providing a **secondary attractant**; said receptacle further being provided to receive trapped bees.

Claim 13 reads:

A carpenter bee trap, comprising:

a trap entrance unit formed of **wood or a wood substitute**, wherein at least one side of the trap entrance unit has at least one entrance hole that extends from outside the trap entrance unit to an interior of the trap entrance unit, wherein the at least one entrance hole extends substantially horizontally or at an upward angle with a size and shape configured to provide a **primary attractant** for carpenter bees, and wherein the trap entrance unit further comprises an exit opening for providing an exit path from the interior of the trap entrance unit; and

**a receptacle adapter located at the exit opening of the trap entrance unit,** wherein the **receptacle adapter** is **adapted to receive** at least one receptacle and is adapted so as to allow at least some **ambient light** to

10

enter the interior of the trap entrance unit via the exit opening, thereby providing a **secondary attractant** for carpenter bees.

The parties agree on a construction for two claim terms: "wood or wood substitute" and "ambient light." Doc. 40, Ex. A. For "wood or wood substitute," the parties have adopted the meaning to be **natural or synthetic wood**. *Id.* For "ambient light," the parties have adopted the meaning to be **the light surrounding the trap**. *Id.* The court agrees with the parties and holds these terms to be construed as such. So the court turns to the disputed terms.

### 1. *a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light*

This limitation includes the word "means," which creates a rebuttable presumption that this is a means-plus-function claim. *See Callicrate*, 427 F.3d at 1368. The parties agree that this is a means-plus-function claim. Doc. 49. The court also agrees (with the caveat given on pages 14-17), so it turns to the two-step process of construing a means-plus-function claim: (1) identify the function, then (2) identify the corresponding structure, material or act.

Parties' positions: DPCC proposes the function is to shelter an entrance to a hole from presumably light or rain and contends that the overhanging roof (reference numbers 161 and 261) is the only structure disclosed in the specification that provides this function. Doc 49 at 5. Blazer proposes the function is to shelter an

11

entrance to said hole and points to number references 161 and 261 (overhangs) and 11, 21, 31, and 511 (holes) as the corresponding structures. *Id.* at 5-6.

Function: The text plainly reveals the function—*i.e., to* shelter the entrance to the hole drilled into the trap entrance unit from ambient light.

Structure: Identifying the associated structure is not so easy. The parties agree that the overhanging roof, number reference 161 of Figures 1A-1B and number reference 261 of Figures 2A-2B, is a structure that performs this function. Doc. 49 at 5; Doc. 54 at 4. The parties disagree about the entrance holes. Blazer contends that the holes (number references 11, 21, 31, and 511) are additional structures that perform the function; DPCC contends that the holes cannot perform the function. *Id.* The court agrees with DPCC.

Again, Claim 1 says that the trap is comprised of a "means to shelter an entrance to said hole," and that shelter is included "to reduce the admittance of ambient light[.]" While Blazer is right that the upward angle of the entrance holes can reduce the admittance of ambient light, the holes cannot perform the stated function of sheltering their own entrance—any more than a room or a cave can shelter its own entrance. Figure 1A demonstrates the point:

12



While it is true that the upward slope of the hole (11) may reduce the amount of light that ultimately reaches the interior of the trap, it does not "shelter [the] entrance" of the hole. And according to the claim's plain text, the entrance is the only place that matters. So the court agrees with DPCC that number references 161 and 261, but not 11, 21, 31, and 511, are structures that perform the stated function.

§112(f): The Eastern District of Kentucky construed this claim differently. It found that "means to shelter an entrance to said hole" also includes "bores made at an angle between 5 and 90 degrees from horizontal and equivalents." Doc. 49-1 at 27.[1] The court has already explained why it cannot similarly read the patent to make holes be structures that cover themselves.

But another problem exists, one the Kentucky court did not address: reading

_____

[1] Blazer says the specification "uses the terms 'hole' and 'bore' interchangeably" (doc. 65 at 8). The court agrees.

13

the holes to be structures could eliminate Claim 1 as a means-plus-function claim. 35 U.S.C. §112(f) states: "An element in a claim for a combination may be expressed as a means or step for performing a specified function **without the recital of structure,** material, or acts in support thereof..." (emphasis added). As the Federal Circuit puts it, "even if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, §112 ¶6 [now §112(f)] does not apply." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999).

The element at issue mentions the hole three times:

> **said hole** extending from the outside of the trap unit to a plenum interior, **said hole** being configured to extend substantially horizontally or at an upward angle; a means to shelter an entrance to **said hole** is provided to reduce the admittance of ambient light;

If Blazer is right that the hole recited in the element is structure that performs the function of "shelter[ing] an entrance to said hole," then by its plain terms, §112(f) would not apply. *Id.* The E.D. Ky. decision did not deal with this §112(f) question, so the court ordered the parties to file supplemental briefs about §112(f). *See* Doc. 64 (order). In its supplemental brief (doc. 65), Blazer says §112(f) is not a problem for two reasons.

First, Blazer points to §2181(I)(C) of the Manual of Patent Examining Procedure, which dictates that "the term 'means' or 'step' or the generic placeholder

14

must not be modified by sufficient structure, material, or acts for achieving the specified function." Doc. 65 at 1. According to Blazer, if the word "means" is used, the means-plus-function presumption is rebutted only if the structure modifies the word "means"—for example, "perforation means" and "spring means." If the structure is recited elsewhere in the element, the presumption survives. The problem, though, is that this is not what §112(f) says. Section 112(f) does not forbid use of the structure as a prefix to the word "means." Section 112(f) says not to recite supporting structure, period. *See Rodime*, 174 F.3d at 1302. ("[E]ven if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, [§112(f)] does not apply.").

Second, Blazer argues that §112(f) applies only to individual limitations within an element and that the word "means" starts the limitation within the element. Doc. 65 at 6. Put another way, Blazer argues that the relevant element is three distinct elements and §112(f) applies only to the last one:

> said hole extending from the outside of the trap unit to a plenum interior, said hole being configured to extend substantially horizontally or at an upward angle; *a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light;*

But elements aren't structured that way. "Where a claim sets forth a plurality of elements or steps, each element or step of the claim should be separated by a line

15

indentation." 37 C.F.R. § 1.75(i); Manual of Patent Examining Procedure, 9th ed., rev. 10.2019 (Jun. 2020). This means that everything in the quote above (column 7 line 47 to line 51) is the same element. So the court must review the entire element when determining whether §112(f) applies. And §112(f) says that "an element in a claim" can cite a means if there is no "recital of structure."

To be clear, the court's finding that the holes are not structures does not hinge on its discussion of §112(f). The court's primary rationale can be summed up thusly: saying that "said hole" is "a means to shelter an entrance to said hole [from] ambient light" is just as nonsensical as saying that "my hair" is "a means to shelter my hair from the rain." The latter phrase plainly envisions something other than my hair to shield my hair—like a hat or an umbrella. The former phrase similarly envisions some structure other than the hole to cover the entrance to the hole. Section 112(f) only becomes a problem if Blazer is right that a hole can shelter its own entrance.

* * *

The Kentucky district court may be right that excluding holes as structures is a "tortured construction" of the patent. Doc. 49-1. But Blazer, not this court, inflicted the torture. It was Blazer's burden to draft the patent concisely. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The court is not free to edit the patent to ease the construction.

16

### 2. *a receptacle adapter*

DPCC proposes that a "receptacle adapter" means "a device which is part of the trap entrance unit which receives the receptacle and mechanically attaches to the receptacle to the trap." Doc. 40 at 6. Blazer proposes that this term means "a connector for joining a receptacle to the trap." *Id.* Claims 1, 13, 14, and 20 are the relevant claims that receptacle adapter appears in. Doc. 31-5, cols. 7-8. This construction can be divided into two questions: (1) is the receptacle adapter part of the trap entrance unit; and (2) does it mechanically attach the receptacle to the trap?

Is the Receptacle Adapter Part of the Trap Unit? The answer depends on which claim you are reading. Claim 1 says that the receptacle adapter "comprise[s]" part of the trap entrance unit. But Claim 13 treats the receptacle adapter as a distinct element of the bee trap, separate from the trap entrance unit. Because of this ambiguity, the court must turn to the specification. *See Phillips*, 415 F.3d at 1312.

Blazer contends that defining the receptacle adapter to be part of the trap entrance unit will exclude the preferred embodiments of Figures 1A-1B and 2A-2C. Doc. 49 at 11. But the opposite is true.

The written description in describing Figure 1A-1B states, "[a]t the bottom of trap entrance unit 1 is reducer section [4] 15 made of clear plastic with adapter coupling [5] 14 at the bottom which accepts a clear plastic removable receptacle [6]

17

18." Doc. 31-5, col. 5, lines 2-5.



The term "adapter coupling" is used synonymously with both "receptacle adapter coupling" and "receptacle adapter" throughout column 5 of the '421 Patent in citing "[5] 14." The use of the verb "is," which is the present tense first-person singular of "be," denotes that the proceeding words belong to the class of noun (trap entrance unit) before the verb. *See Be*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/be. (last visited Sep. 27, 2020). An illustration—at the front of the plane is the cockpit, so the cockpit is part of the front of the plane.

The quoted language in Blazer's Opening Brief supports this construction. Doc. 49 at 10. "In production the reducer 4 and receptacle adapter 5 [sic] may be specially molded as one part with molded features such as tabs or inserts *for attachment to the bottom of the upper trap unit 1*" (emphasis added to the emphasis). *Id.* This is attaching the receptacle adapter to the upper trap unit, not the whole trap

18

unit. Logic would dictate that right below the upper trap unit is the lower trap unit.

Figures 1A-1B and 2A-2C support the Court's construction as stated above, so the Court will briefly turn to the remaining drawings. Figures 3A-3D, 4A-4B, and 5A-5C all must have a receptacle adapter to be covered by the claims (Figure 6 seems to correspond with abandoned claims).



In Figure 4A above, there is not a separate device that could represent the receptacle adapter. If the receptacle adapter is not a part of the trap entrance unit, then none of these figures would be covered by the claims.

Claim 1's language furthers the construction that the receptacle adapter is part of the trap unit. The claim states that "said trap [entrance] unit further comprising a receptacle adapter." Doc. 31-5, col. 7, line 52. "Comprising" is an open phrase and allows coverage of technologies that employ additional, unrecited elements while

enumerating that contained elements. *AFG Indus., v. Cardinal IG Co.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001). This means that "receptacle adapter" is an element of the trap entrance unit.

Admittedly, Claim 13 and its dependents do not follow the Court's interpretation. In Claim 13, the "receptacle adapter" is treated as a distinct element of the carpenter bee trap, rather than part of the trap entrance unit. Doc. 31-5, col. 8, lines 24-41. Still, an overwhelming amount of evidence points the other way. On one side we have Claim 13 and its dependents, on the other, the drawings, the written description, and Claim 1 and its dependents. While the Court wishes that the '421 Patent was more consistent, the specification only supports Claim 1's version of the receptacle adapter being part of the trap entrance unit.

Is "mechanical attachment" required? Blazer contends that the phrase would construe the patent to preclude the "friction fit" preferred embodiments of Figures 3A-3D and 4A-4B. Doc. 49 at 12. The friction fit would lend itself to use the wedge, one of the six simple machines to provide **mechanical** advantage, so the Court does not think Blazer's argument is valid. However, the principle of claim differentiation applies here.

Claim differentiation provides that "each claim in a patent is presumptively different in scope." *RF Del., Inc. v. Pac. Key-stone Techs., Inc.*, F.3f 1255, 1263

20

(Fed. Cir. 2003). Claim 2 (dependent on Claim 1) claims a carpenter bee trap where "the receptacle is temporarily attached to the trap." Doc. 31-5, col. 7, lines 61-62. Claim 1 does not have such a limitation. If the receptacle is permanently attached in Claim 1, then it cannot be mechanically attached. So mechanically attaches is not an appropriate part of the construction of "receptacle adapter."

The court holds the proper construction of receptacle adapter to be **a device that is part of the trap entrance unit that receives the receptacle and attaches the receptacle to the trap.**

The court knows that DPCC did not make all of these points. But the court retains "an independent obligation to determine the meaning of the claims." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995).

### 3. *primary attractant*

DPCC proposes that "primary attractant" means "the first trait of the trap that attracts a carpenter bee." Doc. 40 at 5. Blazer proposes that this term needs no construction. *Id.*

Upon initial review of the written description and claims, the court notes inconsistencies in the patent. "Primary attractant" only appears once in written description: "Live bees in the trap actively make distressed buzzing noises which appear to be the primary attractant." Doc. 31-5, col. 7, lines 10-11. In this sense, the

21

primary attractant is the thing that first draws the bees to the trap. Claim 1 conflicts with this interpretation: "a natural carpenter bee nest tunnel as to provide a primary attractant." *Id.* lines 45-46. Given this, the Court agrees with DPCC's construction with slight modification: "Primary attractant" means **a trait that attracts bees into the trap entrance unit.**

### 4. *configured to receive*

DPCC proposes that "configured to receive" means the receptacle adapter accepts the receptacle to positively retain the receptacle or allow the receptacle's removal. Doc. 40 at 7. Blazer contends no construction is necessary and that plain and ordinary meaning should rule. *Id.*

The court notes that this term also appears in asserted Claim 20, which depends on Claim 13. Doc. 31-5, col. 8, line 66. Neither party mentions this in their claim construction brief. So "configured to receive" actually appears three times in the '421 Patent—once each in Claims 1, 12, and 20. Blazer's argument in his reply brief nails the construction:

> …DPCC's proposed construction includes the phrase "to positively retain the receptacle or allow for the receptacle's removal." Does this mean that it cannot both retain the receptacle and allow for its removal? Claim 2, which depends from claim[sic] 1, calls for the receptacle to be "temporarily attached to the trap." Thus, under the doctrine of claim differentiation, claim 1 must necessarily cover a receptacle that is not "temporarily attached to the trap."

22

Blazer is right, and the court holds that "configured to receive" requires no construction, **plain and ordinary meaning applies**.

### 5. *secondary attractant*

DPCC proposes that "secondary attractant" means "the second trait of the trap that attracts a carpenter bee." Doc. 49 at 16. Blazer contends that no construction is necessary and that plain and ordinary meaning. *Id.*

The court's job is harder here because, as DPCC points out, "secondary attractant" does not appear in the specification at all. Doc. 54 at 9. Claim 1 and 13 both use "secondary attractant" when claiming the receptacle element of the bee trap. Logic would lead that the "attractant" described here is to bring the bees into the receptacle. Because the only way into the receptacle is the bottom of the entrance trap unit, the bees must be able to sense the attractant while in the trap entrance unit.

The specification supports this reading (Doc. 31-5, col. 5, line 24-29)

> When bees enter trap entrance unit 1, they immediately see the ambient light entering from the clear plastic reducer 4 as well as from receptacle 6 through the opening in adapter coupling 5. Attracted by the light, the bees immediately fly to the bottom of the trap where they are quickly funneled into the receptacle 6.

In light of this, the court construes "secondary attractant" to mean **a trait that draws bees from the interior of the entrance trap unit into the receptacle**. Again, the court has an independent duty to construe claims. *Exxon.*, 64 F.3d at 1555.

23

### 6. *a receptacle adapter located at the exit opening of the trap unit*

DPCC proposes that a "receptacle adapter located at the exit opening of the trap unit" means "a device that is distinct from the trap entrance unit which receives the receptacle and mechanically attaches the receptacle to the trap and is located proximate the exit opening of the trap entrance unit." Doc. 40 at 9. Blazer proposes this term means "a connector for joining a receptacle to the trap." *Id.*

The court points the parties to the discussion about "receptacle adapter" in Section 2 above. This discussion takes care of all points made by both parties. The court holds that **plain and ordinary meaning** can be used to determine what "receptacle adapter located at the exit opening of the trap unit" means as "receptacle adapter" has already been construed.

### 7. *adapted to receive*

DPCC proposes that "adapted to receive" means "the receptacle adapter accepts the receptacle to positively retain the receptacle or allow the receptacle's removal." Doc. 49 at 17. Blazer contend that no construction is necessary and that plain and ordinary meaning. *Id.*

The court holds that "adapted to receive" is synonymous with "configured to receive." Thus, **plain and ordinary meaning applies**.

24

\* \* \* \* \*

In accordance with the *Markman* hearing entered herewith, the court **ADOPTS** the preceding claim constructions.

**DONE** and **ORDERED** this 14th day of December, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

FILED

2020 Jan-24  PM 04:1
U.S. DISTRICT COURT
N.D. OF ALABAM

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

DAVIS PRODUCT CREATION )
AND CONSULTING, LLC d/b/a )
BEESNTHINGS, )
       )
     Plaintiff, )
       ) Civil Action Number: 1:19-cv-00848-CLM
v. )
       )
BRIAN BLAZER d/b/a )
CARPENTER BEE SOLUTIONS, )
       )
     Defendant. )

## CORRECTED SECOND AMENDED COMPLAINT

Plaintiff Davis Product Creation and Consulting, LLC d/b/a BeesNThings ("DPCC"), by and through its undersigned counsel, files this Second Amended Complaint against Defendant Brian Blazer d/b/a Carpenter Bee Solutions ("Blazer") as follows:

### Nature of the Action

1.    This is a patent infringement action to stop Blazer's infringement of DPCC's United States Patent Nos. 6,766,611 (the " '611 Patent", a true and correct copy of which is attached hereto as Exhibit A), D672,426 (the " '426 Patent", a true and correct copy of which is attached hereto as Exhibit B), and D690,384 (the " '384 Patent", a true and correct copy of which is attached hereto as Exhibit C).  DPCC also seeks a declaratory judgment concerning its absolute intervening rights under

35 U.S.C. § 252.  Finally, DPCC seeks damages pursuant to certain state law claims arising from Blazer's conduct as described herein.

## Parties

2.      DPCC is a limited liability company organized and existing under the laws of the State of Alabama. DPCC's principal place of business is 4413 Northern Blvd., Montgomery, Alabama 36110.  DPCC sells, offers for sale and imports various models of insect traps, specifically, carpenter bee traps.

3.      Blazer is an adult individual residing in the State of Alabama with an address of 230 County Road 880, Heflin, Alabama 36264.

## Jurisdiction & Venue

4.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 252, 271, 281, 283, 284, 285, and 289.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

6.      This Court has personal jurisdiction over Blazer as he resides in the State of Alabama and regularly conducts business within this state and within the Northern District of Alabama.

2

## Facts Common to All Counts

7.      On July 27, 2004, the United States Patent and Trademark Office ("USPTO") issued the '611 Patent. DPCC is the owner, by assignment, of all right title and interest in and to the '611 Patent. The '611 Patent is valid and in force.

8.      On December 11, 2012, the USPTO issued the '426 Patent. DPCC is the owner, by assignment, of all right title and interest in and to the '426 Patent. The '426 Patent is valid and in force.

9.      On September 24, 2013, the USPTO issued the '384 Patent. DPCC is the owner, by assignment, of all right title and interest in and to the '384 Patent. The '384 Patent is valid and in force.

10.     On March 8, 2016, DPCC informed Blazer, through Blazer's then-current counsel, Joseph Gleason ("Gleason"), that certain of Blazer's carpenter bee traps then being sold or offered for sale infringe either the '611 Patent, the '426 Patent and/or the '384 Patent. A true and correct copy of the March 8, 2016 letter is attached hereto as Exhibit D.

11.     On June 6, 2017, the USPTO issued United States Patent No. RE46,421 ("'421 Patent", a true and correct copy of which is attached hereto as Exhibit E). Blazer purports to be the sole assignee and owner of the '421 Patent.

12.     On February 21, 2018, Gleason, on behalf of Blazer, submitted a notice to Amazon.com alleging that certain of DPCC's carpenter bee traps (the "Side

3

Mounted Traps", examples of which are pictured below) being sold on Amazon.com infringe the '421 Patent. A copy of the "Policy Warning" received by DPCC is attached hereto as Exhibit F. Amazon.com removed the Side Mounted Traps from its website in response to the notice.





13.     On March 2, 2018, counsel for DPCC informed Gleason of DPCC's absolute intervening rights, pursuant to 35 U.S.C. § 252, to sell or offer to sell its remaining inventory of Side Mounted Traps (a true and correct copy of the letter is attached hereto as Exhibit G). Counsel for DPCC attempted numerous times to contact Gleason after March 2, 2018 to discuss the matter. As set forth in Exhibit G, DPCC requested that Blazer inform Amazon.com of DPCC's rights to sell or offer for sale the Side Mounted Traps so that DPCC's products would be re-listed by Amazon.com. Blazer failed to do so and DPCC has suffered damages as a result of Blazer's actions as its Side Mounted Traps have not appeared on Amazon for at least fifteen (15) months.

14.     On March 28, 2019, Blazer contacted Home Depot, Inc. ("Home Depot") alleging that the Side Mounted Traps being sold by DPCC on www.homedepot.com infringe the '421 Patent. A true and correct copy of the March 28, 2019 email is attached hereto as Exhibit H.

15.     On May 9, 2019, attorney Rene Vasquez ("Vasquez"), on Blazer's behalf, sent Home Depot a letter making similar allegations concerning the Side Mounted Traps as Blazer's March 28, 2019 email. A true and correct copy of the May 9, 2019 letter is attached hereto as Exhibit I.

16.     Blazer has previously sent notices to various distributors or retailers of DPCC's products improperly accusing DPCC of patent infringement. Vasquez has

likewise recently sent notices to various DPCC retailers or distributors improperly alleging DPCC's infringement of the '421 Patent.

17.    Blazer, via his website at www.carpenterbeesolutions.com, has sold various models of infringing bee traps, including (i) "The Best Bee Trap"; (ii) "The Simple Box Bee Trap"; and (iii) "The Super Carpenter Bee Condo".  See Exhibit D.

18.    Blazer's website, www.carpenterbeesolutions.com, now automatically redirects to the website www.mybeetrap.com owned and operated by Mac's, LLC, who, upon information and belief, has licensed Blazer's intellectual property. www.mybeetrap.com sells and offers for sale the following infringing bee traps: (i) the "Cabin Style Bee Trap"; (ii) the "Tall Bee Trap"; (iii) the "Large Bee Trap"; and (iv) the "Milled Bee Trap". A true and correct copy of www.mybeetrap.com showing these models offered for sale is attached hereto as Exhibit J.

<u>Count I – Tortious Interference with Business/Contract Relations</u>

19.    DPCC hereby incorporates paragraphs 1 through 17, inclusive, as if fully set forth herein.

20.    Blazer and/or his agents have continued to make bad faith allegations of infringement concerning DPCC's Side Mounted Traps despite being informed of DPCC's absolute intervening rights to sell or offer for sale these traps.

21.    Blazer's and/or his agents' actions as described herein constitute a bad faith effort to improperly enforce the '421 Patent. Such actions include, but are not

limited to: (i) the failure to instruct Amazon.com to "re-list" the Side Mounted Traps after the March 2, 2018 letter informing Blazer and his agents of DPCC's absolute intervening rights; (ii) the email to Home Depot of March 28, 2019 alleging infringement of the '421 Patent; and (iii) Vasquez's letter of May 9, 2019 to Home Depot.

22.     DPCC had a business or contractual relationship with Amazon.com of which Blazer and/or his agents were aware and to which Blazer was a stranger.

23.     Blazer intentionally interfered with DPCC's business or contractual relationship with Amazon.com by refusing to acknowledge DPCC's absolute intervening rights and the right to sell or offer for sale the Side Mounted Traps on Amazon.com. Blazer has further attempted to interfere with DPCC's business and contractual relations with Home Depot.

24.     DPCC has suffered and will continue to suffer damages as a result of Blazer's and/or his agents' actions.

Count II – Violation of Ala. Code § 8-12A-1 <em>et seq.</em> (1975)

25.     DPCC hereby incorporates paragraphs 1 through 17, inclusive, as if fully set forth herein.

26.     Blazer and/or his agents have continued to make bad faith claims of infringement of the '421 Patent despite knowledge of DPCC's absolute intervening

7

rights to sell or offer for sale the Side Mounted Traps in violation of Ala. Code § 8-12A-2(a) and (d) (1975).

27.    DPCC has suffered and will continue to suffer damages as a result of Blazer's and/or his agents' actions.

## Count III – Infringement of the '611 Patent

28.    DPCC hereby incorporates paragraphs 1 through 17, inclusive, as if fully set forth herein.

29.    Blazer has in the past directly infringed, and currently infringes, at least claims 1, 4 and 6 of the '611 Patent by selling or offering for sale carpenter bee traps called: (i) "The Best Bee Trap"; (ii) "The Simple Box Bee Trap"; (iii) "The Super Carpenter Bee Condo"; (iv) the "Cabin Style Bee Trap"; (v) the "Tall Bee Trap"; (vi) the "Large Bee Trap"; and (vii) the "Milled Bee Trap". See Exhibits D and J.

30.    Blazer has in the past indirectly infringed, and currently indirectly infringes, at least claims 1, 4 and 6 of the '611 Patent by selling or offering for sale one or more of the following carpenter bee traps called: (i) "The Best Bee Trap"; (ii) "The Simple Box Bee Trap"; (iii) "The Super Carpenter Bee Condo"; (iv) the "Cabin Style Bee Trap"; (v) the "Tall Bee Trap"; (vi) the "Large Bee Trap"; and (vii) the "Milled Bee Trap". See Exhibits D and J.

31.    DPCC provided Blazer written notice of Blazer's infringement, thus Blazer had direct and actual notice of his infringement.

8

32. Accordingly, Blazer's infringement of the '611 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

33. DPCC reserves the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '611 Patent.

### Count IV – Infringement of the '426 Patent

34. DPCC hereby incorporates paragraphs 1 through 17, inclusive, as if fully set forth herein.

35. Blazer has in the past directly infringed claim 1 of the '426 Patent by selling or offering for sale his "The Best Bee Trap". See Exhibit D. DPCC provided Blazer written notice of Blazer's infringement, thus Blazer had direct and actual notice of his infringement.

36. Accordingly, Blazer's infringement of the '426 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

37. DPCC reserves the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '426 Patent.

### Count V – Infringement of the '384 Patent

38. DPCC hereby incorporates paragraphs 1 through 17, inclusive, as if fully set forth herein.

39. Blazer has in the past directly infringed claim 1 of the '384 Patent by selling or offering for sale his "The Super Carpenter Bee Condo". See Exhibit D.

9

DPCC provided Blazer written notice of Blazer's infringement, see Exhibit D, thus Blazer had direct and actual notice of his infringement.

40. Accordingly, Blazer's infringement of the '384 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

41. DPCC reserves the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '384 Patent.

<u>Count VI – Declaratory Judgment</u>

42. DPCC hereby incorporates paragraphs 1 through 17, inclusive, as if fully set forth herein.

43. There is an actual and justiciable controversy, which is both real and substantial, regarding DPCC's absolute intervening rights to sell or offer for sale its remaining inventory of Side Mounted Traps despite the '421 Patent.

44. Pursuant to 28 U.S.C. § 2201, DPCC asks the Court to declare that DPCC, its retailers and its distributors have absolute intervening rights to sell or offer for sale its remaining inventory of Side Mounted Traps pursuant to 35 U.S.C. § 252.

<u>Jury Demand</u>

45. DPCC demands a trial by jury on all issues so triable.

10

## Prayer For Relief

46.  DPCC respectfully requests the following relief:

A.  An adjudication that Blazer has tortiously interfered with DPCC's business and/or contractual relations and DPCC is entitled to compensatory and punitive damages therefor in an amount to be determined at trial;

B.  An adjudication that Blazer has violated Ala. Code § 8-12A-1 *et seq.* (1975) and is entitled to compensatory and exemplary damages therefor in an amount to be determined at trial plus attorneys' fees and costs;

C.  An adjudication that Blazer has infringed the '611 Patent, and that such infringement has been willful and deliberate;

D.  A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '611 Patent together with interest and costs;

E.  A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '611 Patent;

F.   An adjudication that Blazer has infringed the '426 Patent, and that Blazer's infringement of the '426 has been willful and deliberate;

G.   A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '426 Patent together with interest and costs;

H.   A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '426 Patent and other damages as determined by the Court under 35 U.S.C. § 289;

I.   An adjudication that Blazer has infringed the '384 Patent, and that such infringement has been willful and deliberate;

J.   A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '384 Patent together with interest and costs;

K.   A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '384 Patent and other damages as determined by the Court under 35 U.S.C. § 289;

L.   A judgment declaring that this case is exceptional and awarding DPCC its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 of the Patent Act;

M.   A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining Blazer from further acts of infringement with respect to the claims and patents addressed herein;

N.   A declaratory judgment providing that DPCC, its retailers and its distributors have absolute intervening rights to sell or offer for sale its remaining inventory of Side Mounted Traps pursuant to 35 U.S.C. § 252; and

O.   Such other and further relief as the Court deems just and proper.

_S/C. Gregory Burgess_

C. Gregory Burgess (ASB-1519-R79C)
Jeremy A. Smith (ASB-1731-J73S)
Ambria M. Lankford (ASB-2461-Q94V)

**Attorneys for plaintiff Davis Product Creation and Consulting, LLC d/b/a BeesNThings**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087 (35804)
2101 West Clinton Avenue, Suite 102
Huntsville, Alabama 35805
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: cgb@lanierford.com
         jas@lanierford.com
         aml@lanierford.com

14

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

RENÉ A. VAZQUEZ
**GARTEISER HONEA, PLLC**
119 W Ferguson
Tyler, Texas 75702
Telephone: (888) 908-4400 x105
Facsimile: (888) 908-4400
Email: rvazquez@ghiplaw.com

THOMAS G. FASONE III
**GARTEISER HONEA, PLLC**
119 W Ferguson
Tyler, Texas 75702
Telephone: (888) 908-4400 x104
Facsimile: (888) 908-4400
Email: tfasone@ghiplaw.com

VINCENT J. GRAFFEO
**GRAFFEO LAW, LLC**
2119 3rd Avenue North, Suite 203
Birmingham, Alabama 35203
Telephone: (205) 994-8249
Facsimile: (205) 994-8215
Email: vincent@graffeolaw.com

*S/C. Gregory Burgess*
C. Gregory Burgess

FILED

2020 Feb-07 PM 04:0
U.S. DISTRICT COUR
N.D. OF ALABAM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DAVIS PRODUCT CREATION AND CONSULTING, LLC d/b/a BEESNTHINGS, | ) ) ) | |
| | ) | Case No. 1:19-cv-00848-CLM |
| | ) ) | |
| Plaintiff, | ) | **Jury Trial Requested** |
| | ) ) | |
| v. | ) ) | |
| | ) | |
| BRIAN BLAZER d/b/a CARPENTER BEE SOLUTIONS, | ) ) ) | |
| | ) | |
| Defendant. | | |

EXHIBIT 7
Retrunc!
6-16-22   M1+

## DEFENDANT BRIAN BLAZER'S
## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Brian Blazer d/b/a Carpenter Bee Solutions ( "Blazer" or "Defendant") hereby

provides its Answer, Affirmative Defenses, and Counterclaims to the Corrected Second Amended

Complaint of Plaintiff Davis Product Creation and Consulting, LLC d/b/a BeesNThings ("DPCC" or

"Plaintiff for tortious interference with business/contract relations, violation of Ala. Code § 8-12A-1 *et*

*seq.* (1975) and patent infringement ("Second Amended Complaint") as follows:

## NATURE OF THE ACTION

1.      Blazer admits that the Second Amended Complaint  purports to bring a patent

infringement action, a declaratory judgment action, and state law claims seeking damages, but denies

that DPCC has any viable claim thereunder. Blazer admits that what appears to be U.S. Patent No.

6,766,611 ("the '611 Patent") was attached to the Second Amended Complaint as Exhibit A, what

appears to be U.S. Patent No. D672,426 ("the '426 Patent") was attached to the Second Amended

Complaint as Exhibit B, and what appears to be U.S. Patent No. D690,384 ("the '384 Patent") was attached to the Second Amended Complaint as Exhibit C. Blazer denies that DPCC is entitled to a declaratory judgment under 35 U.S.C. § 252. Blazer further denies that DPCC is entitled to any damages pursuant to state law claims.

## PARTIES

2.      Blazer admits that DPCC sells, offers for sale and imports carpenter bee traps. Blazer is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2, and therefore denies them.

3.      Blazer admits that he is an adult individual residing in the State of Alabama with an address of 230 County Road 880, Heflin, Alabama 36264.

## JURISDICTION AND VENUE

4.      Blazer admits that the Second Amended Complaint purports to bring an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, but denies that DPCC has any viable claim thereunder. Blazer further admits that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Blazer admits that venue is proper in this District.

6.      Blazer admits that this Court has personal jurisdiction over Blazer.

## FACTUAL ALLEGATIONS

7.      Blazer admits that the United States Patent & Trademark Office ("USPTO") issued the '611 Patent on July 27, 2004. Blazer denies that the '611 Patent is valid. Blazer is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 7, and therefore denies them.

8.      Blazer admits that the USPTO issued the '426 Patent on December 11, 2012. Blazer denies that the '426 Patent is valid. Blazer is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8, and therefore denies them.

9.      Blazer admits that the USPTO issued the '384 Patent on September 24, 2013. Blazer denies that the '384 Patent is valid. Blazer is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9, and therefore denies them.

10.      Blazer admits that what appears to be a letter dated March 8, 2016 addressed to Joseph Gleason was attached to the Second Amended Complaint as Exhibit D. Blazer is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10, and therefore denies them.

11.      Blazer admits the allegations of Paragraph 11.

12.      Blazer admits that Gleason, on behalf of Blazer, submitted a notice to Amazon.com alleging that certain of DPCC's carpenter bee traps being sold on Amazon.com appear to infringe the '421 Patent. Blazer admits that what appears to be a "Policy Warning" from the email address notice@amazon.com is attached to the Second Amended Complaint as Exhibit F. Blazer is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12, and therefore denies them.

13.      Blazer admits that what appears to be a letter dated March 2, 2018 addressed to Joseph Gleason was attached to the Second Amended Complaint as Exhibit G, and the Joseph Gleason received such letter. Blazer is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13, and therefore denies them.

14.     Blazer admits that what appears to be an email dated March 28, 2019 from "wildgoatfoundation@yahoo.com" to Tonya Hicks was attached to the Second Amended Complaint as Exhibit H. Blazer denies all other allegations of Paragraph 14.

15.     Blazer admits that attorney René Vazquez ("Vazquez") sent Home Depot a letter dated May 9, 2019 which indicated that the carpenter bee traps pictured on pages 3-6 of Exhibit I "appear to infringe the '421 Patent." Blazer denies all other allegations of Paragraph 15.

16.     Blazer admits that Vazquez sent notices to various distributors or retailers of DPCC's products and that Blazer sent notices to various distributors or retailers of DPCC's products. Blazer denies all other allegations of Paragraph 16.

17.     Blazer admits he has sold various models of bee traps through his website at www.carpenterbeesolutions.com. Blazer denies that such bee traps are infringing. Blazer admits that Paragraph 17 refers to an "Exhibit D" but that no such "Exhibit D" is attached to the Second Amended Complaint. Blazer denies all other allegations of Paragraph 17.

18.     Blazer admits the website www.carpenterbeesolutions.com redirects those who access it to the website www.mybeetrap.com. Blazer admits the website www.mybeetrap.com purports to sell or offer to sell bee traps. Blazer denies that such bee traps are infringing. Blazer admits that Paragraph 18 refers to an "Exhibit J" but that no such "Exhibit J" is attached to the Second Amended Complaint . Blazer denies all other allegations of Paragraph 18.

## COUNT I
## TORTIOUS INTERFERENCE WITH BUSINESS/CONTRACT RELATIONS

19.     Blazer incorporates its responses to Paragraphs 1-18 above, as if fully set forth herein.

20.     Blazer denies the allegations of Paragraph 20.

21.     Blazer denies the allegations of Paragraph 21.

22.     Blazer is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22, and therefore denies them.

23.     Blazer denies the allegations of Paragraph 23.

24.     Blazer denies the allegations of Paragraph 24.

## COUNT II
### VIOLATION OF ALA. CODE § 8-12A-1 *et seq.* (1975)

25.     Blazer incorporates its responses to Paragraphs 1-24 above, as if fully set forth herein.

26.     Blazer denies the allegations of Paragraph 26.

27.     Blazer denies the allegations of Paragraph 27.

## COUNT III
### INFRINGEMENT OF THE '611 PATENT

28.     Blazer incorporates its responses to Paragraphs 1-27 above, as if fully set forth herein.

29.     Blazer denies the allegations of Paragraph 29.

30.     Blazer admits that written notice alleging infringement was provided to Blazer. Blazer denies all other allegations of Paragraph 30.

31.     Blazer denies the allegations of Paragraph 31.

32.     Blazer denies the allegations of Paragraph 32.

33.     Blazer denies that DPCC may reserve any rights to amendments not authorized by applicable rules of procedure and/or by permission of the Court.

## COUNT IV
### INFRINGEMENT OF THE '426 PATENT

34.     Blazer incorporates its responses to Paragraphs 1-33 above, as if fully set forth herein.

35.     Blazer denies the allegations of Paragraph 35.

36. Blazer denies the allegations of Paragraph 36.

37. Blazer denies that DPCC may reserve any rights to amendments not authorized by applicable rules of procedure and/or by permission of the Court.

## COUNT V
## INFRINGEMENT OF THE '384 PATENT

38. Blazer incorporates its responses to Paragraphs 1-37 above, as if fully set forth herein.

39. Blazer denies the allegations of Paragraph 39.

40. Blazer denies the allegations of Paragraph 40.

41. Blazer admits that DPCC is requesting the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '384 Patent.

## COUNT VI
## DECLARATORY JUDGMENT

42. Blazer incorporates its responses to Paragraphs 1-41 above, as if fully set forth herein.

43. Blazer admits there is a justiciable controversy concerning DPCC's intervening rights.

44. Blazer denies that DPCC is entitled to the declaratory judgment requested in Paragraph 44.

## JURY DEMAND

45. Blazer admits that Plaintiff demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

46. Blazer denies that Plaintiff is entitled to any of the relief requested in DPCC's Prayer for Relief.

## **GENERAL DENIAL**

Except as specifically admitted herein, Blazer denies each and every allegation contained in Plaintiff's Second Amended Complaint.

## **AFFIRMATIVE DEFENSES**

Pursuant to Federal Rule of Civil Procedure 8(c), and without assuming any burden that it would not otherwise bear or admitting any of the allegations in the Second Amended Complaint, and reserving its right to assert additional defenses, Blazer asserts the following affirmative defenses to Plaintiff's Second Amended Complaint:

### **First Affirmative Defense**

Blazer's communications with DPCC's retailors or distributors were in good faith and justified.

### **Second Affirmative Defense**

Blazer does not infringe and has not infringed any claim of the '611 Patent literally, directly, indirectly, contributorily, by way of inducement, and/or under the doctrine of equivalents.

### **Third Affirmative Defense**

Blazer does not infringe and has not infringed any claim of the '426 Patent literally, directly, indirectly, contributorily, by way of inducement, and/or under the doctrine of equivalents.

### **Fourth Affirmative Defense**

Blazer does not infringe and has not infringed any claim of the '384 Patent literally, directly, indirectly, contributorily, by way of inducement, and/or under the doctrine of equivalents.

### **Fifth Affirmative Defense**

The '611 Patent is invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

### Sixth Affirmative Defense

The '426 Patent is invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

### Seventh Affirmative Defense

The '384 Patent is invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

### Eighth Affirmative Defense

Plaintiff's claims are barred by prosecution history estoppel.

### Ninth Affirmative Defense

Plaintiff cannot prove that this is an exceptional case justifying an award of attorney fees against Blazer pursuant to 35 U.S.C. § 285.

### Tenth Affirmative Defense

Any claim by Plaintiff for damages is limited under 35 U.S.C. § 287. Plaintiff is barred under 35 U.S.C. § 287 from recovering damages prior to the date of the filing of the Second Amended Complaint.

### Eleventh Affirmative Defense

At least Counts I and II fail to state a claim for which relief can be granted.

### RESERVATION OF RIGHTS

Blazer reserves the right to add any additional defenses or counterclaims that discovery may reveal.

### PRAYER FOR RELIEF

Blazer respectfully requests that Plaintiff's Second Amended Complaint be dismissed with prejudice, that this case be found exceptional under 35 U.S.C. § 285, and that Blazer be awarded its reasonable attorney fees, costs, and such further relief as the Court may deem just and proper.

## COUNTERCLAIMS

Defendant/Counterclaimant Brian Blazer ("Blazer") asserts counterclaims against Plaintiff/Counter-Defendant as follows:

## NATURE AND BASIS OF ACTION

1.      This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United States Patent Act, 35 U.S.C. § 1 *et seq.* Blazer requests declarations that: (i) it does not infringe any valid, enforceable claim of the '611 Patent, '426 Patent and '384 Patent; and (ii) the '611 Patent, '426 Patent and '328 Patent are invalid.

2.      This is also a patent infringement action to stop DPCC's infringement of the '421 Patent, which is a Reissue of U.S. Patent No. 8.375,624 (the '624 Patent"). Blazer is the sole assignee and owner of the '421 Patent and the '624 Patent.  Blazer seeks injunctive relief and monetary damages.

## PARTIES

3.      DPCC is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business at 4413 Northern Blvd., Montgomery, Alabama 36110.

4.      DPCC was formed on July 11, 2012. Clifford Davis, Jr. is the registered agent and the only listed organizer of Davis Product Creation and Consulting, LLC. A true and correct screenshot from the Alabama Secretary of State's website showing the business entity record for DPCC is attached as Exhibit A.

5.      Blazer is an adult individual residing in the State of Alabama with an address of 230 County Road 880, Heflin, Alabama 36264.

## JURISDICTION AND VENUE

6.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 252, 271, 281, 283, 284 and 285, and the Declaratory Judgment Act, 28 U.S.C. §§ 1391 and 1400(b). This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 2201 and 2202.

7.     This Court has personal jurisdiction over Plaintiff by virtue of the fact that Plaintiff has submitted to the jurisdiction of this Court by bringing the instant action.

8.     Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTS COMMON TO ALL COUNTS

9.     On June 6, 2017, the USPTO issued United States Patent No. RE46,421 (the "'421 Patent"), which is a reissue of United States Patent No. 8,375,624 (the "'624 Patent"). A true and correct copy of the '421 Patent is attached hereto as Exhibit B and a true and correct copy of the '624 Patent is attached hereto as Exhibit C. Blazer is the owner, by assignment, of all right, title and interest in and to the '421 Patent. The '421 Patent is valid and in force.

10.     DPCC became aware of DPCC's infringement of the '624 Patent as early as March 2013, which is when Blazer informed DPCC that their bee traps infringed the '624 Patent.

11.     In a letter dated March 15, 2013 ("March 15 Letter"), DPCC, through its counsel, asserted that their bee traps did not infringe the '624 Patent (a true and correct copy of the March 15 Letter is attached as Exhibit D). In support of this assertion, DPCC included photographs of bee traps that incorporated downward sloping holes (see Exhibit D) and asserted that all of the traps they sell include the downward sloping holes.

12. On information and belief, DPCC sold or offered for sale infringing bee traps with upward sloping holes prior to the March 15 Letter and continued to sell or offer for sale infringing bee traps with upward sloping holes after the March 15 Letter.

13. On information and belief, DPCC sold or offered for sale infringing bee traps that feature a bottom-mounted receptacle (hereinafter referred to as "Bottom Mounted Trap(s)") prior to the March 15 Letter and continued to sell or offer the Bottom Mounted Traps after the March 15 Letter.

14. On February 12, 2016, Blazer purchased a Bottom Mounted Trap from Calhoun Farmers Cooperative, a farmer's market located in Piedmont, Alabama ("Calhoun"). A true and correct copy of a photograph of the Bottom Mounted Trap purchased by Blazer, alongside the purchase receipt, is attached as Exhibit E. On information and belief, the Bottom Mounted Trap purchased by Blazer was sold to Calhoun by a distributor that purchased the Bottom Mounted Trap from DPCC.

15. On February 15, 2016, Blazer purchased a Bottom Mounted Trap from Wallace Farm and Pet Supply, Inc., a retailer located in Bowden JCT, Georgia ("Wallace Farm"). A true and correct copy of a photograph of the Bottom Mounted Trap purchased by Blazer, alongside the purchase receipt, is attached as Exhibit F. On information and belief, the Bottom Mounted Trap purchased by Blazer was sold to Wallace Farm by a distributor that purchased the Bottom Mounted Trap from DPCC.

16. DPCC, via its website (www.beesnthings.com), currently sells and offers for sale two models of infringing traps: (1) "Hanging AST Carpenter Bee Trap"; and (2) "BM Carpenter Bee Trap." These traps feature a side-mounted receptacle (hereinafter referred to as "Side Mounted Trap(s)"). A true and correct screenshot of DPCC's website taken on August 25, 2019 showing these two models for sale is attached hereto as Exhibit G.

17. DPCC also sells infringing traps to various retailers and distributors for resale.

18.     DPCC currently sells infringing Side Mounted Traps to Walmart, Sears, Home Depot, Hart Ace Hardware and Gold Crest Distributing. True and correct screenshots from the websites of Walmart, Sears, Home Depot, Hart Ace Hardware and Gold Crest Distributing showing Side Mounted Traps supplied by DPCC for sale are attached hereto as Exhibit H.

19.     DPCC currently sells infringing Bottom Mounted Traps to Lowes Home Improvement, Tractor Supply Company and Sears. True and correct screenshots from the websites of Lowes Home Improvement, Tractor Supply Company and Sears showing Bottom Mounted Traps supplied by DPCC for sale are attached hereto as Exhibit I.

20.     Blazer does not own or control the website having a URL of www.mybeetrap.com.

21.     Blazer does not manufacture, sell, offer for sale or import any of the carpenter bee traps offered for sale at www.mybeetrap.com.

22.     Blazer does not currently manufacture, sell, offer for sale or import any carpenter bee traps.

### Count I – Declaratory Judgment of Non-Infringement of the '611 Patent

23.     Blazer hereby incorporates paragraphs 1 through 22, inclusive, of its Counterclaims as if set forth herein in full.

24.     There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1 *et seq.*, concerning Blazer's non-infringement of the claims of the '611 Patent.

25.     Blazer is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '611 Patent.

### Count II – Declaratory Judgment of Non-Infringement '426 Patent

26.     Blazer herby incorporates all prior paragraphs of its Counterclaims as if set forth herein in full.

27.     There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1 *et seq.*, concerning Blazer's non-infringement of the claims of the '426 Patent.

28.     Blazer is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '426 Patent.

### Count III – Declaratory Judgment of Non-Infringement of the '384 Patent

29.     Blazer herby incorporates all prior paragraphs of its Counterclaims as if set forth herein in full.

30.     There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1 *et seq.*, concerning Blazer's non-infringement of the claims of the '384 Patent.

31.     Blazer is entitled to a judicial declaration that it has not and does not infringe directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '384 Patent.

### Count IV – Declaratory Judgment of Invalidity of the '611 Patent

32.     Blazer herby incorporates all prior paragraphs of its Counterclaims as if set forth herein in full.

33.     There is an actual and justiciable controversy between the parties concerning the validity of the '611 Patent asserted against Blazer for failing to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 102, 103 and 112.

34.     Blazer is entitled to a judicial declaration and order that the '611 Patent is invalid.

### Count V – Declaratory Judgment of Invalidity of the '426 Patent

35.     Blazer herby incorporates all prior paragraphs of its Counterclaims as if set forth herein in full.

36.     There is an actual and justiciable controversy between the parties concerning the validity of the '426 Patent asserted against Blazer for failing to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 102, 103 and 112.

37.     Blazer is entitled to a judicial declaration and order that the '426 Patent is invalid.

## Count VI – Declaratory Judgment of Invalidity of the '384 Patent

38.     Blazer herby incorporates all prior paragraphs of its Counterclaims as if set forth herein in full.

39.     There is an actual and justiciable controversy between the parties concerning the validity of the '384 Patent asserted against Blazer for failing to meet the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 102, 103 and 112.

40.     Blazer is entitled to a judicial declaration and order that the '384 Patent is invalid.

## Count VII – Infringement of the '421 Patent

41.     Blazer herby incorporates all prior paragraphs of its Counterclaims as if set forth herein in full.

42.     DPCC has infringed and continues to infringe at least claims 13-17 of the '421 Patent by selling and/or offering for sale its "Hanging AST Carpenter Bee Trap" and "BM Carpenter Bee Trap" (See Exhibit G) that include: (1) a trap entrance unit formed of wood or a wood substitute; (2) an entrance hole that is sized and shaped to provide a primary attractant for carpenter bees and that extends, either horizontally or at an upward angle, from outside the trap entrance unit to an interior of the trap entrance unit on at least one side of the trap entrance unit; (3) an exit opening on the trap entrance unit that provides an exit path from the interior of the trap entrance unit; and (4) a receptacle adapter located at the exit opening of the trap entrance unit that is adapted to receive at least one receptacle and is

adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees.

43.     DPCC has infringed and continues to infringe at least claims 13-17 of the '421 Patent by selling and/or offering for sale Bottom Mounted Traps (See Exhibits E, F and I) that include: (1) a trap entrance unit formed of wood or a wood substitute; (2) an entrance hole that is sized and shaped to provide a primary attractant for carpenter bees and that extends, either horizontally or at an upward angle, from outside the trap entrance unit to an interior of the trap entrance unit on at least one side of the trap entrance unit; (3) an exit opening on the trap entrance unit that provides an exit path from the interior of the trap entrance unit; and (4) a receptacle adapter located at the exit opening of the trap entrance unit that is adapted to receive at least one receptacle and is adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees.

44.     DPCC has infringed and continues to infringe at least claims 1 and 2 of the '421 Patent by selling and/or offering for sale Bottom Mounted Traps (See Exhibits E, F and I) that include: (1) a trap entrance unit forming a plenum and made of wood or a wood substitute; (2) at least one hole drilled through the trap entrance unit that is sized to mimic a natural carpenter bee nest tunnel so as to provide a primary attractant, with the hole extending from the outside of the trap entrance unit to a plenum interior and configured to extend substantially horizontally or at an upward angle; (3) a means to shelter an entrance to the hole to reduce the admittance of ambient light; (4) a receptacle adapter that is substantially located at the bottom of the trap unit that is configured to receive a clear or translucent receptacle; and (5) a receptacle that is provided to receive trapped bees, that is received by the receptacle adapter and that is situated to allow ambient light to enter through the bottom into the plenum interior, thereby providing a secondary attractant.

45.     Blazer provided DPCC notice of its infringement in March 2013 as evidenced by its March 15 Letter (see Exhibit D). DPCC has also admitted to being repeatedly notified of its infringement in Paragraphs 12 and 14-16 of DPCC's First Amended Second Amended Complaint .

46.     Accordingly, DPCC's infringement of the '421 Patent has been willful and deliberate pursuant to 35 U.S.C. § 284.

47.     Blazer is entitled to recover from DPCC the damages sustained by Blazer as a result of DPCC's wrongful acts in an amount subject to proof at trial which, by law, cannot be less than a reasonable royalty, together with interests and costs as fixed by this Court under 35 U.S.C. § 284.

48.     DPCC's infringement of Blazer's exclusive rights under the '421 Patent will continue to damage Blazer, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

49.     Blazer demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

50.     WHEREFORE, Blazer respectfully requests judgement in its favor and against DPCC as follows:

> A. The Court declare that Blazer has not tortuously interfered with DPCC's business and/or contractual relations;
>
> B. The Court declare that Blazer has not violated Ala. Code § 8-12A-1 *et seq.* (1975);
>
> C. The Court declare that Blazer has not and does not infringe, induce infringement or contribute to the infringement of any claim of the '611 Patent;

D. The Court declare that the '611 Patent is invalid;

E. The Court declare that Blazer has not and does not infringe, induce infringement or contribute to the infringement of any claim of the '426 Patent;

F. The Court declare that the '426 Patent is invalid;

G. The Court declare that Blazer has not and does not infringe, induce infringement or contribute to the infringement of any claim of the '384 Patent;

H. The Court declare that the '384 Patent is invalid;

I. The Court declare that DPCC has infringed the '421 Patent and that such infringement has been willful and deliberate;

J. A judgment awarding Blazer compensatory damages as a result of DPCC's infringement of the '421 Patent, together with interest and costs;

K. A judgment awarding Blazer treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of DPCC's willful and deliberate infringement of the '421 Patent;

L. A judgment declaring that this case is exceptional and awarding Blazer its expenses, costs and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 of the Patent Act;

M. A grant of a permanent injunction pursuant to 35 U.S.C. § 283, enjoining DPCC from further acts of infringement with respect to the '421 Patent;

N. A judgement that DPCC, its retailer and its distributors are not entitled to any intervening rights to sell or offer for sale any of its Side Mounted Traps; and

O. Such other and further relief as the Court deems just and proper.

Dated: February 7, 2020

/s/ René A. Vazquez
René A. Vazquez (*Pro Hac Vice*)
Thomas G. Fasone III (*Pro Hac Vice*)
Vincent J. Graffeo (ASB-2960-N75G)

René A. Vazquez (rvazquez@ghiplaw.com)
Thomas G. Fasone III (tfasone@ghiplaw.com)
**GARTEISER HONEA, PLLC**
119 W Ferguson
Tyler, TX 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

Vincent J. Graffeo (vincent@graffeolaw.com)
**GRAFFEO LAW, LLC**
2119 3rd Ave. N., Suite 203
Birmingham, Alabama 35203
Telephone: (205) 994-8249

***Counsel for Defendant Brian Blazer***

FILED
2022 Jan-07 PM 01:1
U.S. DISTRICT COURT
N.D. OF ALABAM,

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| DAVIS PRODUCT CREATION AND CONSULTING, LLC d/b/a BEESNTHINGS, | ) ) ) ) |
| Plaintiff, | ) |
| v. | ) Civil Action Number: 1:19-cv-00848 CLM |
| | ) |
| BRIAN BLAZER d/b/a CARPENTER BEE SOLUTIONS, | ) ) |
| | ) |
| Defendant. | ) |

EXHIBIT
Kotrame
6-16-22 M.H.
PENGAD 800-631-6989

## PLAINTIFF'S CONSOLIDATED COMPLAINT

Plaintiff, Davis Product Creation and Consulting, LLC d/b/a BeesNThings

("DPCC"), by and through its undersigned counsel, files its Consolidated Complaint,

as ordered by the Court (doc. 113), against Defendant, Brian Blazer d/b/a Carpenter

Bee Solutions ("Blazer"), as follows:

### Nature of the Action

1.      This is a patent infringement action to stop Blazer's direct and indirect

infringement of DPCC's United States Patent Nos. 6,766,611 (the " '611 Patent", a

true and correct copy of which is attached hereto as Exhibit A), D672,426 (the " '426

Patent", a true and correct copy of which is attached hereto as Exhibit B), and

D690,384 (the " '384 Patent", a true and correct copy of which is attached hereto as

Exhibit C). DPCC also seeks a declaratory judgment concerning its absolute

intervening rights under 35 U.S.C. § 252 as well as a declaratory judgment of non-infringement concerning certain carpenter bee traps and injunctive relief related thereto. Finally, DPCC seeks damages pursuant to certain state law claims arising from Blazer's conduct as described herein.

Parties

2.      DPCC is a limited liability company organized and existing under the laws of the State of Alabama. DPCC's principal place of business is 4413 Northern Blvd., Montgomery, Alabama 36110. DPCC sells, offers for sale, and imports various models of insect traps, specifically, carpenter bee traps.

3.      Blazer is an adult individual residing in the State of Alabama with an address of 230 County Road 880, Heflin, Alabama 36264.

Jurisdiction & Venue

4.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 252, 271, 281, 283, 284, 285, and 289. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

2

6.      This Court has personal jurisdiction over Blazer as he resides in the State of Alabama and regularly conducts business within this state and within the Northern District of Alabama.

Facts Common to All Counts

7.      On July 27, 2004, the United States Patent and Trademark Office (the "USPTO") issued the '611 Patent. DPCC is the owner, by assignment, of all right title and interest in and to the '611 Patent. The '611 Patent is valid and in force.

8.      On December 11, 2012, the USPTO issued the '426 Patent. DPCC is the owner, by assignment, of all right title and interest in and to the '426 Patent. The '426 Patent is valid and in force.

9.      On September 24, 2013, the USPTO issued the '384 Patent. DPCC is the owner, by assignment, of all right title and interest in and to the '384 Patent. The '384 Patent is valid and in force.

10.     On March 8, 2016, DPCC informed Blazer, through Blazer's then-current counsel, Joseph Gleason ("Gleason"), that certain of Blazer's carpenter bee traps then being sold or offered for sale infringe either the '611 Patent, the '426 Patent and/or the '384 Patent. A true and correct copy of the March 8, 2016, letter is attached hereto as Exhibit D. Thus Blazer had knowledge of these patents and his infringement thereof.

3

11.     On June 6, 2017, the USPTO issued United States Patent No. RE46,421 (" '421 Patent", a true and correct copy of which is attached hereto as Exhibit E). Blazer purports to be the sole assignee and owner of the '421 Patent.

12.     Blazer has a long history of claiming infringement of the '421 Patent (or the prior version of the '421 Patent, namely U.S. Patent No. 8,375,624, against any party who dares sell a carpenter bee trap. *See, e.g., Brian Robert Blazer v. Best Bee Brothers LLC et al.* (Case No. 2:20-cv-00480-BHL [pending in the Eastern District of Wisconsin])[1]; *Brian Blazer v. Lowe's Companies, Inc.* (Case No. 6:20-cv-00276-ADA [pending in the Western District of Texas]); *Brian Blazer d/b/a Carpenter Bee Solutions v. The Home Depot U.S.A., Inc.* (Case No. 6:20-cv-00285-ADA [pending in the Western District of Texas]); *Blazer v. Chrisman Mill Farms LLC* (Case No. 5:17-cv-00430-REW-MAS [filed in the Eastern District of Kentucky]); *Blazer v. Amazon.com, Inc.* (Case No. 1:15-cv-01063-SGC [filed in the Northern District of Alabama]); *Blazer v. Ebay Inc.* (Case No. 1:15-cv-01059-KOB [filed in the Northern District of Alabama]) and finally *Blazer v. Chrisman Mill Farms LLC* (Case No. 1:17-cv-00320-VEH [filed in the Northern District of Alabama]).

---

[1] The Court recently granted summary judgment against Blazer in this action finding, in part, that Blazer's proposed construction of the term "receptacle adapter" was overly broad and that the accused devices did not include a receptacle adapter when that term was properly defined.

13.     The parties are currently involved in two (2) separate civil actions across the United States that were filed by Blazer after DPCC had filed its initial complaint in August of 2019 due to Blazer's continued harassment/tortious interference of DPCC's customers. Those were filed against DPCC's customers/distributors in Texas and are styled *Brian Blazer v. Lowe's Companies, Inc.* (Case No. 6:20-cv-00276-ADA [pending in the Western District of Texas]) and *Brian Blazer d/b/a Carpenter Bee Solutions v. The Home Depot U.S.A., Inc.* (Case No. 6:20-cv-00285-ADA [pending in the Western District of Texas]) (the "Texas Actions"). True and correct copies of the complaints in the Texas Actions are attached hereto as Exhibits F and G, respectively. The Texas Actions were filed in 2020 and are currently stayed pending the resolution of these matters after DPCC was forced to intervene pursuant to the Federal Rules of Civil Procedure. The Texas Actions were filed after the Alabama Action and were meant to harass DPCC and its customers.

14.     On February 21, 2018, Gleason, on behalf of Blazer, submitted a notice to Amazon.com alleging that certain of DPCC's carpenter bee traps (the "Side Mounted Traps", examples of which are pictured below) being sold on Amazon.com infringe the '421 Patent. A copy of the "Policy Warning" received by DPCC is attached hereto as Exhibit H. Amazon.com removed the Side Mounted Traps from its website in response to the notice.





15.    On March 2, 2018, counsel for DPCC informed Gleason of DPCC's absolute intervening rights, pursuant to 35 U.S.C. § 252, to sell or offer to sell its remaining inventory of Side Mounted Traps (a true and correct copy of the letter is attached hereto as Exhibit I). Counsel for DPCC attempted numerous times to contact Gleason after March 2, 2018, to discuss this matter but was unsuccessful. As

6

set forth in Exhibit I, DPCC requested that Blazer inform Amazon.com of DPCC's rights to sell or offer for sale the Side Mounted Traps so that DPCC's products would be re-listed by Amazon.com. Blazer failed to do so and DPCC has suffered damages as a result of Blazer's actions[2] as its Side Mounted Traps have not been listed on Amazon.com for a substantial period of time and are now unsellable due to their age, condition, and change in demand for trap related products. This action has also resulted in the destruction of DPCC's good standing with Amazon and highly rated seller account which takes years to achieve.

16.     As part of the resolution of Blazer's prior infringement suit against Amazon, Amazon provided Blazer an expedited process that allows Blazer, or someone acting on his behalf, to remove allegedly infringing items from Amazon that is not available to the general public. *See, e.g.,* Exhibit J, a true and correct copy of Blazer's complaint in the case styled Brian Robert Blazer v. Best Bee Brothers LLC et al. (Case No. 2:20-cv-00480-BHL [pending in the Eastern District of Wisconsin]), at ¶ 15. Upon information and belief, this process allows Blazer to remove allegedly infringing items from Amazon without any substantial review or oversight from Amazon. Upon information and belief, this expedited process

---

[2] As a result of Blazer's actions, DPCC was unable to sell approximately 30,000 Side Mounted Traps resulting hundreds of thousands of lost profits and now has to dispose of the Side Mounted Traps as they are no longer suitable for sale causing DPCC to suffer more damages and harm.

requires the victim to request that the complaint be removed directly from the alleged rights owner and if the alleged rights owner refuses, as Blazer has done concerning DPCC's intervening rights, the victim is forced to seek action from the courts.

17.     Blazer, despite DPCC's communications to the contrary, has continued to claim that certain side-mounted carpenter bee traps infringe the '421 Patent. (*See* Blazer's "Preliminary Infringement Contentions", a true and correct copy of which is attached hereto as Exhibit K).

18.     On March 28, 2019, Blazer contacted Home Depot, Inc. ("Home Depot") alleging that the Side Mounted Traps being sold by DPCC on www.homedepot.com infringe the '421 Patent. A true and correct copy of the March 28, 2019, email is attached hereto as Exhibit L.

19.     On May 9, 2019, attorney René Vasquez ("Vasquez"), on Blazer's behalf, sent Home Depot a letter making similar allegations concerning the Side Mounted Traps as Blazer's March 28, 2019 email. A true and correct copy of the May 9, 2019, letter is attached hereto as Exhibit M.

20.     Blazer has previously sent notices to various distributors or retailers of DPCC's products improperly accusing DPCC of patent infringement. Vasquez has, on Blazer's behalf, likewise recently sent notices to various DPCC retailers or distributors improperly alleging DPCC's infringement of the '421 Patent. These letters were sent with Blazer's knowledge and approval.

8

21.     Blazer's ill-founded claims of infringement are even more groundless given that: (i) DPCC informed Blazer, and his previous counsel, of DPCC's absolute intervening rights in the side-mounted bee traps; (ii) Blazer or his counsel choose to ignore DPCC's intervening rights and continued to contact certain DPCC customers/distributors with claims of infringement; (iii) when confronted with DPCC's Motion for Summary Judgment concerning its absolute intervening rights, Blazer and counsel essentially chose to "waive the white flag" and acknowledge such rights, after forcing DPCC to expend tens of thousands of dollars and lose out on hundreds of thousands of dollars in sales to confirm the rights it notified Blazer of over almost four (4) years ago. (*See, e.g.,* Exhibits N and O, which are true and correct copies of DPCC's summary judgment filings and Blazer's response thereto.) Accordingly, DPCC is at severe risk of claims of patent infringement from Blazer, even if such claims are baseless, as acknowledged by Blazer himself.

22.     Blazer's actions with Amazon have significantly injured DPCC in a manner in which cannot be compensated by monetary damages. For example, due to Blazer's claims and willful ignorance over both DPCC's intervening rights and the scope of his patent, DPCC has been unable to sell ANY bee trap or OTHER, NON-RELATED product, on Amazon since March 4, 2018.

23.     DPCC, in its 3rd attempt to appease Blazer's infringement allegations, launched a new line of carpenter bee traps that began being sold in less profitable

9

wholesale markets in early 2020 (the "New Design"). The photos below show the New Design:





24.     The Court has construed the claims of the '421 Patent. (*See* Exhibit P, a true and correct copy of the Claim Construction Order the "Markman Order").

25.     Notably, in the Markman Order, the Court defined the following material terms as they relate to the '421 Patent and the New Design, "a means to

10

shelter an entrance to said hole is provided to reduce the admittance of ambient light" and "a receptacle adapter". *Id.* at pp. 11-21.

26.     The Court defined "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" as a means-plus-function claim and found that the only structure capable of performing the function recite in that claim is the overhanging roof taught in the '421 Patent. *Id.* at p. 12.

27.     The Court defined "a receptacle adapter" as a device that is part of the trap entrance unit that receives the receptacle and attaches the receptacle to the trap. *Id.* at p. 21.

28.     Claim 1 of the '421 Patent requires that an infringing bee trap comprise both a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light and a receptacle adapter. As shown above, the New Design contains neither and, thus, for at least these reasons alone, does not infringe claim 1 or any claim that depends therefrom.

29.     Claim 13 of the '421 Patent requires that an infringing trap comprise a receptacle adapter located at the exit opening of the trap entrance unit, wherein the receptacle adapter is adapted to receive at least one receptacle. The New Design likewise does not comprise such a limitation and thus, for at least this reason alone, does not infringe claim 13 or any claims that depend therefrom.

11

30.     Counsel for DPCC sent both photographs and a model of the New Design to Blazer's counsel in the Alabama Action over twelve (12) months ago to inquire if Blazer believed that trap infringed the '421 Patent. There has been no response.

31.     Given Blazer's past claims of infringement, many of which were ill-founded, DPCC is at serious risk of future claims of infringement from Blazer.

32.     Further, Blazer's actions with Amazon continue to prevent DPCC from selling either the Side Mounted Traps or the New Design on Amazon, removing DPCC from a significant marketplace. Blazer's actions are anti-competitive and amount to patent misuse.

33.     Blazer, via his website at www.carpenterbeesolutions.com, has sold various models of infringing bee traps, including (i) "The Best Bee Trap"; (ii) "The Simple Box Bee Trap"; and (iii) "The Super Carpenter Bee Condo". *See* Exhibit D.

34.     Blazer's website, www.carpenterbeesolutions.com, now automatically redirects to the website www.mybeetrap.com owned and operated by Mac's, LLC, who, upon information and belief, has licensed Blazer's intellectual property. www.mybeetrap.com sells and offers for sale the following infringing bee traps: (i) the "Cabin Style Bee Trap"; (ii) the "Tall Bee Trap"; (iii) the "Large Bee Trap"; and (iv) the "Milled Bee Trap". A true and correct copy of www.mybeetrap.com showing these models offered for sale is attached hereto as Exhibit Q.

## Count I – Tortious Interference with Business/Contract Relations

35.     DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

36.     Blazer and/or his agents have continued to make bad faith allegations of infringement concerning DPCC's Side Mounted Traps despite being informed of DPCC's absolute intervening rights to sell or offer for sale these traps.

37.     Blazer's and/or his agents' actions as described herein constitute a bad faith effort to improperly enforce the '421 Patent. Such actions include but are not limited to: (i) the failure to instruct Amazon.com to "re-list" the Side Mounted Traps after the March 2, 2018 letter informing Blazer and his agents of DPCC's absolute intervening rights; (ii) the email to Home Depot of March 28, 2019 alleging infringement of the '421 Patent; and (iii) Vasquez's letter of May 9, 2019 to Home Depot.

38.     DPCC had a business or contractual relationship with Amazon.com of which Blazer and/or his agents were aware and to which Blazer was a stranger.

39.     Blazer intentionally interfered with DPCC's business or contractual relationship with Amazon.com by refusing to acknowledge DPCC's absolute intervening rights and the right to sell or offer for sale the Side Mounted Traps on Amazon.com. Blazer has further attempted to interfere with DPCC's business and contractual relations with Home Depot and other customers.

13

40. DPCC has suffered and will continue to suffer damages as a result of Blazer's and/or his agents' actions.

## Count II – Violation of Ala. Code § 8-12A-1 *et seq.* (1975)

41. DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

42. Blazer and/or his agents have continued to make bad faith claims of infringement of the '421 Patent despite knowledge of DPCC's absolute intervening rights to sell or offer for sale the Side Mounted Traps in violation of Ala. Code § 8-12A-2(a) and (d) (1975).

43. DPCC has suffered and will continue to suffer damages as a result of Blazer's and/or his agents' actions.

## Count III – Infringement of the '611 Patent

44. DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

45. Blazer has in the past directly infringed, and currently infringes, at least claims 1, 4 and 6 of the '611 Patent by selling or offering for sale carpenter bee traps called: (i) "The Best Bee Trap"; (ii) "The Simple Box Bee Trap"; (iii) "The Super Carpenter Bee Condo"; (iv) the "Cabin Style Bee Trap"; (v) the "Tall Bee Trap"; (vi) the "Large Bee Trap"; and (vii) the "Milled Bee Trap".

14

46.   DPCC provided Blazer written notice of Blazer's infringement, thus Blazer had direct and actual notice of his infringement.

47.   Accordingly, Blazer's infringement of the '611 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

48.   DPCC reserves the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '611 Patent.

<u>Count IV – Infringement of the '426 Patent</u>

49.   DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

50.   Blazer has in the past directly infringed claim 1 of the '426 Patent by selling or offering for sale his "The Best Bee Trap".

51.   DPCC provided Blazer written notice of Blazer's infringement, thus Blazer had direct and actual notice of his infringement.

52.   Accordingly, Blazer's infringement of the '426 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

53.   DPCC reserves the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '426 Patent.

<u>Count V – Infringement of the '384 Patent</u>

54.   DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

55.     Blazer has in the past directly infringed claim 1 of the '384 Patent by selling or offering for sale his "The Super Carpenter Bee Condo". DPCC provided Blazer written notice of Blazer's infringement, thus Blazer had direct and actual notice of his infringement.

56.     Accordingly, Blazer's infringement of the '384 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

57.     DPCC reserves the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '384 Patent.

### Count VI – Declaratory Judgment & Request for Injunctive Relief

58.     DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

59.     There is an actual and justiciable controversy, which is both real and substantial, regarding DPCC's right to sell or offer for sale the New Design Bee Trap, both on Amazon and elsewhere.

60.     Pursuant to 28 U.S.C. § 2201, DPCC asks the Court to declare that DPCC, its retailers and its distributors, have the right to sell the New Design Bee Trap both on Amazon and elsewhere.

61.     Blazer's actions as set forth above impede DPCC's efforts to lawfully sell the Side Mounted Traps and the New Design on Amazon and elsewhere.

62.     DPCC lacks an adequate remedy at law.

63. DPCC is likely to prevail in this case and/or has at least a reasonable chance of success on the merits in this case.

64. Any hardship imposed on Blazer by an injunction as requested herein would not unreasonably outweigh the benefits accruing to DPCC.

65. Accordingly, DPCC is entitled to a preliminary and permanent injunction against Blazer prohibiting Blazer from seeking to remove DPCC's Side Mounted Traps and/or the New Design from selling on Amazon, any similar online platform, or any other distribution channel.

66. Pursuant to 28 U.S.C. § 2201, DPCC asks the Court to declare that DPCC, its retailers and its distributors have absolute intervening rights to sell or offer for sale its remaining inventory of Side Mounted Traps pursuant to 35 U.S.C. § 252.

## Jury Demand

67. DPCC demands a trial by jury on all issues so triable.

## Prayer For Relief

68. DPCC respectfully requests the following relief:

A. An adjudication that Blazer has tortiously interfered with DPCC's business and/or contractual relations and DPCC is entitled to compensatory and punitive damages therefor in an amount to be determined at trial;

17

B.     An adjudication that Blazer has violated Ala. Code § 8-12A-1 *et seq.* (1975) and is entitled to compensatory and exemplary damages therefor in an amount to be determined at trial plus attorneys' fees and costs;

C.     An adjudication that Blazer has infringed the '611 Patent, and that such infringement has been willful and deliberate;

D.     A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '611 Patent together with interest and costs;

E.     A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '611 Patent;

F.     An adjudication that Blazer has infringed the '426 Patent, and that Blazer's infringement of the '426 has been willful and deliberate;

G.     A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '426 Patent together with interest and costs;

H.     A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '426 Patent and other damages as determined by the Court under 35 U.S.C. § 289;

I.     An adjudication that Blazer has infringed the '384 Patent, and that such infringement has been willful and deliberate;

18

J. A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '384 Patent together with interest and costs;

K. A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '384 Patent and other damages as determined by the Court under 35 U.S.C. § 289;

L. A judgment declaring that this case is exceptional and awarding DPCC its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 of the Patent Act;

M. A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining Blazer from further acts of infringement with respect to the claims and patents addressed herein;

N. A declaratory judgment providing that DPCC, its retailers and its distributors have absolute intervening rights to sell or offer for sale its remaining inventory of Side Mounted Traps pursuant to 35 U.S.C. § 252;

O. A declaratory judgment providing that DPCC, its retailers and its distributors have the right to sell the New Design both on Amazon, any similar online platform, or any other distribution;

P. A declaratory judgment providing that the New Design does not infringe the '421 Patent;

Q.  A preliminary and permanent injunction against Blazer prohibiting Blazer from seeking to remove DPCC's Side Mounted Traps and/or the New Design from selling on Amazon, any similar online platform or any other distribution channel; and

R.  Such other and further relief as the Court deems just and proper.

*S/C. Gregory Burgess*
C. Gregory Burgess (ASB-1519-R79C)
Jeremy A. Smith (ASB-1731-J73S)

**Attorneys for plaintiff Davis Product Creation and Consulting, LLC d/b/a BeesNThings**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087 (35804)
2101 West Clinton Avenue, Suite 102
Huntsville, Alabama 35805
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: cgb@lanierford.com
        jas@lanierford.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

STEVEN M. BROM
**BACHUS, BROM & TAYLOR, LLC**
3536 Independence Drive
Birmingham, Alabama 35209
Telephone: (205) 970-6747
Email: sbrom@bachusbrom.com

JOSEPH J. JACOBI
**HENSEN REYNOLDS LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 265-2252
Email: jjacobi@hansenreynolds.com

JEREMY ADELSON
**HANSEN REYNOLDS LLC**
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
Email: jadelson@hansenreynolds.com

*S/C. Gregory Burgess*
C. Gregory Burgess

FILED
2022 Feb-04  PM 02:5'
U.S. DISTRICT COUR'
N.D. OF ALABAM/

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISON

DAVIS PRODUC CREATION )
AND CONSULTING, LLC, )
d/b/a BEESNTHINGS, )
)
      Plaintiff, )
)
v. )   Civil Action No. 1:19-cv-00848-CLM
)
BRIAN BLAZER, d/b/a )   Hon. Corey L. Maze
CARPENTER BEE SOLUTIONS, )
)
      Defendant. )

EXHIBIT 9
Kotrame
6-16-22   MH

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S CONSOLIDATED COMPLAINT

## ANSWER

Defendant Brian Blazer, d/b/a Carpenter Bee Solutions ("Blazer"), for his Answer to the Consolidated Complaint of Plaintiff Davis Product Creation and Consulting, d/b/a BeesNThings ("DPCC" or "Plaintiff"), denies each and every allegation set forth in that Consolidated Complaint that is not specifically admitted herein, and states as follows:

### Nature of the Action

1. This is a patent infringement action to stop Blazer's direct and indirect infringement of DPCC's United States Patent Nos. 6,766,611 (the " '611 Patent", [*sic*] a true and correct copy of which is attached hereto as Exhibit A), D672,426 (the " '426 Patent", [*sic*] a true and correct copy of which is attached hereto as Exhibit B), and D690,384 (the " '384 Patent", [*sic*] a true and correct copy of which is attached

hereto as Exhibit C). DPCC also seeks declaratory judgment concerning its absolute intervening rights under 35 U.S.C. § 252, as well as declaratory judgment of non-infringement concerning certain carpenter bee traps and injunctive relief related thereto. Finally, DPCC seeks damages pursuant to certain state law claims arising from Blazer's conduct as described herein.

**ANSWER:** Blazer admits that Plaintiff's Consolidated Complaint purports to state a cause of action for direct infringement by Blazer of U.S. Patents No. 6,766,611 ("the '611 Patent"), No. D672,426 ("the '426 Patent"), and No. D690,384 ("the '384 Patent"). Blazer denies that Plaintiff's Consolidated Complaint purports to claim any relief for indirect infringement of any U.S. Patent. Blazer further admits that Exhibits A, B, and C to Plaintiff's Consolidated Complaint appear to be copies of the '611 Patent, the '426 Patent, and the '384 Patent, respectively. Blazer further admits that Plaintiff's Consolidated Complaint purports to state causes of action for declaratory judgment concerning absolute intervening rights under 35 U.S.C. § 252, for declaratory judgment of noninfringement of Blazer's U.S. Patent No. RE46,421 ("the '421 Patent"), for injunctive relief, and for damages pursuant to certain Alabama State law claims. Blazer denies that Plaintiff is entitled to any of the relief it purports to claim in its Consolidated Complaint. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 1 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

2

Parties

2. DPCC is a limited liability company organized and existing under the laws of the State of Alabama. DPCC's principal place of business is 4413 Northern Blvd., Montgomery, Alabama 36110. DPCC sells, offers for sale, and imports various models of insect traps, specifically, carpenter bee traps.

**ANSWER:** Blazer admits that Plaintiff sells, offers for sale, and imports into the United States certain carpenter bee traps. Blazer is without knowledge or information sufficient to form a belief as to the truth or falsity of any of the remaining allegations set forth in Paragraph 2 of Plaintiff's Consolidated Complaint and therefore denies all of them and demands strict proof thereof.

3. Blazer is an adult individual residing in the State of Alabama with an address of 230 County Road 880, Heflin, Alabama 36264.

**ANSWER:** Blazer admits the allegations of Paragraph 3 of Plaintiff's Consolidated Complaint.

Jurisdiction & Venue

4. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 252, 271, 281, 283, 284, 285, and 289. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Blazer admits that Counts III, IV, and V of Plaintiff's Consolidated Complaint purport to assert claims that arise under the Patent Laws of the United States and that this Court has jurisdiction over the subject matter of those claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Blazer denies that Plaintiff has

3

pleaded any bases for this Court's jurisdiction over the subject matter of Plaintiff's

other claims for declaratory judgment and for damages pursuant to its Alabama State

law claims. Except for those allegations specifically admitted herein, Blazer denies

each and every other allegation set forth in Paragraph 4 of Plaintiff's Consolidated

Complaint and demands strict proof thereof.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

**ANSWER:** Blazer admits that venue is proper in this judicial district.

6. This Court has personal jurisdiction over Blazer as he resides in the State of Alabama and regularly conducts business within this state and within the Northern District of Alabama.

**ANSWER:** Blazer admits that this Court has personal jurisdiction over him.

<u>Facts Common to All Counts</u>

7. On July 27, 2004, the United States Patent and Trademark Office (the "USPTO") issued the '611 Patent. DPCC is the owner, by assignment, of all right title and interest [*sic*] in and to the '611 Patent. The '611 Patent in valid and in force.

**ANSWER:** Blazer admits that the U.S. Patent and Trademark Office issued

the '611 Patent entitled "Carpenter Bee Trap" to Bruce H. Prince, the sole named

inventor. Blazer denies that the claims of the '611 Patent are valid. Blazer further

denies that the '611 Patent is in force, it having expired no later than March 27, 2021.

Except for those allegations specifically admitted herein, Blazer denies each and

4

every other allegation set forth in Paragraph 7 of Plaintiff's Consolidated Complaint

and demands strict proof thereof.

>8. On December 11, 2012, the USPTO issued the '426 Patent.
>DPCC is the owner, by assignment, of all right title and interest [*sic*] in
>and to the '426 Patent. The '426 Patent is valid and in force.

**ANSWER:** Blazer admits that the U.S. Patent and Trademark Office issued

the '426 Patent entitled "Insect Trap" to Clifford Warren Davis, Jr., the sole named

inventor. Blazer denies that the '426 Patent is valid for at least the reason that it does

not satisfy the conditions for patentability set forth in one or more provisions of the

United States Patent Action, Title 35 of the United States Code, including but not

limited to 35 U.S.C. §§ 101, 102, 103, and 112. Blazer is without knowledge or

information sufficient to form a belief as to the truth or falsity of any of the remaining

allegations of Paragraph 8 of Plaintiff's Consolidated Complaint and therefor denies

the same and demands strict proof thereof.

>9. On September 24, 2013, the USPTO issued the '384 Patent.
>DPCC is the owner, by assignment, of all right title and interest [*sic*] in
>and to the '384 Patent. The '384 Patent is valid and in force.

**ANSWER:** Blazer admits that the U.S. Patent and Trademark Office issued

the '384 Patent entitled "Insect Trap" to Clifford Warren Davis, Jr., the sole named

inventor. Blazer denies that the '384 Patent is valid for at least the reason that it does

not satisfy the conditions for patentability set forth in one or more provisions of the

United States Patent Action, Title 35 of the United States Code, including but not

limited to 35 U.S.C. §§ 101, 102, 103, and 112. Blazer is without knowledge or

information sufficient to form a belief as to the truth or falsity of any of the remaining

allegations of Paragraph 9 of Plaintiff's Consolidated Complaint and therefor denies

the same and demands strict proof thereof.

> 10. On March 8, 2016, DPCC informed Blazer, through Blazer's
> then-current counsel, Joseph Gleason ("Gleason"), that certain of
> Blazer's carpenter bee traps then being sold or offered for sale infringe
> either the '611 Patent, the '426 Patent and/or the '384 Patent. A true
> and correct copy of the March 8, 2016, letter is attached hereto as
> Exhibit D. Thus Blazer had knowledge of these patents and his
> infringement thereof.

**ANSWER:** Blazer admits that Exhibit D to Plaintiff's Consolidated

Complaint purports to be a copy of a letter dated March 8, 2016, from Michael P.

Huff of Bradley Arant Boult Cummings LLP, who represented that he was an

attorney for Plaintiff to Blazer's attorney at that time, Joseph Gleason, and copying

Blazer's then-licensees, among others. Blazer further admits that, in that letter, Mr.

Huff argued that certain traps previously made, sold, or offered for sale by Blazer

infringed claims of the '611 Patent, the '426 Patent, and/or the '384 Patents. Blazer

further admits that he had knowledge of the '611 Patent, the '426 Patent, and the

'384 Patents at least as of that date. Except for those allegations specifically admitted

herein, Blazer denies each and every other allegation set forth in Paragraph 10 of

Plaintiff's Consolidated Complaint and demands strict proof thereof.

11. On June 6, 2017, the USPTO issued United States Patent No. RE46,421 (" '421 Patent", [*sic*] a true and correct copy of which is attached hereto as Exhibit E). Blazer purports to be the sole assignee and owner of the '421 Patent.

**ANSWER:** Blazer admits that the U.S. Patent and Trademark Office issued

U.S. Patent No. RE46,421 ("the '421 patent") on June 6, 2017, and that the '421

patent is the reissue of U.S. Patent No. 8,375,624 ("the '624 patent"), which was

issued on February 19, 2013. Blazer further admits that he is the sole assignee and

owner of the '421 patent and the '624 patent, and that the document attached to

Plaintiff's Consolidated Complaint as Exhibit E purports to be a true and correct

copy of the '421 patent. Except for those allegations specifically admitted herein,

Blazer denies each and every other allegation set forth in Paragraph 11 of Plaintiff's

Consolidated Complaint and demands strict proof thereof.

12. Blazer has a long history of claiming infringement of the '421 Patent (or the prior version of the '421 Patent, namely U.S. Patent No. 8,375,624, [*sic*] against any party who dares sell a carpenter bee trap. *See, e.g., Brian Robert Blazer v. Best Bee Brothers LLC et al.* (Case No 2:20-cv-00480-BHL [pending in the Eastern District of Wisconsin])[1] [[1]The Court recently granted summary judgment against Blazer in this action finding, in part, that Blazer's proposed construction of the term "receptacle adapter" was overly broad and that the accused devices did not include a receptacle adapter when that term was properly defined.]; *Brian Blazer v. Lowe's Companies, Inc.* (Case No. 6:20-cv-00276-ADA [pending in the Western District of Texas]); *Brian Blazer d/b/a Carpenter Bee Solutions v. The Home Depot U.S.A., Inc.* (Case No. 6:20-cv-00285-ADA [pending in the Western District of Texas]); *Blazer v. Chrisman Mill Farms LLC* (Case No. 5:17-cv-00430-REW-MAS [filed in the Eastern District of Kentucky]); *Blazer v. Amazon.com, Inc.* (Case No. 1:15-cv-01063-SGC [filed in the Northern District of Alabama]); *Blazer v. Ebay Inc.* (Case No. 1:15-cv-01059-

7

KOB [filed in the Northern District of Alabama]) and finally *Blazer v. Chrisman Mill Farms LLC* (Case No. 1:17-cv-00320-VEH [filed in the Northern District of Alabama]).

**ANSWER:** Blazer admits that, by virtue of having been issued the '421 patent and the '624 patent by the U.S. Patent and Trademark Office, he has the right to enforce those patents and to exclude others from practicing his invention during the term of those patents. Blazer further admits that he has sought to exercise that right in several lawsuits including: *Brian Robert Blazer v. Best Bee Brothers LLC et al.*, Civil Action No 2:20-cv-00480-BHL (E.D. Wis.); *Brian Blazer v. Lowe's Companies, Inc.*, Civil Action No. 6:20-cv-00276-ADA (W.D. Tex.); *Brian Blazer d/b/a Carpenter Bee Solutions v. The Home Depot U.S.A., Inc.*, Civil Action No. 6:20-cv-00285-ADA (W.D. Tex.); *Blazer v. Chrisman Mill Farms LLC*, Civil Action No. 5:17-cv-00430-REW-MAS (E.D. Ky.); *Blazer v. Amazon.com, Inc.*, Civil Action No. 1:15-cv-01063-SGC (N.D. Ala.); *Blazer v. Ebay Inc.*, Civil Action No. 1:15-cv-01059-KOB (N.D. Ala.); and *Blazer v. Chrisman Mill Farms LLC*, Civil Action No. 1:17-cv-00320-VEH (N.D. Ala.). Blazer also admits that the district court in *Brian Robert Blazer v. Best Bee Brothers LLC et al.*, Civil Action No 2:20-cv-00480-BHL (E.D. Wis.), recently entered summary judgment of noninfringement after rejecting both parties' proposed construction of "receptacle adapter," which was the single dispute claim limitation. Blazer has filed a notice of appeal from that judgment on grounds that the district court erred by its construction

8

of the "receptacle adapter" term and by its grant of summary judgment of noninfringement. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 12 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

13. The parties are currently involved in two (2) separate civil actions across the United States that were filed by Blazer after DPCC had filed its initial complaint in August of 2019 due to Blazer's continued harassment/tortious interference of DPCC's customers. Those were filed against DPCC's customers/distributors in Texas and are styled *Brian Blazer v. Lowe's Companies, Inc.* (Case No. 6:20-cv-00276-ADA [pending in the Western District of Texas]) and *Brian Blazer d/b/a Carpenter Bee Solutions v. The Home Depot U.S.A., Inc.* (Case No. 6:20-cv-00285-ADA [pending in the Western District of Texas]) (the "Texas Actions"). True and correct copies of the complaints in the Texas Actions are attached hereto as Exhibits F and G, respectively. The Texas Actions were filed in 2020 and are currently stayed pending the resolution of these matters after DPCC was forced to intervene pursuant to the Federal Rules of Civil Procedure. The Texas Actions were filed after the Alabama Action and were meant to harass DPCC and its customers.

**ANSWER:** Blazer admits that he filed lawsuits in the U.S. District Court against Lowe's Companies, Inc., and The Home Depot U.S.A., Inc., which are Civil Actions No. 6:20-cv-00276-ADA and No. 6:20-cv-00285-ADA, respectively, and that these lawsuits were filed on April 7, 2020, and April 9, 2020, both of which dates are later in time than June 3, 2019, the date on which Plaintiff filed its complaint against Blazer in this case. Blazer further admits that Plaintiff intervened as a defendant in those cases, and that both of those actions are currently stayed pending the resolution of the instant lawsuit. Blazer further admits that Exhibits F

9

and G to Plaintiff's Consolidated Complaint purport to be copies of the complaints filed by Blazer in the Western District of Texas against Lowe's Companies, Inc., and The Home Depot U.S.A., Inc. Further answering, Blazer states that "Alabama Action" is not defined for purposes of Plaintiff's Consolidate Complaint and is ambiguous. Blazer assumes here that "Alabama Action" means and refers to the instant lawsuit. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 13 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

> 14. On February 21, 2018, Gleason, on behalf of Blazer, submitted a notice to Amazon.com alleging certain of DPCC's carpenter bee traps (the "Side Mounted Traps", [*sic*] examples of which are pictured below) being sold on Amazon.com infringe the '421 Patent. A copy of the "Policy Warning" received by DPCC is attached hereto as Exhibit H. Amazon.com removed the Side Mounted Traps from its website in response to the notice.

**ANSWER:** Blazer admits that, on or about February 21, 2018, his former counsel, Joseph Gleason, submitted a notice to Amazon.com alleging that certain of Plaintiff's carpenter bee traps available for sale on Amazon.com appeared to infringe claims of the '421 patent, including claims that were in the original '624 patent. Blazer further admits that the document attached as Exhibit H to Plaintiff's Consolidated Complaint purports to be a copy of the "Policy Warning" received by Plaintiff. Blazer is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 14 of Plaintiff's

Consolidated Complaint, and therefore, denies them and demands strict proof
thereof.

> 15. On March 2, 2018, counsel for DPCC informed Gleason of
> DPCC's absolute intervening rights, pursuant to 35 U.S.C. § 252, to sell
> or offer to sell its remaining inventory of Side Mounted Traps (a true
> and correct copy of the letter is attached hereto as Exhibit I). Counsel
> for DPCC attempted numerous times to contact Gleason after March 2,
> 2018, to discuss this matter but was unsuccessful. As set forth in Exhibit
> I, DPCC requested that Blazer inform Amazon.com of DPCC's rights
> to sell or offer for sale the Side Mounted Traps so that DPCC's products
> would be re-listed by Amazon.com. Blazer failed to do so and DPCC
> has suffered damages as a result of Blazer's actions[2] [[2]As a result of
> Blazer's actions, DPCC was unable to sell approximately 30,000 Side
> Mounted Traps resulting in hundreds of thousands of lost profits and
> now has to dispose of the Side Mounted Traps as they are no longer
> suitable for sale causing DPCC to suffer more damages and harm.] as
> its Side Mounted Traps have not been listed on Amazon.com for a
> substantial period of time and are now unsellable due to their age,
> condition, and change in demand for trap related products. This action
> has also resulted in the destruction of DPCC's good standing with
> Amazon and highly rated seller account which takes years to achieve.

**ANSWER:** Blazer admits that the document attached as Exhibit I to

Plaintiff's Consolidated Complaint purports to be a true and correct copy of a letter

dated March 2, 2018, sent by counsel for Plaintiff to Blazer's former counsel, Joseph

Gleason, and that letter purports to inform Blazer's former counsel of Plaintiff's

alleged "absolute intervening rights, pursuant to 35 U.S.C. § 252, to sell or offer to

sell its remaining inventory of Side Mounted Traps." Blazer further admits that

Plaintiff and Plaintiff's counsel have asserted that Plaintiff has absolute intervening

rights to offer for sale and sell side-mounted traps but denies those assertions were

supported by evidence establishing that Plaintiff's accused carpenter bee traps that Plaintiff claimed were entitled to absolute intervening rights were made in the United States or imported into the United States prior to the date of reissue of the '421 patent, i.e., June 6, 2017. Blazer also admits that, pursuant to 35 U.S.C. § 252, "[a] reissued patent shall not abridge or affect the right of any person ... who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others ... the specific thing so made, purchased, offered for same, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent." 35 U.S.C. § 252. Blazer is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 15 of Plaintiff's Consolidated Complaint, and therefore, denies them and demands strict proof thereof.

16. As part of the resolution of Blazer's prior infringement suit against Amazon, Amazon provided Blazer an expedited process that allows Blazer, or someone acting on his behalf, to remove allegedly infringing items from Amazon that is not available to the general public. *See, e.g.*, Exhibit J, a true and correct copy of Blazer's complaint in the case styles Brian Robert Blazer v. Best Bee Brothers LLC et al. [*sic*] (Case No. 2:20-cv-00480-BHL [pending in the Eastern District of Wisconsin]) at ¶ 15. Upon information and belief, this process allows Blazer to remove allegedly infringing items from Amazon without any substantial review or oversight from Amazon. Upon information and belief, this expedited process requires the victim to request that the

complaint be removed directly from the alleged rights owner and if the alleged rights owner refuses, as Blazer has done concerning DPCC's intervening rights, the victim is forced to seek action from the courts.

**ANSWER:** Blazer admits that Exhibit J to Plaintiff's Consolidated Complaint appears to be a copy of his complaint against Best Bee Brothers LLC and RSP, Inc., pending before the U.S. District Court for the Eastern District of Wisconsin and the U.S. Court of Appeals for the Federal Circuit but denies that Paragraph 15 of that complaint supports Plaintiff's putative factual allegations set forth in Paragraph 16 of Plaintiff's Consolidated Complaint. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 16 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

17. Blazer, despite DPCC's communications to the contrary, has continued to claim that certain side-mounted carpenter bee traps infringe the '421 Patent. (*See* Blazer's "Preliminary Infringement Contentions", [*sic*] a true and correct copy of which is attached hereto as Exhibit K).

**ANSWER:** Blazer admits that Exhibit K to Plaintiff's Consolidated Complaint purports to be a copy of Blazer's Preliminary Infringement Contentions, served on Plaintiff on December 18, 2019, pursuant to the Court's Scheduling Order, entered November 12, 2019 (Dkt No. 26). Further answering, Blazer admits that he continues to assert that Plaintiff's side-mounted traps infringe claims of the '421 patent at least to the extent such traps were made and/or imported into the United States after the date of reissue of the '421 patent, i.e., June 6, 2017. As this Court

13

Case 1:19-cv-00848-CLM   Document 125-15   Filed 07/25/22   Page 116 of 184

ordered on February 8, 2021, Blazer's counterclaim for infringement "still would apply to side-mounted traps sold after that date." (Dkt. No. 71 at 2.) Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 17 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

18. On March 28, 2019, Blazer contacted Home Depot, Inc. ("Home Depot") alleging that the Side Mounted Traps being sold by DPCC on www.homedepot.com infringe the '421 Patent. A true and correct copy of the March 28, 2019, email is attached hereto as Exhibit L.

**ANSWER:** Blazer admits that the document attached to Plaintiff's Consolidated Complaint as Exhibit L purports to be a copy of an email sent from wildgoatfoundation@yahoo.com to "Tonya Hicks," who is not specifically identified. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 19 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

19. On May 9, 2019, attorney René Vazquez ("Vazquez"), on Blazer's behalf, sent Home Depot a letter making similar allegations concerning the Side Mounted Traps as Blazer's March 28, 2019 email. A true and correct copy of the May 9, 2019, letter is attached hereto as Exhibit M.

**ANSWER:** Blazer admits that Blazer's previous counsel sent a letter dated May 9, 2019, to The Home Depot concerning certain carpenter bee traps from Plaintiff and others that were offered for sale on The Home Depot's Internet website,

and that the document attached to Plaintiff's Consolidated Complaint as Exhibit M

purports to be a copy of that letter sent by Blazer's previous counsel. Except for

those allegations specifically admitted herein, Blazer denies each and every other

allegation set forth in Paragraph 19 of Plaintiff's Consolidated Complaint and

demands strict proof thereof.

     20. Blazer has previously sent notices to various distributors or
retailers of DPCC's products improperly accusing DPCC of patent
infringement. Vazquez has, on Blazer's behalf, likewise recently sent
notices to various DPCC retailers or distributors improperly alleging
DPCC's infringement of the '421 Patent. These letters were sent with
Blazer's knowledge and approval.

**ANSWER:** Blazer admits that Blazer and his previous counsel sent notices to

various retailers or distributors of Plaintiff's products and that such notices were sent

with Blazer's knowledge. Except for those allegations specifically admitted herein,

Blazer denies each and every other allegation set forth in Paragraph 20 of Plaintiff's

Consolidated Complaint and demands strict proof thereof.

     21. Blazer's ill-founded claims of infringement are even more
groundless given that: (i) DPCC informed Blazer, and his previous
counsel, of DPCC's absolute intervening rights in the side-mounted bee
traps; (ii) Blazer or his counsel choose [*sic*] to ignore DPCC's
intervening rights and continued to contact certain DPCC
customers/distributors with claims of infringement; (iii) when
confronted with DPCC's Motion for Summary Judgment concerning its
absolute intervening rights, Blazer and counsel essentially chose to
"waive [*sic*] the white flag" and acknowledge such rights after forcing
DPCC to expend tens of thousands of dollars and lose out on hundreds
of thousands of dollars in sales to confirm the rights it notified Blazer
of almost four (4) years ago. (*See, e.g.*, Exhibits N and O, which are

true and correct copies of DPCC's summary judgment filings and Blazer's response thereto.) Accordingly, DPCC is at severe risk of claims of patent infringement from Blazer, even if such claims are baseless, as acknowledged by Blazer himself.

**ANSWER:** Blazer admits that Plaintiff and Plaintiff's counsel have asserted that Plaintiff has absolute intervening rights to offer for sale and sell side-mounted traps but denies those assertions were supported by evidence establishing that Plaintiff's accused carpenter bee traps that Plaintiff claimed were entitled to absolute intervening rights were made in the United States or imported into the United States prior to the date of reissue of the '421 patent, i.e., June 6, 2017. Blazer also admits that, pursuant to 35 U.S.C. § 252, "[a] reissued patent shall not abridge or affect the right of any person … who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others … the specific thing so made, purchased, offered for same, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent." 35 U.S.C. § 252. Thus, Blazer denies that, "when confronted with DPCC's Motion for Summary Judgment concerning absolute intervening rights," Blazer and his former counsel "chose to 'waive [*sic*] the white flag.'" Rather, in an effort to resolve this dispute, Blazer stipulated that, pursuant to 35 U.S.C. § 252 and this Court's Claim Construction Order (Dkt. No. 67), which was the law of this case by the time Blazer was required

to respond to Plaintiff's "Motion for Summary Judgment concerning its absolute intervening rights." Plaintiff "is entitled to sell or offer for sale its remaining inventory of Side Mounted Traps *but only to the extent that said inventory of Side Mounted Traps were purchased or manufactured by DPCC prior to June 6, 2017, which is the issue date of the '421 Patent*." (Dkt. No. 69 at 2.) Based on the parties' respective positions, the Court granted Plaintiff's "Motion for Summary Judgment concerning its absolute intervening rights" but stated that "[t]his judgment extends only to the use and sale of side-mounted traps acquired before June 6, 2017—the reissue date of the '421 Patent"—and specifically allowed that Blazer could continue to pursue his claim of infringement as to side-mounted traps manufactured or imported into the United States by Plaintiff after June 6, 2017. (Dkt. No. 71 at 2.) Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 21 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

> 22. Blazer's actions with Amazon have significantly injured DPCC in a manner in which [*sic*] cannot be compensated by monetary damages. For example, due to Blazer's claims and willful ignorance over both DPCC's intervening rights and the scope of his patent, DPCC has been unable to sell ANY bee trap or OTHER, NON-RELATED product, on Amazon since March 4, 2018.

**ANSWER:** Blazer denies each and every factual allegation set forth by Plaintiff in Paragraph 22 of its Consolidated Complaint and demands struct proof thereof.

23. DPCC, in its 3rd attempt to appease Blazer's infringement allegations, launched a new line of carpenter bee traps that began being sold in less profitable wholesale markets in early 2020 (the "New Design"). The photos below show the New Design:

**ANSWER:** Blazer admits that Plaintiff included photographs in his Consolidated Complaint that purport to depict its so-called "New Design" carpenter bee trap. Blazer is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 23 of its Consolidated Complaint and therefore denies the same and demands strict proof thereof.

24. The Court has construed the claims of the '421 Patent. (*See* Exhibit P, a true and correct copy of the Claim Construction Order the "Markman Order" [*sic*]).

**ANSWER:** Blazer admits that the Court issued a Claim Construction Order in this case on December 14, 2020, which sets forth the Court's construction, as a matter of law, of certain limitations of the claims of the '421 patent, the meanings of which were otherwise disputed by the parties. (Dkt. No. 67.) Blazer further admits that the Court specifically construed the following limitations for purposes of the claims of the '421 patent: "wood or wood substitute"; "ambient light"; "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light"; "a receptacle adapter"; "a primary attractance"; "configured to receive"; "secondary attractant"; "a receptacle adapter located at the exit opening of the trap unit"; and "adapted to receive." The Court's constructions of these limitations, as well as its reasoning and analysis, are set forth in that Claim Constructions Order.

18

(Dkt. No. 67 at 9-24.) Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 24 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

> 25. Notably, in the Markman Order, the Court defined the following material terms as they relate to the '421 Patent and the New Design, "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" and "a receptacle adapter". [sic] *Id.* at pp. 11-21.

**ANSWER:** Blazer admits that the Court issued a Claim Construction Order in this case on December 14, 2020, which sets forth the Court's construction, as a matter of law, of certain limitations of the claims of the '421 patent, the meanings of which were otherwise disputed by the parties. (Dkt. No. 67.) Blazer further admits that the Court specifically construed the following limitations for purposes of the claims of the '421 patent: "wood or wood substitute"; "ambient light"; "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light"; "a receptacle adapter"; "a primary attractance"; "configured to receive"; "secondary attractant"; "a receptacle adapter located at the exit opening of the trap unit"; and "adapted to receive." The Court's constructions of these limitations, as well as its reasoning and analysis, are set forth in that Claim Constructions Order. (Dkt. No. 67 at 9-24.) Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 25 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

26. The Court defined "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" as a means-plus-function claim and found that the only structure capable of performing the function recite [*sic*] in that claim is the overhanging roof taught in the '421 Patent. *Id.* at p. 12.

**ANSWER:** Blazer admits that the Court entered a Claim Construction Order in this case on December 14, 2020 (Dkt. No. 67), construing various limitations of the patents-in-suit, including certain limitations of the claims of the '421 patent whose meanings in that context the parties' disputed. Blazer further admits that one of the claim limitations of the '421 patent claims that the Court construed was "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light," and that the Court's construction of this limitation is the law of the case and is set forth in the Claim Construction Order. (*See* Dkt. No. 67 at 11-16.) The Court's Claim Construction Order is currently the law of this case and Plaintiff's interpretation of the Court's construction is not a factual allegation and no answer thereto is required. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 26 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

27. The Court defined "a receptacle adapter" as a device that is part of the trap entrance unit that receives the receptacle and attaches the receptacle to the trap. *Id.* at p. 21.

**ANSWER:** Blazer admits that the Court entered a Claim Construction Order in this case on December 14, 2020 (Dkt. No. 67), construing various limitations of

20

the patents-in-suit, including certain limitations of the claims of the '421 patent whose meanings in that context the parties' disputed. Blazer further admits that one of the claim limitations of the '421 patent claims that the Court construed was "a receptacle adapter," and that the Court's construction of this limitation is the law of the case and is set forth in the Claim Construction Order. (*See* Dkt. No. 67 at 17-21.) The Court's Claim Construction Order is currently the law of this case and Plaintiff's interpretation of the Court's construction is not a factual allegation and no answer thereto is required. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 27 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

28. Claim 1 of the '421 Patent requires that an infringing bee trap comprise both a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light and a receptacle adapter. As shown above, the New Design contains neither and, thus, for at least these reasons alone, does not infringe claim 1 or any claim that depends therefrom.

**ANSWER:** Blazer admits that, among other limitations, Claim 1 of the '421 patent recites "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" and "a receptacle adapter being substantially located at the bottom of said trap unit." (Dkt. 115-5, '421 patent, col. 7, ll. 49-54.) Blazer also admits that, to infringe Claim 1 of the '421 patent, an accused device must incorporate each and every limitation of that claim, either literally or by substantial equivalents. To the extent Plaintiff recites legal conclusions and/or opinions in

21

Paragraph 28 of its Consolidated Complaint, these are not factual allegations requiring an answer by Blazer. Further answering, Blazer states that, according to the Court's Claim Construction Order, and specifically, its construction of the "means to shelter an entrance to said hole is provided to reduce the admittance of ambient light" and "receptacle adapter" limitations of Claim 1 of the '421 patent, Blazer presently believes that Plaintiff's New Design does not include structure meeting all of the limitations of Claim 1, and for this reason, Blazer has never asserted Plaintiff's New Design infringes Claim 1 or any other claim of the '421 patent depending therefrom. This Court's Claim Construction Order (Dkt. No. 67), entered on December 14, 2020, is currently the law of this case. However, Blazer reserves the right to appeal to the U.S. Court of Appeals for the Federal Circuit from any order or judgment of this Court in this case, including but not limited to the Claim Construction Order, and, after any such appeal and in the event the Court of Appeals agrees with Blazer that the meaning and scope of certain limitations of the '421 patent claims are broader than allowed under this Court's construction, Blazer reserves the right to assert claims for infringement of the '421 patent against Plaintiff for its manufacture, use, sale, offer for sale, and/or importation of its New Design carpenter bee trap. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 28 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

29. Claim 13 of the '421 Patent requires that an infringing trap comprise a receptacle adapter located at the exit opening of the trap entrance unit, wherein the receptacle adapter is adapted to receive at least one receptacle. The New Design likewise does not comprise such a limitation and thus, for this reason alone, does not infringe claim 13 or any claims that depend therefrom.

**ANSWER:** Blazer admits that, among other limitations, Claim 13 of the '421 patent recites "a receptacle adapter located at the exiting opening of the trap entrance unit, wherein the receptacle adapter is adapted to receive at least one receptacle." (Dkt. 115-5, '421 patent, col. 8, ll. 35-37.) Blazer also admits that, to infringe Claim 13 of the '421 patent, an accused device must incorporate each and every limitation of that claim—including but not limited to "a receptacle adapter"—either literally or by substantial equivalents. To the extent Plaintiff recites legal conclusions and/or opinions in Paragraph 29 of its Consolidated Complaint, these are not factual allegations requiring an answer by Blazer. Further answering, Blazer states that, according to the Court's Claim Construction Order, and specifically, its construction of the "receptacle adapter" limitation of Claim 13 of the '421 patent, Blazer presently believes that Plaintiff's New Design does not include structure meeting all of the limitations of Claim 13, and for this reason, Blazer has never asserted Plaintiff's New Design infringes Claim 13 or any other claim of the '421 patent depending therefrom. This Court's Claim Construction Order (Dkt. No. 67), entered on December 14, 2020, is currently the law of this case. However, Blazer reserves the right to appeal to the U.S. Court of Appeals for the Federal Circuit from any order

or judgment of this Court in this case, including but not limited to the Claim

Construction Order, and, after any such appeal and in the event the Court of Appeals

agrees with Blazer that the meaning and scope of certain limitations of the '421

patent claims are broader than allowed under this Court's construction, Blazer

reserves the right to assert claims for infringement of the '421 patent against Plaintiff

for its manufacture, use, sale, offer for sale, and/or importation of its New Design

carpenter bee trap. Except for those allegations specifically admitted herein, Blazer

denies each and every other allegation set forth in Paragraph 29 of Plaintiff's

Consolidated Complaint and demands strict proof thereof.

> 30. Counsel for DPCC sent both photographs and a model of the
> New Design to Blazer's counsel in the Alabama Action over twelve
> (12) months ago to inquire if Blazer believed that trap infringed the
> '421 Patent. There has been no response.

**ANSWER:** Blazer states that the allegations of Paragraph 30 of Plaintiff's

Consolidated Complaint are ambiguous as to the meaning of "the Alabama Action,"

which is not otherwise defined for purposes of Plaintiff's Consolidated Complaint.

If "the Alabama Action" means and refers to the instant lawsuit, Blazer is without

knowledge or information as to whether DPCC's counsel sent photographs and a

model of DPCC's New Design carpenter bee trap over twelve (12) months ago to

Blazer's prior counsel in the instant lawsuit or whether DPCC's counsel inquired of

Blazer's prior counsel if Blazer believed the New Design infringes the '421 Patent.

Blazer therefore denies these allegations and demands strict proof thereof. Blazer

24

likewise is without knowledge or information as to whether Blazer's prior counsel responded to any inquiry about the New Design and therefore denies this allegation and demands strict proof thereof. Further answering, Blazer states that, on or about July 29, 2021, at the conclusion of a conference during which the parties' counsel attempted to resolve various disputes including disputes regarding Blazer's previous pleading in response to Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief filed in Case No. 1:21-cv-00166-CLM in the U.S, District Court for the Northern District of Alabama on February 2, 2021, Plaintiff's counsel inquired as to the opinion of Blazer's current counsel regarding whether Plaintiff's so-called New Design carpenter bee trap infringed any claim of the '421 patent. Plaintiff's counsel represented to Blazer's counsel that he had provided a sample of Plaintiff's New Design carpenter bee trap to Blazer's previous counsel and asked whether Blazer asserted that this trap infringed claims of the '421 patent but that Blazer's previous counsel did not respond. In the course of investigating this matter and preparing Blazer's response to Plaintiff's Complaint for Declaratory and Injunctive Relief in Cas No. 1:21-cv-00166-CLM, Blazer's counsel determined that (1) Blazer had never asserted or alleged that Plaintiff's New Design bee trap infringed any claim of the '421 patent, and (2) under the Court's construction in this case of the disputed limitations of the '421 patent as set out in its Claim Construction Order (Dkt. No. 67), which was entered on December 14, 2020, and which remains

25

the law of this case, Blazer cannot reasonably assert that the New Design infringes any claim of that patent. Accordingly, Blazer moved to dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief in Case No. 1:21-cv-00166-CLM on grounds that the Court lacks jurisdiction over the subject matter of that complaint. However, Blazer reserves the right to appeal to the U.S. Court of Appeals for the Federal Circuit from any order or judgment of this Court in this case, including but not limited to the Claim Construction Order, and, after any such appeal and in the event the Court of Appeals agrees with Blazer that the meaning and scope of certain limitations of the '421 patent claims are broader than allowed under this Court's construction, Blazer reserves the right to assert claims for infringement of the '421 patent against Plaintiff for its manufacture, use, sale, offer for sale, and/or importation of its New Design carpenter bee trap. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 30 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

> 31. Given Blazer's past claims of infringement, many of which were ill-founded, DPCC is at serious risk of future claims of infringement from Blazer.

**ANSWER:** To the extent Plaintiff's allegations in Paragraph 31 of its Consolidated Complaint are merely opinion or conjecture, these are not factual allegations requiring an answer by Blazer. Blazer admits that, by virtue of having

26

been issued the '421 patent by the U.S. Patent and Trademark Office, he has the right

to enforce that patent and to exclude others from practicing his invention during the

term of that patent. However, Blazer denies that he has ever asserted or alleged that

Plaintiff's New Design bee trap infringes any claim of the '421 patent as those claims

have been construed by the Court in this case. Blazer reserves the right to appeal to

the U.S. Court of Appeals for the Federal Circuit from any order or judgment of this

Court in this case, including but not limited to the Claim Construction Order (Dkt.

No. 67), and, after any such appeal, to assert claims against Plaintiff for infringement

of the '421 patent by its manufacture, use, sale, offer for sale, and/or importation

into the United States of its New Design carpenter bee trap. Except for those

allegations specifically admitted herein, Blazer denies each and every other factual

allegation set forth in Paragraph 31 of Plaintiff's Consolidated Complaint and

demands strict proof thereof.

> 32. Further, Blazer's actions with Amazon continue to prevent
> DPCC from selling either the Side Mounted Traps or the New Design
> on Amazon, removing DPCC from a significant marketplace. Blazer's
> actions are anti-competitive and amount to patent misuse.

**ANSWER:** To the extent Plaintiff states legal conclusions in Paragraph 32 of

its Consolidated Complaint, these are not factual allegations requiring an answer by

Blazer. Blazer denies any and all factual allegations set forth in Paragraph 32 of

Plaintiff's Consolidated Complaint.

33. Blazer, via his website at www.carpenterbeesolutions.com, has sold various models of infringing bee traps, including (i) "The Best Bee Trap"; (ii) :The Simple Box Bee Trap"; and (iii) "The Super Carpenter Bee Condo". [*sic*] *See* Exhibit D.

**ANSWER:** Blazer admits that he previously sold various models and designs of carpenter bee traps, including "The Best Bee Trap," "The Simple Box Bee Trap," and "The Super Carpenter Bee Condo," but denies that any of these infringe any valid and enforceable claims of any of the '611 patent, the '426 patent, or the '384 patent. Blazer also denies that www.carpenterbeesolutions.com is "his website" as alleged by Plaintiff. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 33 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

34. Blazer's website, www.carpenterbeesolutions.com, now automatically redirects to the website www.mybeetrap.com owned and operated by Mac's, LLC, who, upon information and belief, has licensed Blazer's intellectual property. www.mybeetrap.com sells and offers for sale the following infringing bee traps: (i) the "Cabin Style Bee Trap"; (ii) the "Tall Bee Trap"; (iii) the "Large Bee Trap"; and (iv) the "Milled Bee Trap". [*sic*] A true and correct copy of www.mybeetrap.com showing these models offered for sale is attached hereto as Exhibit Q.

**ANSWER:** Blazer denies that he owns, maintains, or operates the website www.carpenterbeesolutions.com, and thus, denies that this is "Blazer's website" as alleged by Plaintiff. Blazer admits that Mac's LLC has licensed Blazer's intellectual property. Further answering, Blazer states that he has no knowledge of or information about any allegation or adjudication of "infringement" of any claim of

28

any U.S. Patent by any or all of the "Cabin Style Bee Trap," the "Tall Bee Trap," the "Large Bee Trap," or the "Milled Bee Trap." Blazer further states that he does not make, use, sell, offer for sale, or import into the United States any of the allegedly infringing bee traps identified by Plaintiff in Paragraph 34 of the Consolidated Complaint—i.e., the "Cabin Style Bee Trap," the "Tall Bee Trap," the "Large Bee Trap," or the "Milled Bee Trap." Blazer is without knowledge or information as to whether the documents attached to Plaintiff's Consolidated Complaint as Exhibit Q are "[a] true and correct copy of www.mybeetrap.com" and therefor denies that allegation. Except for those allegations specifically admitted, Blazer denies each and every allegation set forth in Paragraph 34 of Plaintiff's Consolidated Complaint.

<u>Count I – Tortious Interference withBusiness/Contract Relations</u>

35. DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

**ANSWER:** Blazer repeats, realleges, and incorporates his answers to Paragraphs 1 through 34, inclusive, of Plaintiff's Consolidated Complaint as if fully set forth herein.

36. Blazer and/or his agents have continued to make bad faith allegations of infringement concerning DPCC's Side Mounted Traps despite being informed of DPCC's absolute intervening rights to sell or offer for sale these traps.

**ANSWER:** Blazer denies each and every allegation set forth in Paragraph 36 of Plaintiff's Consolidated Complaint.

29

37. Blazer's and/or his agents' actions as described herein constitute a bad faith effort to improperly enforce the '421 Patent. Such actions include but are not limited to: (i) the failure to instruct Amazon.com to "re-list" the Side Mounted Traps after the March 2, 2018 letter informing Blazer and his agents of DPCC's absolute intervening rights; (2) the email to Home Depot of March 28, 2019 alleging infringement of the '421 Patent; and (iii) Vazquez's letter of May 9, 2019 to Home Depot.

**ANSWER:** Blazer denies each and every allegation set forth in Paragraph 37 of Plaintiffs' Consolidated Complaint.

38. DPCC had a business or contractual relationship with Amazon.com of which Blazer and/or his agents were aware and to which Blazer was a stranger.

**ANSWER:** Blazer is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 38 of Plaintiff's Consolidated Complaint and therefore denies the same and demands strict proof thereof.

39. Blazer intentionally interfered with DPCC's business or contractual relationship with Amazon.com by refusing to acknowledge DPCC's absolute intervening rights and the right to sell of offer for sale the Side Mounted Traps on Amazon.com. Blazer has further attempted to interfere with DPCC's business and contractual relations with Home Depot and other customers.

**ANSWER:** Blazer denies each and every allegation set forth in Paragraph 39 of Plaintiff's Consolidated Complaint.

40. DPCC has suffered and will continue to suffer damages as a result of Blazer's and/or his agents' actions.

**ANSWER:** Blazer denies each and every allegation set forth in Paragraph 40 of Plaintiff's Consolidated Complaint.

Count II – Violation of Ala. Code § 8-12A-1 <em>et seq.</em> (1975)

41. DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

**ANSWER:** Blazer repeats, realleges, and incorporates his answers to Paragraphs 1 through 34, inclusive, of Plaintiff's Consolidated Complaint as if fully set forth herein.

42. Blazer and/or his agents have continued to make bad faith claims of infringement of the '421 Patent despite knowledge of DPCC's absolute intervening rights to sell or offer for sale the Side Mounted Traps in violation of Ala. Code § 8-12A-2(a) and (d) (1975).

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions in Paragraph 42 of its Consolidated Complaint, these are not factual allegations requiring an answer by Blazer. Blazer denies any and all factual allegations set forth in Paragraph 42 of Plaintiff's Consolidated Complaint.

43. DPCC has suffered and will continue to suffer damages as a result of Blazer's and/or his agents' actions.

**ANSWER:** Blazer denies each and every allegation set forth in Paragraph 43 of Plaintiff's Consolidated Complaint.

## Count III – Infringement of the '611 Patent

44. DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

**ANSWER:** Blazer repeats, realleges, and incorporates his answers to

Paragraphs 1 through 34, inclusive, of Plaintiff's Consolidated Complaint as if fully

set forth herein.

45. Blazer has in the past directly infringed, and currently infringes, at least claims 1, 4 and 6 of the '611 Patent by selling or offering for sale carpenter bee traps called: (i) "The Best Bee Trap"; (ii) "The Simple Box Bee Trap"; (iii) "The Super Carpenter Bee Condo"; (iv) the "Cabin Style Bee Trap"; (v) the "Tall Bee Trap"; (vi) the "Large Bee Trap"; and (vii) the "Milled Bee Trap". [*sic*]

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions

in Paragraph 45 of its Consolidated Complaint, these are not factual allegations

requiring an answer by Blazer. Blazer admits that he had, in the past, sold and offered

for sale carpenter bee traps including traps called "The Best Bee Trap," "The Simple

Box Bee Trap," and "The Super Carpenter Bee Condo." Blazer denies that he

currently sells or offers for sale any carpenter bee traps. Blazer further specifically

denies that he sold or offered to sell in the past or that he currently sells or offers for

sale any carpenter bee traps called the "Cabin Style Bee Trap," the "Tall Bee Trap,"

the "Large Bee Trap," or the "Milled Bee Trap." Indeed, Plaintiff admits in

Paragraph 34 of its Consolidated Complaint that these carpenter bee traps—i.e., the

"Cabin Style Bee Trap," the "Tall Bee Trap," the "Large Bee Trap," and the "Milled

32

Bee Trap"—are offered for sale and sold by Mac's, LLC, and not by Blazer. Further answering, Blazer states that, among other limitations that must be met, either literally or by substantial equivalents, to infringe any of Claims 1, 4, and 6 of the '611 patent is the requirement that housing of an accused bee trap must "contain [ ] no bait." (Dkt. No. 115-1, '611 patent, col. 3, line 47.) In its Claim Construction Order in this case, the Court construed "bait" for purposes of the '611 patent claims "to mean a substance that attracts bees." (Dkt. 67 at 8.) The undisputed evidence of record in this case, as developed by Plaintiff in discovery, establishes that every bee trap made, used, sold, or offered for sale by Blazer, including specifically "The Best Bee Trap," "The Simple Box Bee Trap," and "The Super Carpenter Bee Condo," were treated with a substance that attracts bees—i.e., with "bait" as that term has been construed by this Court. Despite having knowledge of this undisputed evidence, as well as knowledge that Blazer never made, used, sold, or offered for sale the other carpenter bee traps accused in this case—i.e., the "Cabin Style Bee Trap," the "Tall Bee Trap," the "Large Bee Trap," and the "Milled Bee Trap"— Plaintiff nonetheless continues to assert its baseless claim that Blazer "has in the past directly infringed, and currently infringes, at least claims 1, 4 and 6 of the '611 Patent." Except for those allegations specifically and explicitly admitted here, Blazer denies each and every other factual allegation set forth in Paragraph 45 of Plaintiff's Consolidated Complaint.

46. DPCC provided Blazer written notice of Blazer's infringement, thus Blazer had direct and actual notice of his infringement.

**ANSWER:** Blazer admits that DPCC's counsel sent a letter to Blazer's prior counsel alleging that Blazer infringed claims of the '611 Patent. Blazer denies that he infringed any claim of the '611 Patent. Except for those allegations specifically and explicitly admitted here, Blazer denies each and every other allegation set forth in Paragraph 46 of Plaintiff's Consolidated Complaint.

47. Accordingly, Blazer's infringement of the '611 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions in Paragraph 47 of its Consolidated Complaint, these are not factual allegations requiring an answer by Blazer. Blazer denies any and all factual allegations set forth in Paragraph 47 of Plaintiff's Consolidated Complaint.

48. DPCC reserves the right to amend this count should certain of Blazer's bee traps currently being sold or offered for sale infringe the '611 Patent.

**ANSWER:** Paragraph 48 of Plaintiff's Consolidated Complaint recites no factual allegations requiring an answer by Blazer. Further answering, Blazer states that he does not currently sell or offer for sale any carpenter bee traps.

## Count IV – Infringement of the '426 Patent

49. DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

**ANSWER:** Blazer repeats, realleges, and incorporates his answers to Paragraphs 1 through 34, inclusive, of Plaintiff's Consolidated Complaint as if fully set forth herein.

50. Blazer has in the past directly infringed claim 1 of the '426 Patent by selling or offering for sale his "The Best Bee Trap". [*sic*]

**ANSWER:** Blazer denies each and every allegation set forth in Paragraph 50 of Plaintiff's Consolidated Complaint.

51. DPCC provided Blazer written notice of Blazer's infringement, thus Blazer had direct and actual notice of his infringement.

**ANSWER:** Blazer admits that DPCC's counsel sent a letter to Blazer's prior counsel alleging that Blazer infringed claims of the '426 Patent. Blazer denies that he infringed any valid and enforceable claim of the '426 Patent. Except for those allegations specifically and explicitly admitted here, Blazer denies each and every other allegation set forth in Paragraph 51 of Plaintiff's Consolidated Complaint.

52. Accordingly, Blazer's infringement of the '426 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions in Paragraph 52 of its Consolidated Complaint, these are not factual allegations

requiring an answer by Blazer. Blazer denies any and all factual allegations set forth

in Paragraph 52 of Plaintiff's Consolidated Complaint.

> 53. DPCC reserves the right to amend this count should certain
> of Blazer's bee traps currently being sold or offered for sale infringe
> the '426 Patent.

**ANSWER:** Paragraph 53 of Plaintiff's Consolidated Complaint recites no

factual allegations requiring an answer by Blazer. Further answering, Blazer states

that he does not currently sell or offer for sale any carpenter bee traps.

<u>Count V – Infringement of the '384 Patent</u>

> 54. DPCC hereby incorporates paragraphs 1 through 34,
> inclusive, as if fully set forth herein.

**ANSWER:** Blazer repeats, realleges, and incorporates his answers to

Paragraphs 1 through 34, inclusive, of Plaintiff's Consolidated Complaint as if fully

set forth herein.

> 55. Blazer has in the past directly infringed claim 1 of the '384
> Patent by selling or offering for sale his "The Super Carpenter Bee
> Condo". [*sic*] DPCC provided Blazer written notice of Blazer's
> infringement, thus Blazer had direct and actual notice of his
> infringement.

**ANSWER:** Blazer admits that DPCC's counsel sent a letter to Blazer's prior

counsel alleging that Blazer infringed claims of the '384 Patent. Blazer denies that

he infringed any valid and enforceable claim of the '384 Patent. Except for those

allegations specifically and explicitly admitted here, Blazer denies each and every

other allegation set forth in Paragraph 51 of Plaintiff's Consolidated Complaint.

56. Accordingly, Blazer's infringement of the '384 Patent has been objectively reckless, willful and deliberate pursuant to 35 U.S.C. § 284.

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions in Paragraph 56 of its Consolidated Complaint, these are not factual allegations requiring an answer by Blazer. Blazer denies any and all factual allegations set forth in Paragraph 56 of Plaintiff's Consolidated Complaint.

57. DPCC reserves the right to amend this count should certain of Blazer's bee traps current being sold or offered for sale infringe the '384 Patent.

**ANSWER:** Paragraph 57 of Plaintiff's Consolidated Complaint recites no factual allegations requiring an answer by Blazer. Further answering, Blazer states that he does not currently sell or offer for sale any carpenter bee traps.

<u>Count VI – Declaratory Judgment & Request for Injunctive Relief</u>

58. DPCC hereby incorporates paragraphs 1 through 34, inclusive, as if fully set forth herein.

**ANSWER:** Blazer repeats, realleges, and incorporates his answers to Paragraphs 1 through 34, inclusive, of Plaintiff's Consolidated Complaint as if fully set forth herein.

59. There is an actual and justiciable controversy, which is both real and substantial, regarding DPCC's right to sell or offer for sale the New Design Bee Trap, both on Amazon and elsewhere.

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions in Paragraph 59 of its Consolidated Complaint, these are not factual allegations

37

requiring an answer by Blazer. Blazer denies any and all factual allegations set forth in Paragraph 59 of Plaintiff's Consolidated Complaint. Further answering, Blazer expressly and specifically denies that he has ever alleged or asserted that DPCC's New Design infringes any claim of the '421 patent, either literally or under the doctrine of equivalents. Under the Court's construction of the disputed terms of those claims, which is currently the law of this case, Blazer states that the New Design does not infringe the '421 Patent. Blazer reserves the right to appeal to the U.S. Court of Appeals for the Federal Circuit from any order or judgment of this Court in this case, including but not limited to the Claim Construction Order (Dkt. No. 67), and, after any such appeal, to assert claims against Plaintiff for infringement of the '421 patent by its manufacture, use, sale, offer for sale, and/or importation into the United States of its New Design carpenter bee trap. Except for those allegations specifically admitted herein, Blazer denies each and every other allegation set forth in Paragraph 59 of Plaintiff's Consolidated Complaint and demands strict proof thereof.

> 60. Pursuant to 28 U.S.C. § 2201, DPCC asks the Court to declare that DPCC, its retailers and its distributors, have the right to sell the New Design Bee Trap both on Amazon and elsewhere.

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions in Paragraph 60 of its Consolidated Complaint, these are not factual allegations requiring an answer by Blazer. Blazer denies any and all factual allegations set forth

in Paragraph 60 of Plaintiff's Consolidated Complaint. Further answering, Blazer

states that the allegations of Paragraph 60 are ambiguous as to the nature of the right

DPCC asks the Court to declare. In addition, Plaintiff has not alleged in its

Consolidated Complaint that this Court has personal jurisdiction over "Amazon and

elsewhere" such that the Court might issue legally binding declarations to those

entities requiring that those entities recognize an undefined and ambiguous "right"

of Plaintiff and "its retailers and its distributors" to sell "the New Design Bee Trap"

on "Amazon and elsewhere."

> 61. Blazer's actions as set forth above impede DPCC's efforts to
> lawfully sell the Side Mounted Traps and the New Design on Amazon
> and elsewhere.

**ANSWER:** Blazer denies each and every factual allegation set forth in

Paragraph 61 of Plaintiff's Consolidated Complaint.

> 62. DPCC lacks an adequate remedy at law.

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions

in Paragraph 62 of its Consolidated Complaint, these are not factual allegations

requiring an answer by Blazer. Blazer denies any and all factual allegations set forth

in Paragraph 62 of Plaintiff's Consolidated Complaint.

63. DPCC is likely to prevail in this case and/or has at least a reasonable chance of success on the merits in this case.

**ANSWER:** To the extent Plaintiff recites legal conclusions and/or opinions

in Paragraph 63 of its Consolidated Complaint, these are not factual allegations

requiring an answer by Blazer. Blazer denies any and all factual allegations set forth

in Paragraph 63 of Plaintiff's Consolidated Complaint.

64. Any hardship imposed on Blazer by an injunction as requested herein would not unreasonably outweigh the benefits accruing to DPCC.

**ANSWER:** To the extent Plaintiff recites legal conclusions in Paragraph 64

of its Consolidated Complaint, these are not factual allegations requiring an answer

by Blazer. Blazer denies any and all factual allegations set forth in Paragraph 64 of

Plaintiff's Consolidated Complaint.

65. Accordingly, DPCC is entitled to a preliminary and permanent injunction against Blazer prohibiting Blazer from seeking to remove DPCC's Side Mounted Traps and/or New Design from selling on Amazon, any similar online platform, or any other distribution channel.

**ANSWER:** To the extent Plaintiff recites legal conclusions in Paragraph 65

of its Consolidated Complaint, these are not factual allegations requiring an answer

by Blazer. Blazer denies any and all factual allegations set forth in Paragraph 65 of

Plaintiff's Consolidated Complaint.

66. Pursuant to 28 U.S.C. § 2201, DPCC asks the Court to declare that DPCC, its retailers and its distributors have absolute

40

intervening rights to sell or offer for sale its remaining inventory of Side Mounted Traps pursuant to 35 U.S.C. § 252.

**ANSWER:** To the extent Plaintiff recites no factual allegations in Paragraph 66 of its Consolidated Complaint, no answer to this paragraph is required. Further answering, Blazer denies that Plaintiff's legal conclusion set forth in Paragraph 66 is supported by facts alleged in its Consolidated Complaint. Plaintiff does not, for example, allege that all of "its remaining inventory of Side Mounted Traps" were ordered, made, purchased, offered for sale, or used in the United States, or were imported into the United States before the date of issuance of the '421 Patent, i.e., June 6, 2017. 35 U.S.C. § 252. The Court previously entered summary judgment in favor of Plaintiff on its claim for a declaration that "it can sell all its inventory of side-mounted traps it had manufactured, paid for, and received before June 6, 2017—the reissue date of U.S. Patent No. RE46,421," thereby acknowledging that Plaintiff's absolute intervening rights are limited pursuant to 35 U.S.C. § 252 to only those accused products ordered, made, purchased, offered for sale, or used in the United States, or imported into the United States before the reissue date and *not* as broadly as Plaintiff now alleges in Paragraph 66 of its Consolidated Complaint. (Dkt. No. 71 at 1-2.) Specifically, the Court has already ordered that its judgment on the issue of Plaintiff's intervening rights "extends only to the use and sale of side-mounted traps acquired [by Plaintiff] before June 6, 2017—the reissue date of the '421 Patent," and Blazer's counterclaim for infringement of the '421 Patent

41

continues as to all side mounted traps made, purchased, offered for sale, or used in the United States, or were imported into the United States by Plaintiff after June 6, 2017. (*Id.* at 2.)

## Jury Demand

67. DPCC demands a trial by jury on all issues so triable.

**ANSWER:** Plaintiff recites no factual allegations in Paragraph 67 of its Consolidated Complaint and no answer to this paragraph is required.

## Prayer For Relief

68. DPCC respectfully requests the following relief:

A. An adjudication that Blazer has tortiously interfered with DPCC's business and/or contractual relations and DPCC is entitled to compensatory and punitive damages therefor in an amount to be determined at trial;

B. An adjudication that Blazer has violated Ala. Code § 8-12A-1 *et seq.* (1975) and is entitled to compensatory and exemplary damages therefor in an amount to be determined at trial plus attorneys' fees and costs;

C. An adjudication that Blazer has infringed the '611 Patent, and that such infringement has been willful and deliberate;

D. A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '611 Patent together with interest and costs;

E. A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '611 Patent;

F. An adjudication that Blazer has infringed the '426 Patent and that Blazer's infringement of the '426 [*sic*] has been willful and deliberate;

G. A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '426 Patent together with interest and costs;

H. A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '426 Patent and other damages as determined by the Court under 35 U.S.C. § 289;

I. An adjudication that Blazer has infringed the '384 Patent, and that such infringement has been willful and deliberate;

J. A judgment awarding DPCC compensatory damages as a result of Blazer's infringement of the '384 Patent together with interest and costs;

K. A judgment awarding DPCC treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Blazer's willful and deliberate infringement of the '384 Patent and other damages as determined by the Court under 35 U.S.C. § 289;

L. A judgment declaring this case is exceptional and awarding DPCC its expenses, costs, and attorneys; fees in accordance with 35 U.S.C. §§ 284 and 285 of the Patent Act;

M. A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining Blazer from further acts of infringement with respect to the claims and patents addressed herein;

N. A declaratory judgment providing that DPCC, its retailers and its distributors have absolute intervening rights to sell or offer for sale its remaining inventory of Side Mounted Traps pursuant to 35 U.S.C. § 252;

O. A declaratory judgment proviing that DPCC, its retailers and its distributors have the right to sell the New Design both [*sic*] on Amazon, any similar online platform, or any other distribution [*sic*];

P. A declaratory judgment providing that the New Design does not infringe the '421 Patent;

Q. A preliminary and permanent injunction against Blazer prohibiting Blazer from seeking to remove DPCC's Side Mounted Traps and/or the New Design from selling on Amazon, any similar online platform or any other distribution channel; and

R. Such other and further relief as the Court deems just and proper.

**ANSWER:** Blazer denies Plaintiff is entitled to relief of any sort under its Consolidated Complaint

## AFFIRMATIVE DEFENSES

Defendant Blazer alleges and asserts the following defenses to the allegations and claims set forth in Plaintiff's Consolidated Complaint and assumes and undertakes the burden of proof only to those defenses deemed affirmative defenses by law, without regard to how such defenses are denominated here. In addition to those defenses set forth below, Blazer expressly reserves all defenses, affirmative defenses and otherwise, available under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses at law or in equity that may exist now or may be available in the future based upon discovery and further factual investigation in this case.

## First Affirmative Defense

Plaintiff is not entitled to relief under its Consolidated Complaint because it fails to state any claim upon which relief can be granted.

44

### Second Affirmative Defense

Plaintiff is not entitled to relief under its Consolidated Complaint because Blazer does not infringe, directly or indirectly, and has not infringed, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 6,766,611, either literally or under the doctrine of equivalents.

### Third Affirmative Defense

Plaintiff is not entitled to relief under its Consolidated Complaint because Blazer does not infringe, directly or indirectly, and has not infringed, directly or indirectly, any valid and enforceable claim of U.S. Patent No. D672,426, either literally or under the doctrine of equivalents.

### Fourth Affirmative Defense

Plaintiff is not entitled to relief under its Consolidated Complaint because Blazer does not infringe, directly or indirectly, and has not infringed, directly or indirectly, any valid and enforceable claim of U.S. Patent No. D690,384, either literally or under the doctrine of equivalents.

### Fifth Affirmative Defense

Plaintiff is not entitled to relief under its Complaint because, on information and belief, all of the claims of U.S. Patent No. 6,766,611 are invalid for failing to satisfy the conditions for patentability set forth in one or more provisions of the

United States Patent Action, Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

## Sixth Affirmative Defense

Plaintiff is not entitled to relief under its Complaint because, on information and belief, all of the claims of U.S. Patent No. D672,426 are invalid for failing to satisfy the conditions for patentability set forth in one or more provisions of the United States Patent Action, Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

## Seventh Affirmative Defense

Plaintiff is not entitled to relief under its Complaint because, on information and belief, all of the claims of U.S. Patent No. D690,384 are invalid for failing to satisfy the conditions for patentability set forth in one or more provisions of the United States Patent Action, Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

## Eighth Affirmative Defense

On information and belief, Plaintiff's claim for damages is barred, in whole or in part, or otherwise limited because Plaintiff has not and cannot satisfy the requirements for obtaining damages pursuant to 35 U.S.C. § 287, from the date on which U.S. Patent No. 6,766,611 issued.

### Ninth Affirmative Defense

On information and belief, Plaintiff's claim for damages is barred, in whole or in part, or otherwise limited because Plaintiff has not and cannot satisfy the requirements for obtaining damages pursuant to 35 U.S.C. § 287, from the date on which U.S. Patent No. D672,426 issued.

### Tenth Affirmative Defense

On information and belief, Plaintiff's claim for damages is barred, in whole or in part, or otherwise limited because Plaintiff has not and cannot satisfy the requirements for obtaining damages pursuant to 35 U.S.C. § 287, from the date on which U.S. Patent No. D690,384 issued.

### Eleventh Affirmative Defense

Plaintiff is not entitled to relief under its Consolidated Complaint because, on information and belief, it lacks standing to assert U.S. Patent No. 6,766,611.

### Twelfth Affirmative Defense

Plaintiff is not entitled to relief under its Consolidated Complaint because, on information and belief, it lacks standing to assert U.S. Patent No. D672,426.

### Thirteenth Affirmative Defense

Plaintiff is not entitled to relief under its Consolidated Complaint because, on information and belief, it lacks standing to assert U.S. Patent No. D690,384.

### Fourteenth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited, because it cannot prove it is entitled to increased damages pursuant to 35 U.S.C. § 284.

### Fifteenth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited, because it cannot prove this is an exceptional case justifying an award of attorneys' fees against Blazer pursuant to 35 U.S.C. § 285.

### Sixteenth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by the doctrine of prosecution history estoppel.

### Seventeenth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by its failure to mitigate damages, if any.

### Eighteenth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by the doctrine of license and/or implied license.

### Nineteenth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by the doctrine of waiver and/or implied waiver.

### Twentieth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by the equitable doctrine of laches.

### Twenty-First Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by the equitable doctrine of estoppel.

### Twenty-Second Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by the doctrine of unclean hands.

### Twenty-Third Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited by any and all applicable statutes of limitations.

### Twenty-Fourth Affirmative Defense

Plaintiff's claims for relief under its Consolidated Complaint are barred, in whole or in part, or are otherwise limited because Blazer's communications with

Plaintiff's retailers and/or distributors as alleged in Plaintiff's Consolidated Complaint were in good faith and were justified.

## **Prayer for Relief**

Blazer respectfully requests that this Court dismiss Plaintiff's Consolidated Complaint, with prejudice, and find this case to be exceptional pursuant to 35 U.S.C. § 285, and award Blazer his reasonable attorneys' fees, costs, and expenses, and all such other and further relief as the Court deems just and proper under the circumstances.

## **COUNTERCLAIMS**[1]

Defendant/Counterclaimant Brian Blazer, d/b/a Carpenter Bee Solutions ("Blazer") hereby asserts counterclaims against Plaintiff/Counter-Defendant Davis Product Creation and Consulting, d/b/a BeesNThings ("DPCC"), as follows:

---

[1] Blazer believes that, pursuant to the Court's Order dated December 7, 2021 (Dkt. No. 113), he is not required to replead his previously-filed counterclaims in this case as part of his response to Plaintiff's Consolidated Complaint. However, out of an abundance of caution and to preclude any argument that he has waived his counterclaims, Blazer sets forth here his counterclaims in a form intended to be substantively identical to his previously-filed version of these counterclaims (*see* Dkt. No. 35), *except* that Blazer has omitted here from his Prayer for Relief a request that the Court declare that "DPCC, its retailer [*sic*] and distributors are not entitled to any intervening rights to sell or offer for sale any of its Side Mounted Traps" because this Court has previously ruled on the matter of whether and to what extent Plaintiff is entitled to intervening rights, which are, by statute, 35 U.S.C. § 252, personal to Plaintiff and do not extend to others. (Dkt. No. 71.)

## Nature and Basis of Action

1.     This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United State Patent Act, 35 U.S.C. §§ 1, *et seq.* Blazer requests declarations that: (i) he does not infringe any valid, enforceable claim of the '611 patent, the '426 patent, and the '384 patent; and (ii) the '611 patent, the '426 patent, and the '384 patent are invalid.

2.     This is also a patent infringement action to stop DPCC's infringement of the '421 patent, which is a reissue of U.S. Patent No. 8,375,624 ("the '624 patent"). Blazer is the sole assignee and owner of the '421 patent and the '624 patent. Blazer seeks injunctive relief and monetary damages.

## Parties

3.     DPCC is a limited liability company organized and existing under the laws of 2012.the State of Alabama, with its principal place of business at 4413 Northern Blvd., Montgomery, Alabama 36110.

4.     DPCC was formed on July 11, 2012. Clifford Davis is the registered agent and the only listed organizer of Davis Product Creation and Consulting, LLC. A true and correct screenshot from the Alabama Secretary of State's website showing the business entity record for DPCC is attached as Exhibit A.

5.     Blazer is an adult individual residing in the State of Alabama with an address of 230 County Road 880, Heflin, Alabama 36264.

51

Jurisdiction and Venue

6. This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*, including 35 U.S.C. §§ 252, 271, 281, 283, 284, and 285, and the Declaratory Judgment Act, 28 U.S.C. §§ 1391 and 1400(b). This Court has jurisdiction under 28 U.S.C. §§ 2201 and 2202.

7. This Court has personal jurisdiction over DPCC by virtue of the fact that DPCC has submitted to the jurisdiction of this Court by bringing the instant action.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

Facts Common to All Counts

9. On June 6, 2017, the USPTO issued United State Patent No. RE46,421 ("the '421 patent"), which is a reissue of United States Patent No. 8,375,624 ("the '624 patent"). A true and correct copy of the '421 patent is attached hereto as Exhibit B and a true and correct copy of the '624 patent is attached hereto as Exhibit C. Blazer is the owner, by assignment, of all right, title, and interest in and to the '421 patent. The '421 patent is valid and in force.

10.    DPCC became aware of DPCC's infringement of the '624 patent at least as early as March 2013, which is when Blazer informed DPCC that their bee traps infringed the '624 patent.

11.    In a letter dated March 15, 2013 ("March 15 Letter"), DPCC, through its counsel, asserted that their bee traps did not infringe the '624 patent (a true and correct copy of the March 15 Letter is attached as Exhibit D). In support of this assertion, DPCC included photographs of bee traps that incorporated downward sloping holes (*see* Exhibit D) and asserted that all of the traps it sells include the downward sloping holes.

12.    On information and belief, DPCC sold or offered for sale infringing bee traps with upward sloping holes prior to the March 15 Letter and continued to sell or offer for sale infringing bee traps with upward sloping holes after the March 15 Letter.

13.    On information and belief, DPCC sold or offered for sale infringing bee traps that feature a bottom-mounted receptacle (hereinafter referred to as "Bottom Mounted Trap(s)") prior to the March 15 Letter and continued to sell or offer the Bottom Mounted Traps after the March 15 Letter.

14.    On February 12, 2016, Blazer purchased a Bottom Mounted Trap from Calhoun Farmers Cooperative, a farmer's market located in Piedmont, Alabama

("Calhoun"). A true and correct copy of a photograph of the Bottom Mounted Trap purchased by Blazer, alongside the purchase receipt, is attached as Exhibit E. On information and belief, the Bottom Mounted Trap purchased by Blazer was sold to Calhoun by a distributor that purchased the Bottom Mounted Trap from DPCC.

15.    On February 15, 2016, Blazer purchased a Bottom Mounted Trap from Wallace Farm and Pet Supply, Inc., a retailer located in Bowden JCT, Georgia ("Wallace Farm"). A true and correct copy of a photograph of the Bottom Mounted Trap purchased by Blazer, alongside the purchase receipt, is attached as Exhibit F. On information and belief, the Bottom Mounted Trap purchased by Blazer was sold to Wallace Farm by a distributor that purchased the Bottom Mounted Trap from DPCC.

16.    DPCC, via its website (www.beesnthings.com), currently sells and offers for sale two models of infringing traps: (1) "Hanging AST Carpenter Bee Trap"; and (2) "BM Carpenter Bee Trap." These traps feature a side-mounted receptacle (hereinafter referred to as "Side Mounted Trap(s)"). A true and correct screenshot of DPCC's website taken on August 25, 2019, showing these two models for sale is attached hereto as Exhibit G.

17.    DPCC also sells infringing traps to various retailers and distributors for resale.

18.    DPCC currently sells infringing Side Mounted Traps to Walmart, Sears, Home Depot, Hart Ace Hardware, and Gold Crest Distributing. True and correct screenshots from the websites of Walmart, Sears, Home Depot, Hart Ace Hardware, and Gold Crest Distributing showing Side Mounted Traps supplied by DPCC for sale are attached hereto as Exhibit H.

19.    DPCC currently sells Bottom Mounted Traps to Lowes Home Improvement, Tractor Supply Company, and Sears. True and correct screenshots from the websites of Lowes Home Improvement, Tractor Supply Company, and Sears showing Bottom Mounted Traps supplied by DPCC for sale are attached as Exhibit I.

20.    Blazer does not own or control the website having a URL of www.beesnthings.com.

21.    Blazer does not manufacture, sell, offer for sale, or import any of the carpenter bee traps offered for sale at www.beesnthings.com.

22.    Blazer does not currently manufacture, sell, offer for sale, or import any carpenter bee traps.

Count I – Declaratory Judgment of Non-Infringement of the '611 Patent

23.    Blazer hereby incorporates paragraphs 1 through 22, inclusive, of his Counterclaims as if set forth herein in full.

24.     There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. §§ 1, *et seq.*, concerning Blazer's non-infringement of the claims of the '611 patent.

25.     Blazer is entitled to a judicial declaration that he has not and does not infringe directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '611 patent.

Count II – Declaratory Judgment of Non-Infringement of the '426 Patent

26.     Blazer hereby incorporates all prior paragraphs of his Counterclaims as if set forth herein in full.

27.     There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. §§ 1, *et seq.*, concerning Blazer's non-infringement of the claims of the '426 patent.

28.     Blazer is entitled to a judicial declaration that he has not and does not infringe directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '426 patent.

Count III – Declaratory Judgment of Non-Infringement of the '384 Patent

29.     Blazer hereby incorporates all prior paragraphs of his Counterclaims as if set forth herein in full.

30.     There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. §§ 1, *et seq.*, concerning Blazer's non-infringement of the claims of the '384 patent.

31.     Blazer is entitled to a judicial declaration that he has not and does not infringe directly or indirectly, by inducement or by contribution, any valid, enforceable claim of the '384 patent.

Count IV – Declaratory Judgment of Invalidity of the '611 Patent

32.     Blazer hereby incorporates all prior paragraphs of his Counterclaims as if set forth herein in full.

33.     There is an actual and justiciable controversy between the parties concerning the validity of the '611 patent asserted against Blazer for failing to meet the requirements of the Patent Act, 35 U.S.C. §§ 1, *et seq.*, including, but not limited to 35 U.S.C. §§ 102, 103, and 112.

34.     Blazer is entitled to a judicial declaration and order that the '611 patent is invalid.

Count V – Declaratory Judgment of Invalidity of the '426 Patent

35.     Blazer hereby incorporates all prior paragraphs of his Counterclaims as if set forth herein in full.

57

36.     There is an actual and justiciable controversy between the parties concerning the validity of the '426 patent asserted against Blazer for failing to meet the requirements of the Patent Act, 35 U.S.C. §§ 1, *et seq.*, including, but not limited to 35 U.S.C. §§ 102, 103, and 112.

37.     Blazer is entitled to a judicial declaration and order that the '426 patent is invalid.

<u>Count VI – Declaratory Judgment of Invalidity of the '384 Patent</u>

38.     Blazer hereby incorporates all prior paragraphs of his Counterclaims as if set forth herein in full.

39.     There is an actual and justiciable controversy between the parties concerning the validity of the '384 patent asserted against Blazer for failing to meet the requirements of the Patent Act, 35 U.S.C. §§ 1, *et seq.*, including, but not limited to 35 U.S.C. §§ 102, 103, and 112.

40.     Blazer is entitled to a judicial declaration and order that the '384 patent is invalid.

<u>Count VII – Infringement of the '421 Patent</u>

41.     Blazer hereby incorporates all prior paragraphs of his Counterclaims as if set forth herein in full.

58

42.    DPCC has infringed and continues to infringe at least claims 13-17 of the '421 patent by selling and/or offering for sale its "Hanging AST Carpenter Bee Trap" and "BM Carpenter Bee Trap" (*see* Exhibit G) that include: (1) a trap entrance unit formed of wood or a wood substitute; (2) an entrance hole that is sized and shaped to provide a primary attractant for carpenter bees and that extends, either horizontally or at an upward angle, from the outside of the trap entrance unit to an interior of the trap entrance unit on at least one side of the trap entrance unit; (3) an exit opening on the trap entrance unit that provides an exit path from the interior of the trap entrance unit; and (4) a receptacle adapter located at the exit opening of the trap entrance unit that is adapted to receive at least one receptacle and is adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees.

43.    DPCC has infringed and continues to infringe at least claims 13-17 of the '421 patent by selling and/or offering for sale Bottom Mounted Traps (*see* Exhibits E, F, and I) that include: (1) a trap entrance unit formed of wood or a wood substitute; (2) an entrance hole that is sized and shaped to provide a primary attractant for carpenter bees and that extends, either horizontally or at an upward angle, from the outside of the trap entrance unit to an interior of the trap entrance unit on at least one side of the trap entrance unit; (3) an exit opening on the trap entrance unit that provides an exit path from the interior of the trap entrance unit;

59

and (4) a receptacle adapter located at the exit opening of the trap entrance unit that is adapted to receive at least one receptacle and is adapted so as to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening, thereby providing a secondary attractant for carpenter bees.

44.    DPCC has infringed and continues to infringe at least claims 1 and 2 of the '421 patent by selling and/or offering for sale Bottom Mounted Traps (*see* Exhibits E, F, and I) that include: (1) a trap entrance unit forming a plenum and made of wood or a wood substitute; (2) at least one hole drilled through the trap entrance unit that is sized to mimic a natural carpenter bee next tunnel so as to provide a primary attractant, with the hole extending from the outside of the trap entrance unit to a plenum interior and configured to extend horizontally or at an upward angle; (3) a means to shelter an entrance to the hole to reduce the admittance of ambient light; (4) a receptacle adapter that is substantially located at the bottom of the trap unit that is configured to receive a clear or translucent receptacle; and (5) a receptacle that is provided to receive trapped bees, that is received by the receptacle adapter and that is situated to allow ambient light to enter through the bottom into the plenum interior, thereby providing a secondary attractant.

45.    Blazer provided DPCC notice of its infringement in March 2013 as evidence by its March 15 Letter (*see* Exhibit D). DPCC has also admitted to being

repeatedly notified of its infringement in Paragraphs 14 and 18-20 of DPCC's Consolidate Complaint.

46.    Accordingly, DPCC's infringement of the '421 patent has been willful and deliberate pursuant to 35 U.S.C. § 284.

47.    Blazer is entitled to recover from DPCC the damages sustained by Blazer as a result of DPCC's wrongful acts in an amount subject to proof at trial which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

48.    DPCC's infringement of Blazer's exclusive rights under the '421 patent will continue to damage Blazer, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## Jury Demand

49.    Blazer demands a trial by jury on all issues so triable.

## Prayer for Relief

50.    WHEREFORE, Blazer respectfully requests judgment in his favor and against DPCC as follows:

A.    The Court declare that Blazer has not tortiously interfered with DPCC's business and/or contractual relations;

61

B.     The Court declare that Blazer has not violated Ala. Code § 8-12A-1, *et seq.* (1975);

C.     The Court declare that Blazer has not and does not infringe, induce infringement, or contribute to the infringement of any claim of the '611 patent;

D.     The Court declare that the '611 patent is invalid;

E.     The Court declare that Blazer has not and does not infringe, induce infringement, or contribute to the infringement of any claim of the '426 patent;

F.     The Court declare that the '426 patent is invalid;

G.     The Court declare that Blazer has not and does not infringe, induce infringement, or contribute to the infringement of any claim of the '384 patent;

H.     The Court declare that the '384 patent is invalid;

I.     The Court declare that DPCC has infringed the '421 patent and that such infringement has been willful and deliberate;

J.     A judgment awarding Blazer compensatory damages as a result of DPCC's infringement of the '421 patent, together with interest and costs;

K.    A judgment awarding Blazer treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of DPCC's willful and deliberate infringement of the '421 patent;

L.    A judgment declaring that this case is exceptional and awarding Blazer his expenses, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 of the Patent Act;

M.    A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining DPCC from further acts of infringement with respect to the '421 patent;

N.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: February 4, 2022

/s/ Joseph J. Jacobi
Joseph J. Jacobi (admitted *pro hac vice*)
Hansen Reynolds LLC
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 265-2252
jjacobi@hansenreynolds.com

Jeremy Adelson (admitted *pro hac vice*)
Hansen Reynolds LLC
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
jadelson@hansenreynolds.com

Steven M. Brom (ASB-2541-N74B)
Bachus, Brom & Taylor, LLC
3536 Independence Drive
Birmingham, Alabama 35209
Telephone: (205) 970-6747
Facsimile: (205) 970-7776
sbrom@bachusbrom.com

*Counsel for Defendant Brian Blazer,*
*d/b/a Carpenter Bee Solutions*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of February, 2022, I caused to be electronically filed the foregoing **DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S CONSOLIDATED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

C Gregory Burgess
Jeremy A. Smith
L. Franklin Corley, IV
LANIER FORD SHAVER & PAYNE, P.C.
2101 West Clinton Avenue, Suite 102
P O Box 2087
Huntsville, AL 35805
cgb@lanierford.com
jas@lanierford.com
lfc@lanierford.com

Ambria L Lankford
KEN PERRY LAW FIRM, LLC
1615 Financial Center
505 20th Street North
Birmingham, AL 35203
all@kenperrylawfirm.com

                          /s/ Joseph J. Jacobi
                          *Attorney for Defendant Brian Blazer,*
                          *d/b/a Carpenter Bee Solutions*

FILED
2022 Feb-28  AM 09:0
U.S. DISTRICT COUR
N.D. OF ALABAM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| DAVIS PRODUCT CREATION AND CONSULTING, LLC d/b/a BEESNTHINGS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Number: 1:19-cv-00848-CLM |
| BRIAN BLAZER d/b/a CARPENTER BEE SOLUTIONS, | ) ) ) | |
| Defendant. | ) | |

AND

|  |  |  |
|---|---|---|
| DAVIS PRODUCT CREATION AND CONSULTING, LLC d/b/a BEESNTHINGS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Number: 1:21-cv-00166-CLM |
| BRIAN BLAZER d/b/a CARPENTER BEE SOLUTIONS, | ) ) ) | |
| Defendant. | ) | |

EXHIBIT 10
Rotramel
2-16-22   MI

## ANSWER TO COUNTERCLAIM

Plaintiff Davis Product Creation and Consulting, LLC d/b/a BeesNThings

("DPCC"), by and through its undersigned counsel, answers the counterclaim filed

by Defendant Brian Blazer d/b/a Carpenter Bee Solutions ("Blazer") on February 4, 2022 (Doc. 117) as follows:

1.      DPCC admits that the declaratory judgment action filed by Blazer allegedly arises under the Declaratory Judgment Act. DPCC denies the remaining allegations of paragraph 1.

2.      DPCC admits that Blazer allegedly brings an action for infringement of the '421 Patent. DPCC denies the remaining allegations of paragraph 2.

3.      DPCC admits the allegations of paragraph 3.

4.      DPCC admits the allegations of paragraph 4.

5.      DPCC admits the allegations of paragraph 5.

6.      DPCC admits the allegations of paragraph 6.

7.      DPCC admits the allegations of paragraph 7.

8.      DPCC admits the allegations of paragraph 8.

9.      DPCC admits that the USPTO issued the '421 Patent on June 6, 2017. DPCC admits that a copy of the '421 Patent is attached to Blazer's counterclaim as Exhibit B. DPCC admits that a copy of U.S. Patent No. 8,375,624 (the "'624 Patent") is attached to Blazer's counterclaim as Exhibit C. DPCC denies the remaining allegations of paragraph 9.

10.      DPCC denies the allegations of paragraph 10.

11.     DPCC admits that its counsel sent a letter to Blazer in March of 2013 and admits that for a period of time DPCC sold bee traps with downward sloping holes.  DPCC denies the remaining allegations of paragraph 11.

12.     DPCC denies the allegations of paragraph 12.

13.     DPCC admits that it sold "Bottom Mounted Traps."  DPCC denies that these traps infringe either the '421 Patent or the '624 Patent.  DPCC denies the remaining allegations of paragraph 13.

14.     DPCC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 14 of the counterclaim and, therefore, those allegations are denied.  DPCC denies that the trap allegedly purchased by Blazer on February 12, 2016 shown in Exhibit E to Blazer's counterclaim was sold, offered for sale, imported, or manufactured by or on behalf of DPCC.

15.     DPCC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 15 of the counterclaim and, therefore, those allegations are denied.  DPCC denies that the trap allegedly purchased by Blazer on February 15, 2016 shown in Exhibit F to Blazer's counterclaim was sold, offered for sale, imported, or manufactured by or on behalf of DPCC.

16.     DPCC admits that is sells, or has sold, "Side Mounted Traps" to various retailers. DPCC denies that those traps infringe either the '421 Patent or the '624 Patent.  DPCC denies the remaining allegations of paragraph 16.

17.     DPCC denies the allegations of paragraph 17.

18.     DPCC denies the allegations of paragraph 18.

19.     DPCC denies the allegations of paragraph 19.

20.     DPCC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.  Accordingly, those allegations are denied.

21.     DPCC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.  Accordingly, those allegations are denied.

22.     DPCC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.  Accordingly, those allegations are denied.

Count I

23.     DPCC incorporates its responses to paragraphs 1-22 above as if set forth herein.

4

24.     DPCC admits the existence of an actual and justiciable controversy between the parties arising under the Patent Act, § 35 U.S.C. 1, *et seq*. DPCC denies the remaining allegations of paragraph 24.

25.     DPCC denies the allegations of paragraph 25.

### Count II

26.     DPCC incorporates its responses to paragraphs 1-22 above as if set forth herein.

27.     DPCC admits the existence of an actual and justiciable controversy between the parties arising under the Patent Act, § 35 U.S.C. 1, *et seq*. DPCC denies the remaining allegations of paragraph 27.

28.     DPCC denies the allegations of paragraph 28.

### Count III

29.     DPCC incorporates its responses to paragraphs 1-22 above as if set forth herein.

30.     DPCC admits the existence of an actual and justiciable controversy between the parties arising under the Patent Act, § 35 U.S.C. 1, *et seq*. DPCC denies the remaining allegations of paragraph 30.

31.     DPCC denies the allegations of paragraph 31.

## Count IV

32.     DPCC incorporates its responses to paragraphs 1-22 above as if set forth herein.

33.     DPCC admits the existence of an actual and justiciable controversy between the parties arising under the Patent Act, § 35 U.S.C. 1, *et seq.* DPCC denies the remaining allegations of paragraph 33.

34.     DPCC denies the allegations of paragraph 34.

## Count V

35.     DPCC incorporates its responses to paragraphs 1-22 above as if set forth herein.

36.     DPCC admits the existence of an actual and justiciable controversy between the parties arising under the Patent Act, § 35 U.S.C. 1, *et seq.* DPCC denies the remaining allegations of paragraph 36.

37.     DPCC denies the allegations of paragraph 37.

## Count VI

38.     DPCC incorporates its responses to paragraphs 1-22 above as if set forth herein.

39.     DPCC admits the existence of an actual and justiciable controversy between the parties arising under the Patent Act, § 35 U.S.C. 1, *et seq.* DPCC denies the remaining allegations of paragraph 39.

40.     DPCC denies the allegations of paragraph 40.

### Count VII

41.     DPCC incorporates its responses to paragraphs 1-22 above as if set forth herein.

42.     DPCC denies the allegations of paragraph 42.

43.     DPCC denies the allegations of paragraph 43.

44.     DPCC denies the allegations of paragraph 44.

45.     DPCC denies the allegation s of paragraph 45.

46.     DPCC denies the allegations of paragraph 46.

47.     DPCC denies the allegations of paragraph 47.

48.     DPCC denies the allegations of paragraph 48.

49.     DPCC believes that no admission or denial is needed for paragraph 49.

50.     DPCC denies that Blazer is entitled to any of the relief specified in paragraph 50, including all subparagraphs thereof.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

DPCC does not and has not infringed any claim of the '421 Patent.

### Second Affirmative Defense

DPCC does not and has not infringed any claim of the '624 Patent.

### Third Affirmative Defense

The '421 Patent is invalid under the Patent Act, 35 U.S.C. § 1 *et seq.*, including under §§ 101, 102, 103, 112 and 251.

### Fourth Affirmative Defense

Blazer's claims are barred by the doctrine of patent misuse.

### Fifth Affirmative Defense

Blazer's claims are barred by prosecution history estoppel.

### Sixth Affirmative Defense

Blazer cannot prove this is an exceptional case pursuant to 35 U.S.C. § 285.

### Seventh Affirmative Defense

Blazer is barred under 35 U.S.C. § 287 from recovering damages.

### Eighth Affirmative Defense

Blazer's claims are barred by the doctrine of unclean hands, laches, waiver or estoppel.

### Ninth Affirmative Defense

Blazer's counterclaim fails to state a claim upon which relief can be granted.

### Tenth Affirmative Defense

Blazer is not entitled to any injunctive relief because he has an adequate remedy at law for his purported claims.

DPCC reserves the right to assert additional defenses as discovery progresses in this case. To the extent that any of the allegations in the counterclaim have not been expressly admitted or denied, they are denied and strict proof of each such allegation is demanded.

*S/C. Gregory Burgess*
C. Gregory Burgess (ASB-1519-R79C)
Jeremy A. Smith (ASB-1731-J73S)

**Attorneys for plaintiff Davis Product Creation and Consulting, LLC d/b/a BeesNThings**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087 (35804)
2101 West Clinton Avenue, Suite 102
Huntsville, Alabama 35805
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: cgb@lanierford.com
       jas@lanierford.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February 2022, I electronically filed the foregoing with Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

STEVEN M. BROM
**BACHUS, BROM & TAYLOR, LLC**
3536 Independence Drive
Birmingham, Alabama 35209
Telephone: (205) 970-6747
Email: sbrom@bachusbrom.com

JOSEPH J. JACOBI
**HENSEN REYNOLDS LLC**
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
Telephone: (312) 265-2252
Email: jjacobi@hansenreynolds.com

JEREMY ADELSON
**HANSEN REYNOLDS LLC**
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
Telephone: (414) 455-7676
Email: jadelson@hansenreynolds.com

*S/C. Gregory Burgess*
C. Gregory Burgess

Truman's Scientific Guide To

# Pest Control
# Operations



PQA237678

EXHIBIT
11
Rotramel

PENGAD 800-631-6989

**A Purdue University / Advanstar Communications Project**

# TRUMAN'S SCIENTIFIC GUIDE TO
# pest control
# operations

## Fourth Edition

**Gary W. Bennett, Ph.D.,**

Professor of Entomology; Department of Entomology,
Purdue University, West Lafayette, Indiana

**John M. Owens, Ph.D.,**

Entomology Group Leader; S. C. Johnson and Son, Inc.,
Racine, Wisconsin

**Robert M. Corrigan, M.S.,**

Staff Specialist in Pest Control; Department of Entomology,
Purdue University, West Lafayette, Indiana



A Purdue University/Advanstar Communications Project

# correspondence

Contents of this book were prepared under the direction of the Department of Entomology, Purdue University, West Lafayette, Indiana. This material was originally offered as a "Correspondence Course in Pest Control Technology" through the Division of Continuing Education, Purdue University, in conjunction with Pest Control Magazine. The current correspondence course in Pest Control Technology is available through the Division of Continuing Education, Stewart Center, Purdue University, West Lafayette, Indiana 47907. Pest Control published the lessons, one a month for 18 months, from January 1961 through June 1962.

**Copyright 1988 by**
ADVANSTAR COMMUNICATIONS
131 West First Street
Duluth, MN 55802

**Copyright 1982 by**
HARCOURT BRACE JOVANOVICH INC.
One East First Street
Duluth, MN 55802

**Library of Congress
Catalog Card No. 88-82584**

**ISBN 0-929870-00-X**

No part of this book may be reproduced in any form without permission in writing from Advanstar Communications. Printed in the United States of America.

**Library of Congress
Catalog Card No. 67-16201**

**ISBN 150043511**

redwood, cypress and longleaf pine give the greatest protection. Protection of exterior wood surfaces with paint is also of value. An appropriate number of coats will fill many of the cracks and openings into wood used by termites to gain entrance. Larger cracks and joints can be filled with putty or plastic wood. Of course, the use of steel, concrete, brick or stone in construction, instead of wood, offers the best protection against non-subterranean termites. However, it will not prevent attack of wooden materials inside unless all entryways are properly sealed.

# other wood-destroying insects

Many other insects, in addition to termites, infest and seriously damage wood. Many of these, such as the various bark beetles and round and flat-headed borers, are found alive most frequently in unseasoned wood. The pest management professional is us ʼly most concerned with those insects which c ᴉage seasoned lumber. These insects include ₋presentatives of the orders Hymenoptera and Coleoptera. Hymenoptera (horntails and carpenter ants and bees) that

damage wood will be discussed in Chapter 9. The groups discussed in the following sections are all members of the order Coleoptera (beetles), the larvae of which excavate burrows in wood. The characteristics of the damage done to wood by these insects are generally sufficient evidence to identify the insects to their family, but positive identification to genus or species will require examination of the insect itself.

Characteristics of damage caused by common wood-boring insects in buildings are shown in Table 8-1.

## POWDERPOST BEETLES

The term **"powderpost beetle,"** used in the broad sense, applies to any of three closely related families (Lyctidae, Bostrichidae and Anobiidae) within the super-family Bostrichoidea. The common name is appropriate because the larvae of these beetles reduce timbers to a mass of very fine, powder-like material. The adults do very little actual damage to wood, serving primarily a reproductive function. There are certain differences in structure, behavior and nutrition among these groups which have led to the separation of the families discussed below.

Among the many different kinds of insects that

**Table 8-1:** Characteristics of damage caused by common wood-boring insects.

| Insect Type | Shape and size (inches) of exit/entry hole | Wood Type | Age of Wood Attacked[1] | Appearance of Frass in Tunnels | Reinfests Structural Timber |
|---|---|---|---|---|---|
| ambrosia beetles | round 1/50-1/8 | softwood & hardwood | new | none present | no |
| lyctid beetles | round 1/32-1/16 | hardwood | new & old | fine, flour-like, loosely packed | yes |
| bark beetles | round 1/16-3/32 | bark/sapwood interface | new | fine to coarse, bark colored, tightly packed | no |
| anobiid beetles | round 1/16-1/8 | softwood & hardwood | new & old | fine powder and pellets, loosely packed; pellets may be absent and frass tightly packed in some hardwoods | yes |
| bostrichid beetles | round 3/32-9/32 | softwood & hardwood (bamboo) | new | fine to coarse powder, tightly packed | rarely |
| horntail or woodwasp | round 1/6-1/4 | softwood | new | coarse, tightly packed | no |
| carpenter bee | round 1/2 | softwood | new & old | none present | yes |
| round-headed borer | round-oval 1/8-3/8 | softwood & hardwood | new | coarse to fibrous, mostly absent | no |
| flat-headed borer | oval 1/8-1/2 | softwood & hardwood | new | sawdust-like, tightly packed | no |
| old house borer | oval 1/4-3/8 | softwood | new & old | very fine powder & tiny pellets, tightly packed | yes |
| round or flat-headed borer, wood machined after attacked | flat oval 1/2 or more or irregular surface groove 1/8-1/2 wide | softwood & hardwood | new | absent or sawdust-like, coarse to fibrous; tightly packed | no |

[1]New wood is defined as standing or freshly felled trees and unseasoned lumber. Old wood is seasoned or dried lumber. (From Levy, 1975).



**Figure 9-J.** Cicada killer wasp.



**Figure 9-K.** Mud dauber wasp.



**Figure 9-L.** Mud dauber nest (Sweetman).



**Figure 9-M.** Honeybee worker (USDA)

(males), and workers (sterile females). Individual colonies may have 20-50,000 bees.

Social behavior is highly evolved in the honeybee. In addition to feeding the larvae, workers also amass reserve supplies of honey which can be utilized as food by all the members of the colony during periods of adverse conditions. Unless the nest has been built in an unfavorable situation, the colony can survive throughout the winter. Unlike the social wasps, these bees are not limited to annual re-establishment of colonies.

Honeybee nests are made of many wax cells which the workers construct. As with yellowjackets and nests of other social wasps discussed previously, these masses of cells are called combs. However, while some of these cells are used to house the immature stages (eggs, larvae, and pupae), others serve as a storage site for honey. If honey bees become well established within the wall voids of a house, large amounts of wax and honey may collect within the wall. As long as the bees are active, the workers keep the air moving inside the nest by fanning with their wings so the temperature remains below the melting point of the wax. If the bees are killed, this form of air conditioning ceases to function. In warm weather, or if the interior of the house is kept warm, the wax within the wall void may become soft enough to melt. The honey then seeps out of the storage cells, creating a mess. If there is a sufficient amount of honey inside the walls, enough may be absorbed by plaster or similar porous wall material that an unsightly and virtually permanent stain may appear on the inside wall.

Another problem inherent to such situations is that presence of honey in the wall void will attract foraging worker bees from other honeybee colonies. Other insects such as various flies, ants, and beetles may also be attracted to the nest area, and may later infest other materials inside the home. Thus, there may be a rather continuous supply of bees or other pests around the house, even though the original colony was destroyed. The homeowner's initial concern is usually the danger of being stung by the honeybee workers, but in some cases more severe problems arise only after the colony is killed. It is important to advise the homeowner to completely remove the nest as soon as possible after the colony is controlled, even if this requires substantial expense for carpentry and repairs.

### Carpenter bees [*Xylocopa* spp.]

Carpenter bees resemble large bumblebees, but have very different nesting behavior. They bore long tunnels into wood and divide these tunnels into cells where individual larvae will develop. The common eastern species, *Xylocopa virginica* (Linnaeus), resembles many of the bumblebees

**Ants and Other Hymenopterous Pests**

203

closely enough that they are often confused on casual observation. This carpenter bee is black in color and marked with areas of yellow hair, but the dorsal side of the abdominal segments (except for the apparent first segment) have no areas of yellow hair. In bumblebees at least some of these abdominal segments will have yellow hair on their dorsal surfaces (Figure 9-N). Other species of carpenter bees may be black, green, or somewhat purplish in color, and are variously marked with whitish, yellowish, or reddish hair. The dorsal surface of the abdomen is generally bare in these species also.

The typical carpenter bee gallery has an entrance hole on the wood surface. The gallery continues inward for a short distance, then turns sharply upward and runs in the same direction as the grain of the wood. The female provisions the galleries by inserting a ball of pollen upon which the egg is laid. Live prey such as insects or spiders are not used. The female then closes the cell by placing a mass of wood pulp in the gallery. A series of cells are made as the bee works backwards, out of the gallery. Females often enlarge existing galleries or use old ones, so very complex gallery systems can be developed over a number of years. These galleries are often made in the siding or window trim of homes, and in such cases the structural strength of tunneled timbers may be reduced.

Carpenter bee nests are usually not difficult to locate. Some of the more common sites chosen in buildings include siding, eaves, wooden shakes, porch ceilings, windowsills, doors, etc. They will also nest in telephone poles, fence railings, or posts, and even in lawn furniture. Many types of wood are selected for nesting, but softer woods are preferred. Unpainted or well-weathered wood is much more susceptible to attack than hardwood or well-painted timbers. Another sign to look for in locating carpenter bee galleries is the yellowish or brownish excrement stains created on the side of the home, below the entrance holes to the galleries.

Carpenter bees complete one generation per year in most areas of the United States. Tunnels are prepared and eggs laid in the spring. Larvae and pupae develop in the closed cells in early



(1½ X actual size)

**Figure 9-N.** Bumble bee (Sweetman).

204

summer. Adult bees emerge in late summer and return to the same tunnels to hibernate for the winter months. In the spring, the adults mate and lay eggs, completing the cycle.

The abandoned nests of carpenter bees are frequently infested by any number of secondary pests including dermestid beetles, dried fruit moths and other scavengers that will feed on unused pollen and nectar. Certain wasps, ants, and bees will also be found in old galleries, using them as shelter and nesting sites.

### Bumblebees (Bombus spp.)

Bumblebees are social insects which generally nest underground (Figure 9-N). They do not make holes or tunnels in wood, but will nest in abandoned mouse burrows under piles of grass clippings or leaves, stones, logs, or other such locations. They seldom become a problem of consequence except in situations where the nests are established close to a sidewalk, near a building foundation, or in some other location where conflict with people or pets is inevitable. There are a number of species which may be rather commonly encountered, some of which are more likely to sting people than others.

### OTHER WASPS

### Horntails (Family Siricidae)

Horntails are medium to large-sized wasps which may emerge from wood that has been in a building for only a few years. Infestations begin in dying trees or in recently felled logs. The female wasp deposits eggs in the wood using her horn-like ovipositor. Larvae bore about in both the sapwood and heartwood layers, making tunnels 1 to 2 feet long. Tunnels are packed with dust-like frass and cast skins from each larval molt. Pupation occurs close to the wood surface, and the new adult emerges and uses its strong jaws to chew out of the wood or almost any building material that may have been used to cover the wood. Emergence holes are about 1/4-inch in diameter. Presence of these holes in walls, floors or trim may cause concern to the homeowner.

Nearly all horntail infestations are associated with softwoods such as pine, fir, and spruce, although they occasionally emerge from hardwood logs of firewood. Under normal conditions horntails take two or three years to complete their life cycle. They usually are found in low-cost, rough timbers that were salvaged from diseased or fire-damaged trees. Such wood is seldom kiln-dried.

Horntails do not infest lumber after it has been cut, and they usually occur in small numbers. Therefore, treatment of the wood is seldom justified. Homeowners should be informed of the

Case 1:19-cv-00848-CLM   Document 125-15   Filed 07/25/22   Page 184 of 184

side walls with insecticide would likely result. Dust should be blown into the entrance hole used by the bees. If the nest can be reached by drilling a hole into a wall, treatment can be made from inside, without use of protective clothing or a ladder which may be necessary for outside applications. However, the possibility of forcing bees into indoor areas and creating a safety hazard should be considered. *It is best to treat at night when the bees are not active, and to wear protective clothing such as a wasp suit.* Follow applications into the entry hole with residual insecticide spray or dust treatments to surfaces around the nest entrance.

One treatment will usually be sufficient, but a second treatment may be necessary a few days later. As with treatment of yellowjacket nests in structures, do not plug or block the honeybees' nest entrance until after all the bees are dead. Then, all openings in the vicinity of the nest entrance should be caulked and painted.

Professionals are often called to remove wild honeybee swarms from exposed situations outdoors, particularly during the spring. At the center of this mass of bees will be a queen, which all the other bees will follow. Swarms often cause quite a lot of fright and disruption in public areas. While swarms can be killed with appropriate aerosol sprays or insecticidal dust applications, or by placing the whole swarm in a large plastic garbage bag, many professionals keep a list of telephone numbers of local beekeepers just for such situations. Beekeepers will usually remove swarms and place them into beehives for use in producing honey.

Carpenter bees can be controlled by use of the same insecticidal dust or aerosol treatments recommended for controlling wasps or other bees. Apply these insecticides into the gallery entrances and then plug the holes securely with pieces of wooden dowel coated with carpenter's glue. Drilling and treating the infested wood is usually not necessary, and galleries can be plugged immediately because bees which might be inside the gallery will not be able to bore their way out of the gallery before succumbing to the insecticide. Do not seal the holes with caulk or other such soft materials, because they may be penetrated by emerging bees later that season if all the larvae or adults are not killed by the insecticide. Spray wood surfaces in the vicinity of the gallery entrance holes with a residual insecticide after treat-

ing and sealing the holes to control any bees which may return to the area. Since female bees which are provisioning their nests can be very aggressive toward intruders, and can inflict painful stings, use of protective clothing may be advisable while treating and plugging gallery holes.

Bumblebee nests can be controlled using the same procedures as described for underground nests of yellowjackets.

If cockroach parasites occur in sufficient numbers, they may be annoying to the homeowner. However, these wasps cannot sting people. They can be controlled by space sprays containing synergized pyrethrins or other non-residual insecticides labeled for this type of application. Control of the cockroaches these wasps are parasitizing will be necessary to achieve long-term control of these wasps. Make a careful identification of the cockroach species involved (there may be more than one) and consult Chapter 6 of this book for cockroach management procedures.

### SELECTED REFERENCES

Akre, R. D., A. Greene, J. F. MacDonald, P. J. Langdolt and H. Davis. 1980. Yellowjackets of America North of Mexico. U.S. Dept. of Agric., Agric. Handbook No. 552. 102 pp.

Dadant & Sons. 1975. The Hive and The Honeybee. Dadant & Sons. Hamilton, IL. 740 pp.

Edwards, R. 1980. Social Wasps: Their biology and control. Rentokil Limited. W. Sussex, England. 398 pp.

Granovsky, T. A. and H. N. Howell. 1983. Texas A&M research team develops new Pharaoh ant control technique. Pest Control Technol. 11(3): 30, 32, 34, 62.

Granovsky, T. A. and H. N. Howell. 1983. A practical approach to controlling Monomorium pharaonis (L.), alias pharaoh or sugar ant. Pest Mgt. 2(5): 11-14.

MacDonald, J. F. 1979. Biology, recognition, medical importance and control of Indiana social wasps. Purdue Univ. Agric. Exp. Sta. Bull. No. 219. 22p.

Smith, E. H. 1983. Controlling those pharaoh ants in hospital areas, Part I. Pest Control Mag. 51(11): 46, 82.

Smith, E. H. 1983. Controlling those pharaoh ants in hospital areas, Part II. Pest Control Mag. 51(12): 42.

Wilson, E. O. 1971. The Insect Societies. Harvard University Press. Cambridge, MA. 548pp.

Wilson, E. O. and B. Holldobler. 1990. The Ants. Harvard Univerisity Press. Cambridge, MA. 732pp.

Wilson, G. R. and M. J. Booth. 1981. Pharaoh ant control with insect growth regulator in hospitals. Pest Control Mag. 49(3): 14-15, 19, 74.