FILED
2023 Jul-05  PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

**DAVIS PRODUCT CREATION AND CONSULTING, LLC,**
    Plaintiff,

**v.**                                    **Case No. 1:19-cv-848-CLM**

**BRIAN BLAZER,**
    Defendant.

## MEMORANDUM OPINION

Before the court is Defendant Brian Blazer b/b/a/ Carpenter Bee Solutions ("Blazer")'s motion for summary judgment as to Counts I, II, III, IV, and V of Plaintiff Davis Product Creation and Consulting, LLC d/b/a BeesNThings ("DPCC's") Consolidated Complaint, and Counts I, V, VI, and VII of Blazer's counterclaims, and DPCC's motion for partial summary judgment in its favor as to Count VII of Blazer's counterclaim alleging patent infringement, and Count II of DPCC's consolidated complaint. Also before the court is Blazer's motion to strike the declaration of Dr. George L. Rotramel (doc. 168).

For the reasons explained below, the court will **DENY** the motion to strike (doc. 168), **GRANT IN PART** Blazer's motion for summary judgment on Count 1 as it applies to Home Depot and other customers, and **DENY IN PART** Blazer's motion for summary judgment on Count 1 as it applies to Amazon. The court will **DENY** Blazer's motion for summary judgment on Counts 2, Count 3, Count 4, and Count 5 of the Consolidated Complaint, and Counterclaim Count 1, 5, 6, and 7. The court will **DENY** DPCC's motion for summary judgment on Count 2 and Counterclaim 7.

## I.   BACKGROUND

The parties make and sell carpenter bee traps; they have patents related to their bee traps; and they have a history of claiming that the other infringed the patent.

1

In this lawsuit, DPCC alleges, among other things, that Blazer is directly and indirectly infringing three of its patents: (1) U.S. Patent No. 6,766,611 ("'611 Patent"); (2) U.S. Patent No. D672,426 ("'426 Patent"); and (3) U.S. Patent No. D690,384 ("'384 Patent"). (*See* Doc. 115). Blazer counterclaimed, alleging, among other things, that DPCC infringed and continues to infringe his patent: U.S. Patent No. RE46,421 ("'421 Patent"). (*See* Doc. 117).

## A.    DPCC's Bee Traps & Patents

Among other designs, DPCC sells traps that attach a receptacle to the side wall of a wooden house. DPCC calls these models "BEES-N-ST" (or "ST"), "BEES-N-AST" (or "AST"), and "BEES-N-BM" (or "BM"). The court collectively calls them "Side-Mounted Traps" for purposes of this opinion. Here are some examples of DPCC's Side-Mounted Traps:

 

(Doc. 115, p. 6).

The parties agree that on July 27, 2004, the United States Patent and Trademark Office ("USPTO") issued the '611 Patent entitled "Carpenter Bee Trap" to Bruce H. Prince. Bruce Prince's estate subsequently assigned all right, title, and interest in the '611 Patent to Clifford Davis Jr. ("Davis"), DPCC's managing member. Davis later assigned all right, title, and interest in the '611 Patent to DPCC. The parties agree that on or before March 27, 2021, the terms of the '611 Patent expired, and that the patent is no longer in force. (*See* Doc. 163, p. 3; Doc. 170, p. 3).

The parties also agree that on December 11, 2021, the USPTO issued the '426 Patent entitled "Insect Trap" to Davis as the sole named inventor. And the

parties agree that on September 24, 2023, the USPTO issued the '384 Patent entitled "Insect Trap" to Davis. The '426 and '384 Patents each include only a single claim. But Blazer denies that these patents are valid for at least the reason that they do not satisfy the conditions for patentability set forth in Title 35 of the U.S. Code.

In early 2020, DPCC launched a new line of carpenter bee traps ("New Design"). The New Design is pictured below:





(Doc. 115, p. 10). In another case before this court, Blazer alleges that the New Design infringes his '421 Patent.

**B.     Blazer's Bee Traps & Patents**

Like DPCC, Blazer also makes and sells carpenter bee traps, and has been issued patents related to his inventions. On June 6, 2017, the USPTO issued U.S. Patent Reissue No. 46,421 ("'421 Patent") entitled "Carpenter Bee Traps" to Brian Blazer and his brother, Bradley Blazer. The '421 Patent is a reissue of U.S. Patent No. 8,375,624.

Claim 1 of the '421 Patent requires that an infringing bee trap comprise both a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light and a receptable adapter.

Claim 13 of the '421 Patent, which Blazer added in the reissue, requires that an infringing trap comprise a receptable adapter located at the exit opening of the trap entrance unit, wherein the receptable adapter is adapted to receive at least one receptable and is adapted to allow at least some ambient light to enter the interior of the trap entrance unit via the exit opening.

This court previously construed the claims of the '421 Patent. (*See* Doc. 67). But in 2022, the Federal Circuit construed Claim 13 of the '421 Patent. *See Blazer v. Best Bee Bros., LLC, et al.*, No. 22-1033, 2022 WL 16954848, slip op. at 11 (Fed. Cir. Nov. 16, 2022). The Federal Circuit defined "receptable adapter" as a "structure configured to receive and help retain a receptable," and that construction is binding on this court.

After the '421 Patent was issued to Blazer, Blazer analyzed DPCC's Side Mounted Traps and determined that the Side Mounted Traps infringe the claims of the '421 Patent. That determination started this case.

**C.     Infringement Allegations**

Again, the parties have a long history of accusing each other of patent infringement.

   *1. Blazer's Infringement Allegations*

On February 16, 2018, Blazer's counsel emailed Amazon alleging that DPCC's trap infringed Blazer's '421 Patent, and asked Amazon to remove the listing. (Doc. 159-11, pp. 12–13). On August 8, 2018, Blazer's counsel emailed Amazon, again asking Amazon to remove DPCC's listing. (Doc. 159-11, pp. 15–16). At some point after receiving the first notice, Amazon removed the Side

4

Mounted Traps from its website. DPCC claims that as a result of Blazer's communications with Amazon, DPCC has been unable to sell any bee trap or any other, *non-related product*, on Amazon since March 4, 2018. DPCC believes it is at serious risk of future claims of infringement from Blazer.

On February 21, 2018, Amazon informed DPCC of Blazer's report of infringement. In response to this notice, DPCC's counsel sent a letter, dated March 2, 2018, to Blazer's counsel. The letter expressed DPCC's opinion that it had absolute intervening rights pursuant to 35 U.S.C. § 252 to sell or offer for sale its entire remaining inventory of Side-Mounted Traps. (Doc. 115-9). DPCC explained that it had absolute intervening rights as to its entire inventory of Side-Mounted Traps because all "those bee traps were ordered, manufactured, paid for and received" before the June 6, 2017 issue date of Blazer's reissued '421 Patent. (Doc. 115-9, p. 2). DPCC attached to its letter (1) sales contracts, (2) a commercial invoice, packing lists from DPCC's manufacturer, and (3) shipping invoices for its Side-Mounted Traps. (Doc. 115-9, pp. 3–15).

DPCC's letter explained that these documents "establish that DPCC ordered, had manufactured, paid for and received a total of 89,610 bee traps in 2015" and "182,272 bee traps in 2016, all of which are sold with side mounted receptables." (*Id.* at pp. 3–4). Blazer disputes this characterization for four reasons. First, Blazer says these documents only show that DPCC ordered and received wooden housings from its Chinese supplier (rather than completely manufactured Side-Mounted Traps). Second, Blazer says no document shows that DPCC ordered and received before June 6, 2017, any other parts used for the manufacture of DPCC's Side-Mounted Traps (*e.g.*, receptables and receptable lids). Third, the documents do not establish that DPCC manufactured its entire remaining inventory before June 6, 2017. Fourth, the documents reflect only the DPCC ordered and received 162,272 wooden housings—not 182,272. And fifth, the documents do not reflect that DPCC paid for any of the wooden housings it ordered and received from its Chinese supplier.

On March 28, 2019, Blazer contacted Home Depot, Inc. ("Home Depot") alleging that the Side Mounted Traps being sold by DPCC on Home Depot's website infringe the '421 Patent. (*See* Doc. 115-12). On May 9, 2019, Blazer's

counsel sent Home Depot a letter making similar allegations. (*See* Doc. 115-13). The letter asked Home Depot to "immediately remove the referenced carpenter bee trap listings" from Home Depot's website and "immediately cease selling any of the referenced carpenter bee traps" at retail locations. (Doc. 115-13, p. 2). Despite these demands, nothing in the parties' evidentiary submissions suggests that Home Depot stopped selling the Side Mounted Traps.

## 2. *Motion for Partial Summary Judgment & Subsequent Inspection*

On April 13, 2020, DPCC filed its Motion for Partial Summary Judgment. (Doc. 44). In that motion, DPCC sought judgment on its favor as to Count VI of its Corrected Second Amended Complaint, in which DPCC requested declaratory judgment that it had absolute intervening rights to sell or offer for sale its remaining inventory of Side-Mounted Traps. (Doc. 44, p. 2). DPCC also sought judgment in its favor as to Count VII of Blazer's counterclaim, in which Blazer asserted claims of infringement by DPCC's Side-Mounted Traps.

This court entered its Partial Consent Judgment Order on February 8, 2021, incorporating Blazer's stipulation "that DPCC is entitled to sell or offer for sale its remaining inventory of side-mounted traps but only to the extent that side-mounted traps were purchased or manufactured by DPCC prior to June 6, 2017" and the parties stipulation that "the court should grant summary judgment for DPCC on Count VII [of Blazer's counterclaim] for all side-mounted traps bought or manufactured by DPCC before June 6, 2017. (Doc. 71, p. 2). The court granted DPCC's Partial Summary Judgment motion as to Count VI and DPCC's complaint and Count VII of Blazer's counterclaims, but expressly limited the judgment "only to the use and sale of side-mounted traps acquired before June 6, 2017—the reissue date of the '421 Patent." (*Id.*).

On March 2, 2022, counsel for Blazer inspected DPCC's storage facility in Prattville, Alabama. Blazer asserts that the inspection revealed that most of the inventory held by DPCC at the storage facility was only parts for use in manufacture of Side-Mounted Traps, and *not* fully manufactured carpenter bee traps ready for sale. During the inspection, Mr. Davis allegedly explained that DPCC generally assembled its Side-Mounted Traps from the parts maintained after it received orders for those traps from customers and distributors.

After the inspection, Blazer propounded written discovery requests of DPCC. His goal was, in part, to discover information about when DPCC's Side-Mounted Traps were manufactured. In response to an interrogatory, DPCC stated that "[f]rom late 2015 until present, all bee traps are completely assembled in China and then distributed from a facility in North Carolina. DPCC stored side mounted traps in Prattville, Alabama and has stored other models of traps in North Carolina." (Doc. 159-20, pp. 11–13).

### 3. DPCC's Infringement Allegations

DPCC has also alleged patent infringement. DPCC alleges that Blazer has sold various models of bee traps on his website, www.carpenterbeesolutions.com, that infringed DPCC's patents. These allegedly infringing models included: (1) "The Best Bee Trap"; (2) "The Simple Box Bee Trap"; and (3) "The Super Carpenter Bee Condo."

On March 8, 2016, counsel for DPCC sent a letter to Blazer's counsel. (*See* Doc. 115-4). The letter alleged that some of Blazer's products infringed the '611 Patent, the '426 Patent, and the '384 Patent.

DPCC alleges that now, Blazer's website redirects to www.mybeetrap.com, and offers for sale the following infringing bee traps: (1) the "Cabin Style Bee Trap"; (2) the "Tall Bee Trap"; (3) the "Large Bee Trap"; and (4) the "Milled Bee Trap." (*See* Doc. 115-17). And according to DPCC, these bee traps also infringe DPCC's patents.

## D.   Ongoing Litigation

DPCC filed two complaints against Blazer, which this court consolidated into this one action. DPCC's consolidated complaint contains six counts: (1) Tortious Interference with Business/Contract Relations; (2) Violation of Alabama Code §8-1A-1; (3) Infringement of the '611 Patent; (4) Infringement of the '426 Patent; (5) Infringement of the '384 Patent; (6) Declaratory Judgment and Request for Injunctive Relief. (*See* Doc. 115).

In response, Blazer asserted seven counterclaims against DPCC: (1) Declaratory Judgment of Non-Infringement of the '611 Patent; (2) Declaratory Judgment of Non-Infringement of the '426 Patent; (3) Declaratory Judgment of Non-Infringement of the '384 Patent; (4) Declaratory Judgment of Invalidity of the '611 Patent; (5) Declaratory Judgment of Invalidity of the '426 Patent;

(6) Declaratory Judgment of Invalidity of the '384 Patent; and (7) Infringement of the '421 Patent. (*See* Doc. 117).

Blazer asks the court to grant summary judgment in his favor as to Counts I, II, III, IV, and V of DPCC's Consolidated Complaint, and Counts I, V, VI, and VII of Blazer's counterclaims. DPCC asks the court for partial summary judgment in its favor as to Count VII of Blazer's counterclaim alleging patent infringement, and Count II of DPCC's consolidated complaint. These motions are pending before the court.

Blazer has claimed infringement of the '421 Patent (and the prior version of it) against various parties in other lawsuits. *See Brian Robert Blazer v. Best Bee Brothers LLC, et al.*, Case No. 2:20-cv-480-BHL (E.D. Wis.); *Brian Blazer v. Lowe's Companies, Inc.*, Case No. 6:20-cv-276-ADA (W.D. Tex.); *Brian Blazer d/b/a Carpenter Bee Solutions v. The Home Depot U.S.A., Inc.*, Case No. 6:20-cv-285-ADA (W.D. Tex.); *Blazer v. Chrisman Mill Farms, LLC*, Case No. 5:17-cv-430-REW-MAS (E.D. Ky.); *Blazer v. Amazon.com, Inc.*, Case No. 1:15-cv-1063-SGC (N.D. Ala.); *Blazer v. Ebay, Inc.*, Case No. 1:15-cv-1059-KOB (N.D. Ala.); *Blazer v. Chrisman Mill Farms, LLC*, 1:18-cv-320-VEH (N.D. Ala.).

The parties are involved in two separate civil actions in other federal district courts. These actions were filed by Blazer after DPCC filed its initial complaint here. The actions were filed against DPCC's customers and distributors in Texas. *See Blazer v. Lowe's Companies, Inc.*, Case No. 6:20-cv-276-ADA (W.D. Tex.); *Blazer d/ba Carpenter Bee Solutions v. The Home Depot U.S.A., Inc.*, Case No. 6:20-cv-285-ADA (W.D. Tex.). DPCC asserts that these actions were meant to harass DPCC and its customers.

## II.  LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Issues of fact are "genuine" only if a reasonable jury, considering the evidence present, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it might affect the outcome of a case under governing law. *Id*. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the lack of genuine issues of material fact. *Celotex,* 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324.

In a patent case, when the nonmoving party will bear the burden of proof at trial, the moving party discharges its burden at the summary judgment stage by "stating that the patentee [has] no evidence of infringement and pointing to the specific ways in which accused systems [do] not meet claim limitations." *Exigent Tech., Inc. v. Atrana Sols., Inc.,* 442 F.3d 1301, 1309 (Fed. Cir. 2006).

## III. DISCUSSION

The court divides the discussion into six parts. First, the court addresses the motion to strike Dr. Rotramel's declaration (doc. 168). The court then addresses each issue raised in Blazer's motion for summary judgment (doc. 158). The discussion of Blazer's motion incorporates all issues and arguments raised in DPCC's motion for partial summary judgment.[1]

### A.   Blazer's Motion to Strike

Blazer asks the court to strike the declaration of Dr. George L. Rotramel ("Dr. Rotramel"), DPCC's technical expert witness. (Doc. 168).

Blazer files his motion under Federal Rule of Civil Procedure 37(c)(1). That Rule provides:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Blazer argues that the declaration should be excluded because it comes from an unauthorized, untimely expert report.

This court's then-operative scheduling order set the amended/supplemental expert report deadline as January 13, 2023. (*See* Doc. 152). Blazer says that on January 27, 2023—three days before the then-in-effect dispositive motions deadline—Blazer's counsel learned for the first time that DPCC was considering filing a declaration of Dr. Rotramel in support of its motion for partial summary judgment. To be sure, DPCC served its first expert report of Dr. Rotramel on May 27, 2022. (*See* Doc. 159-15, pp. 5–23). And DPCC concedes that Dr. Rotramel's declaration was offered just over one month after discovery closed—on the day that dispositive motions were due. (*See* Doc. 177, p. 6). So DPCC concedes that the declaration was offered later than required under Federal Rule of Civil Procedure 26.

---

[1] DPCC moved for partial summary judgment in its favor as to Count 2 of its Consolidated Complaint, and Count 7 of Blazer's counterclaim. Blazer moved for summary judgment in his favor on those two claims as well, so the discussions are combined.

DPCC bears the burden of showing that its failure to disclose Dr. Rotramel's expert testimony as required by Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009) (citation omitted). DPCC claims it was harmless. When considering whether a party's failure is harmless, courts examine these factors: (1) the non-disclosing party's explanation for failing to disclose; (2) the information's importance; and (3) any prejudice to the opposing party if the information had been admitted. *Ajomale v. Quicken Loans, Inc.*, 2020 WL 1308333, at *4 (S.D. Ala. Mar. 19, 2020), *affirmed*, 860 Fed. App'x 670 (11th Cir. 2021) (per curiam) (citations omitted). Other relevant considerations include whether the undisclosed evidence was a surprise to the opposing party, whether the non-disclosing party acted in bad faith, and whether the prejudice can be cured. (*Id.*) (citations omitted).

DPCC has met its burden with respect to each factor.

1. <u>Explanation</u>: DPCC explained that it submitted the declaration to "merely clarify, or clean up, Dr. Rotramel's earlier report for purposes of summary-judgment review." (Doc. 177, p. 4). In other words, DPCC offered the declaration so the court could more clearly understand the relevant portions of Dr. Rotramel's expert report. The court finds that DPCC's explanation is accurate—the declaration is a more simplified version of the timely filed expert report. Given the volume of materials that the court needed to review here, the court appreciates DPCC's effort to simplify and highlight the most relevant evidence. The court accepts DPCC's explanation as valid and appropriate, and finds that this factor weighs in DPCC's favor.

2. <u>Importance</u>: DPCC has shown that the declaration is important. Among other things, it helps establish the validity of the '421 Patent, a disputed issue at the summary judgment stage. And the Eleventh Circuit disfavors excluding such evidence. *See Pitts v. HP Pelzer Auto. Sys.*, 331 F.R.D 688, 697 (S.D. Ga. 2019) (citing *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014)) ("Excluding the evidence symbolizes the Court turning a blind eye to facts at the heart of this dispute. Such an act cuts against the Court's overarching goal for resolving litigation. As often stated in the Eleventh Circuit, courts have a strong preference for deciding cases on the merits."). So the court finds that this factor weighs in DPCC's favor.

11

3. <u>Prejudice to Blazer</u>: While the declaration was later, the declaration's contents do not deviate from the position that Dr. Rotramel took in his timely filed expert report. Dr. Rotramel's declaration is materially consistent with his expert report and deposition testimony. (*See* Doc. 125-15, pp. 5–23 (full report); Doc. 161-18 (declaration)). The declaration is merely a summary of key points taken from the longer and more detailed expert report. And importantly, the expert report was disclosed on time.

The Eleventh Circuit and district courts generally permit tardy declarations when they are materially consistent with earlier reports and deposition testimony. *See, e.g.*, *Miele v. Certain Underwriters at Lloyd's of London*, 559 F. App'x 858, 861–62 (11th Cir. 2014) (affirming district court's refusal to exclude untimely declaration that contained no previously undisclosed conclusions); *Edmonson v. Caliente Resorts, LLC*, 2017 WL 10591833, at *13 (M.D. Fla. Aug. 31, 2017) (denying motion to strike declaration filed two months after discovery's close because it was materially similar to expert report); *Venerus v. Avis Budget Rental, LLC*, 2016 WL 11742054, at *5 (M.D. Fla. Apr. 15, 2016) (refusing to strike expert's tardy supplemental affidavit because his opinion did not change or evolve despite new reference to law).

Blazer also explains in his motion that DPCC filed a declaration of Dr. Rotramel on July 25, 2022, which it withdrew on December 8, 2022. (*See* Doc. 168, p. 2). And Blazer concedes that the "Second Rotramel Declaration is substantively identical to the First Rotramel Declaration." (*Id.*). The court allowed the parties to re-file their motions for summary judgment in the light of the Federal Circuit's claim construction ruling. (*See* Doc. 153). But it should have been no surprise to Blazer that DPCC would support its refiled motion with favorable evidence already available to DPCC. So the court finds that Blazer is not prejudiced by the admission of this declaration because the substance was timely disclosed. And Blazer should not have been surprised that DPCC would offer this evidence—based on a timely filed expert report—with its refiled motion.

The court also finds that nothing in the record suggests that DPCC acted in bad faith in proffering Dr. Rotramel's declaration.

Because the court concludes that DPCC has met its burden of showing that its failure to disclose Dr. Rotramel's expert testimony as required by Rule 26 was substantially justified or harmless, the court will **DENY** the motion to strike.

Blazer makes other arguments about the substance of Dr. Rotramel's expert report. For example, Blazer argues that Dr. Rotramel did not provide a complete statement of his opinions about obviousness, as Federal Rule of Civil Procedure 26(a)(2)(B) requires. But the motion before the court is a motion to strike the declaration of Dr. Rotramel. And Blazer clarifies in his reply brief that his motion is "not a request to strike the Rotramel report." (Doc. 179, p. 4). So the court will not opine on the merits of Blazer's arguments about the expert report itself.

## B.    DPCC's Consolidated Complaint: Count 1

In Count 1 of DPCC's Consolidated Complaint, DPCC alleges that Blazer intentionally interfered with DPCC's business and contractual relationship with Amazon and attempted to interfere with DPCC's business and contractual relations with Home Depot and other customers. Blazer asks the court to grant summary judgment in his favor on Count 1. Blazer's first argument is that he is entitled to summary judgment because DPCC never had absolute intervening rights to sell or offer to sell the Side-Mounted Traps.

### 1.  Absolute Intervening Rights Under 35 U.S.C. § 252

Counts 1 and 2 are based on DPCC's claim that it had absolute intervening rights under 35 U.S.C. § 252 to sell or offer for sale its Side-Mounted Traps, that Blazer knew that DPCC had such rights, and that, despite this knowledge, Blazer continued to claim that DPCC's Side-Mounted Traps infringed his '421 Patent. So the court starts by discussing intervening rights.

35 U.S.C. § 252 provides in part:

> A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by

the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

In other words, as the Federal Circuit has explained, "[t]he specific things made before the date of reissue, which infringe the new reissue claims, are absolutely free of the reissued patent and may be used or sold after the date of reissue without regard to the patent." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1221 (Fed. Cir. 1993) (citing legislative history of § 252).

"The doctrine of intervening rights first developed as courts recognized that permitting substantive changes to the scope of patent claims through post-issuance procedures left 'the door . . . open for gross injustice' where a third party, having already begun to make, use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent." *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361 (Fed. Cir. 2012) (citing *Sontag Chain Stores Co. v. Nat'l Nut Co.*, 310 U.S. 281, 293–95 (1940)). "In such situations, the defendant acquired at least a right to continue to use the [articles] as if it held a license therefor under the reissued patent." *Id.* (citations omitted). The concept of intervening rights was codified by the Patent Act of 1952. *See* 35 U.S.C. § 252.

To establish entitlement to absolute intervening rights, DPCC must show that (1) a tangible article or product was "made, purchased, offered to sell, or used within the United States, or imported into the United States" prior to reissue; and (2) the product did not infringe any claim of the original patent (*i.e.*, that the claims in the '624 Patent and the '421 Patent are not "substantially identical"). *Shockley v. Arcan, Inc.*, 246 F.3d 1349, 1359 (Fed. Cir. 2001); 35 U.S.C. § 252.

1. <u>Made or Imported before Reissue</u>: There is at least a genuine dispute of material fact as to whether DPCC's inventory of Side-Mounted Traps were ordered and in existence before the June 6, 2017 issue date of the '421 Patent.

Evidence in the record, viewed in the light most favorable to DPCC, shows that DPCC ordered, paid for, and received 271,882 Side-Mounted Traps in 2015 and 2016. (*See* Doc. 161-12, pp. 5–15) (various sales contracts, invoices, and packing lists).

Blazer says that this evidence is not enough. He says the record only shows that DPCC purchased *wooden housing units*—in other words, incomplete bee traps from which complete carpenter bee traps could have been made. According to Blazer, nothing proves that DPCC constructed the bee traps before his patent was reissued.

For starters, the court is not sure that Blazer's interpretation of the statute is correct. The statute covers the rights of a person who "made," "purchased," "*or* imported into the United States, anything presented by the reissued patent . . ." (emphasis added). Use of the disjunctive "or" between "made" and "imported" suggests that, to trigger intervening rights, the product need not be fully assembled when it is imported. If that reading is correct, then DPCC had intervening rights once the parts were imported, which everyone agrees was before Blazer's patent was reissued.

At any rate, other courts have held that the type of evidence offered by DPCC can establish absolute intervening rights. *See Steuben Foods, Inc. v. Nestle USA, Inc.*, 2016 WL 5858930, at * 1–2 (W.D.N.Y. Oct. 7, 2016). For example, in *Steuben Foods*, the court, in considering absolute intervening rights under 35 U.S.C. § 307 (which applies to reexamined patents, but is considered the same scope and law as reissued patents under 35 U.S.C. § 252), the court considered whether the product in that case—a filling machine—had to exist before the critical date. *Id.* The court answered no, the machine did not have to exist for absolute intervening rights to apply. *Id.* Instead, the court held, all that had to happen is that the alleged infringer ordered the machine. *Id.*

2. Infringement of original patent: The court finds that the claims of the '624 Patent and the '421 Patent are not "substantially identical." Indeed, Blazer already conceded this point. (*See* Doc. 161-16) (Defendant's Response to Plaintiff's Motion for Partial Summary Judgment) ("Blazer will stipulate that DPCC is entitled to sell or offer for sale its remaining inventory of Side Mounted Traps but only to the extent that said inventory of Side Mounted

Traps were purchased or manufactured by DPCC prior to June 6, 2017, which is the issue date of the '421 Patent."). (Doc. 161-16, p. 5). The court construes this stipulation to mean that while Blazer may have reserved his right to contest the date that certain Side Mounted Traps were made or purchased, he agreed that the second requirement—that the claims of the '624 Patent and '421 Patent are not "substantially identical"—was met.

DPCC has presented enough evidence to survive summary judgment on the issue of absolute intervening rights. So the court will **DENY** Blazer's motion for summary judgment on the issue of absolute intervening rights.

### 2. *Tortious Interference (Count 1)*

The parties agree that the elements of tortious interference in Alabama are (1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage. *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

1. <u>DPCC's prima facie case</u>: Viewing the evidence in the light most favorable to DPCC, DPCC can make out a prima facie case of tortious interference, at least with respect to its relationship with Amazon. Indeed, for purposes of his motion for summary judgment, Blazer "assumes that DPCC can make out a *prima facie* claim for tortious interference." (Doc. 163, p. 23). The evidence shows that DPCC and Amazon had a business relationship in which DPCC was selling its Side-Mounted Traps in the Amazon marketplace. Blazer knew of this relationship, as evidenced by his submission of the infringement notice to Amazon. Blazer was not a party to the business relationship between Amazon and DPCC. Evidence before the court suggests that Blazer tortiously interfered with that relationship by submitting the infringement notice of Amazon, and Blazer continues to interfere with that relationship by refusing to allow DPCC to sell *any* bee traps on Amazon, including the "New Design" bee trap, even though Blazer does not contend that they infringe his patent. And lastly, DPCC suffered damage as it cannot sell any products on Amazon. (*See* Doc. 166-4, expert report from DPCC's damages expert detailing DPCC's damages). Thus, the court finds that DPCC establish a prima facie claim of tortious inference.

While Blazer concedes that DPCC can make out a prima facie case related to Amazon, he argues that DPCC has not alleged or provided evidence that Blazer succeeded in any attempt to interfere with DPCC's business and contractual relations with Home Depot and other customers. The court agrees. While DPCC presented (1) a March 28, 2019 email from Blazer to Home Depot alleging infringement of the '421 Patent (doc. 115-12), and (2) a May 9, 2019 letter to Home Depot (doc. 115-13), nothing in the record shows that DPCC was ever prohibited from selling at Home Depot or elsewhere, or that its business relationship was damaged in any way. Indeed, DPCC only alleges that "Blazer . . . *attempted* to interfere with DPCC's business and contractual relations with Home Depot and other customers." (Doc. 115, p. 13). But there is no such thing as "attempted" tortious interference. DPCC appears to concede this point, as it did not respond to Blazer's argument, and only presented arguments related to Amazon.

2. <u>Blazer's affirmative defense</u>: While acknowledging that DPCC can establish a prima face case related to Amazon, Blazer says he is entitled to summary judgment because his actions were justified. Justification is an affirmative defense. *White Sands Grp.*, 32 So. 3d at 12. It must be pleaded and proved by the defendant. *Id.*; *see also Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003). That means here, Blazer bears the burden of proving justification.

"'Whether a defendant's interference is justified depends upon a balancing of the importance of the objective of the interference against the importance of the interest interfered with, taking into account the surrounding circumstances.'" *White Sands Grp.*, 32 So. 3d at 12 (quoting *Restatement (Second) of Torts § 767 (1979)*). In determining justification, Alabama courts may consider these factors: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *Id.*

Blazer concedes that the sixth factor (factor (f), proximity of Blazer's conduct to the interference) supports DPCC. But Blazer says all other factors weigh in his favor.

The first factor—the nature of the actor's conduct, and the second factor—the actor's motive, favor DPCC. The relevant conduct is Blazer's communication to Amazon in which he reported that DPCC's Side-Mounted Traps infringed the '421 Patent. When evaluating the actor's conduct, the Restatement (Second) of Torts Section 767 (where the factors come from) notes that the prosecution or threatened prosecution of civil suits could create improper conduct neutralizing any claim of justification. And DPCC argues that Blazer's infringement notice, coupled with his litigious history, constituted a threat of suit against DPCC. DPCC also notes that Amazon was under a threat of litigation in that if it did not remove the Side Mounted Traps, Amazon had a reasonable suspicion that Blazer would file suit against Amazon, as he had done before. The court finds that this evidence, viewed in the light most favorable to DPCC, renders the first factor favorable to DPCC.

The third factor—the interests of the other with which the actor's conduct interferes—also favors DPCC. Prior to Blazer's outreach to Amazon, DPCC was selling Side Mounted Traps. And evidence in the record allows a reasonable factfinder to determine that DPCC had absolute intervening rights to sell those products. At this stage, on this claim, the court must view the evidence in the light most favorable to DPCC. So this factor weighs in DPCC's favor.

The fourth factor—the interests sought to be advanced by the actor— also favors DPCC. When viewed in the light most favorable to DPCC, the evidence allows a reasonable factfinder to determine that Blazer's interest was a private one—selling more traps and making more money. Of course, Blazer argues that his interest was in preserving his patent rights. And that is a valid, protectable interest. But evidence in the record allows a reasonable factfinder to conclude that DPCC was not infringing Blazer's rights, and thus this factor favors DPCC. For similar reasons, the fifth factor—the social interests in protecting the freedom of action of the actor and the contractual interests of the other—favors DPCC.

18

And the final factor—the relations between the parties—also favors DPCC. The parties have a long history of litigation between them. The record, and the parties' interactions before this court make clear that the parties are not friendly competitors.

When viewing the evidence in the light most favorable to DPCC, the court finds that all justification factors could go in DPCC's favor. And even if Blazer had some justification, such a fact-intensive inquiry is better left for a jury. In other words, the facts here do not establish justification as a matter of law.

—

For the reasons stated above, the court will **DENY** Blazer's motion for summary judgment on Count 1 with respect to tortious interference with DPCC's relationship with Amazon, and **GRANT** Blazer's motion for summary judgment on Count 1 with respect to tortious interference with DPCC's relationship with Home Depot and other customers.

## C.    DPCC's Consolidated Complaint: Count 2 (both moved for SJ)

Count II of DPCC's Consolidated Complaint alleges a violation of Alabama Code § 8-12A-1, *et seq*. DPCC alleges that Blazer and/or his agents have continued to make bad-faith claims of infringement of the '421 Patent, despite knowledge of DPCC's absolute intervening rights to sell or offer for sale the Side Mounted Traps in violation of Ala. Code § 8-12A-2(a) and (d).

Alabama Code § 8-12A-1, *et seq*. creates a statutory framework that protects Alabama residents against "bad faith" assertions of patent infringement. The statute gives the "target" of a bad-faith assertion of patent infringement a cause of action for "a determination of whether the patent infringement assertion was made in bad faith." *Id*. A prevailing plaintiff may have a right to equitable relief, damages, court costs, attorneys' fees, and exemplary damages. *Id*. at (d).

The statute defines certain factors that courts may consider as evidence that a person made an assertion of patent infringement in bad faith. *See* Ala. Code. §§ 8-12A-2(e). Among other factors, the statute allows courts to consider (1) whether prior to sending the demand letter, the person failed to conduct an analysis comparing the claims in the patent to the target's products; and (2)

whether the demand letter alleging patent infringement is meritless, and the person knew, or should have known, that the claim or assertion is meritless. *See* Ala. Code. § 8-12A-2(e)(2) and (6). The statute also includes a catchall consideration: "[a]ny other factor the court finds relevant." *See* Ala. Code. § 8-12A-2(e)(8).

Blazer moves for summary judgment on Count 2 because, according to him, his assertion of infringement was made "in good faith because DPCC had no absolute intervening right—or any other right—to sell" the Side Mounted Traps. And Blazer explains that prior to communicating with Amazon, he thoroughly investigated and analyzed DPCC's Side Mounted Traps, and concluded reasonably and in good faith that the traps infringed his '421 Patent.

DPCC also moves for summary judgment on this issue. DPCC argues that it is entitled to summary judgment on liability as to Count 2 because the undisputed facts show that Blazer's continued claims of infringement of the '421 Patent, at least as they relate to the Side Mounted Traps, are meritless and both Blazer and his counsel should have known that such claims were meritless. (*See* Doc. 162, p. 33). Despite this knowledge, according to DPCC, Blazer and his counsel persisted in a campaign of harassment of DPCC and its customers. (*Id.*).

But for the reasons explained in the previous section, the court finds that there is a genuine dispute of material fact as to whether DPCC had absolute intervening rights. And evaluating the § 8-12A-2(e) factors raise factual questions that should be resolved by a jury. So the court will **DENY** Blazer's motion for summary judgment on Count 2, and **DENY** DPCC's motion for summary judgment on Count 2.

## D. DPCC's Consolidated Complaint: Count 3 & Blazer's Counterclaim: Count 1 (Issues re: '611 Patent)

In Count 3 of DPCC's consolidated complaint, DPCC alleges willful direct infringement of Claims 1, 4, and 6 of the '611 Patent. DPCC alleges that Blazer has infringed and currently infringes at least claims 1, 4, and 6 of the '611 Patent by selling or offering for sale carpenter bee traps called: (1) The Best Bee Trap, (2) The Simple Bee Trap, and (3) The Super Carpenter Bee Trap. (*See* Doc 163, p. 35 n. 3).

And in Count 1 of his counterclaim, Blazer asks the court for a declaration that his traps do not infringe the '611 Patent. Blazer moves for summary judgment on both claims. The ultimate issue is whether Blazer's traps infringe DPCC's '611 Patent.

Of the three claims at issue, Claim 1 is the only independent claim. Claims 4 and 6 depend on Claim 1, and therefore, incorporate every element of Claim 1. Accordingly, to infringe any of these claims of the '611 Patent, Blazer's accused products must meet at least all of the limitations of Claim 1. Among its limitations, Claim 1 requires that the housing of the carpenter bee trap of the invention must "contain[ ] no bait." (*See* Doc. 159-4). The court has construed the term "bait," for purposes of the '611 Patent to mean "a substance that attracts bees." (Doc. 67, p. 8).

It is true, as Blazer says, that evidence in the record suggests that Blazer applied a proprietary blend of substances known to attract carpenter bees (*i.e.*, "bait") to his traps. (*See* Doc, 159-7, p. 27 (Blazer's deposition)). But some evidence cuts the other way. For example, Anthony Robinson ("Robinson), who was once a friend and business associate of Blazer, explained in his deposition that he personally witnessed Blazer making bee traps "from start to finish." (Doc. 161-20, p. 8). And according to Robinson, *none* of these traps contained a bait, much less a bait sprayed on or somehow applied to the traps. (*Id*. at pp. 8–9).

A jury may well believe Blazer's testimony over Robinson's testimony. But that credibility determination is for a jury to make. Because DPCC is the non-moving party, the court must construe the facts in the light most favorable to DPCC. Here, there is evidence to support DPCC's claim that at least some of Blazer's traps did not include bait. So the court must **DENY** Blazer's motion for summary judgment on Count 3 and **DENY** Blazer's motion for summary judgment on Counterclaim 1.

## E.   DPCC's Consolidated Complaint: Counts 4 & 5 & Blazer's Counterclaim: Counts 5 & 6 (Issues re: '426 and '384 Patents)

In Count 4 of DPCC's consolidated complaint, DPCC alleges infringement of the '426 Patent. And in Count 5, DPCC alleges infringement of the '384 Patents. In Count 5 of his counterclaim, Blazer asks the court for a

declaration that the '426 Patent is invalid. And in Count 6 of his counterclaim, Blazer asks the court for a declaration that the '384 Patent is invalid.

Blazer moves for summary judgment on all these claims. Because the issues, arguments, and evidence are related, the court will consider the claims together.

### 1. Validity of DPCC's patents (Counterclaims 5 and 6)

The first issue is whether there is a genuine dispute of material fact as to whether the '426 Patent and the '384 Patent (collectively, the "Design Patents") are valid.

Blazer bears the burden of proving invalidity by clear and convincing evidence. *Microsoft v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("invalidity of a design patent must be established by clear and convincing evidence").

The Patent Act provides that a patent application must "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . ." 35 U.S.C. § 112(a).

The description must be sufficiently definite. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 902 (2014) (holding "[a] lack of definiteness renders invalid 'the patent or any claim in suit'") (citing 35 U.S.C. § 282, ¶ 2(3)). It must "particularly point[] out and distinctly claim[] the subject matter which" the inventor regards as his invention. 35 U.S.C. § 112(b). A design patent is indefinite under 35 U.S.C. § 112 if one skilled in the art, viewing the design as an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure. *In re Maatita*, 900 F.3d 1369, 1377 (Fed. Cir. 2018). Specifically, "[f]or a design patent to be invalid for indefiniteness, errors and inconsistencies in the patent drawings must be material and of such magnitude that the overall appearance of the design is unclear." *Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 589 (W.D. Pa. 2013) (internal citations, quotations, and emphasis omitted). The definite test considers whether a person of skill in the art ("POSITA"), viewing the design from the perspective of an ordinary observer,

would understand the scope of the design with reasonable certainty based on the claim and the visual disclosure. *In re Maatita*, 900 F.3d at 1377.

On May 27, 2022, Dr. Rotramel provided an expert report which, among other things, found that certain bee traps offered for sale by Blazer infringe the Design Patents. Dr. Rotramel could compare the claims and figures of the patents with the accused bee traps sold by Blazer. This evidence suggests that the Design Patents are not invalid since one of ordinary skill in the art, Dr. Rotramel, was able to view the design from the perspective of an ordinary observer and understand the scope of the design with reasonable certainty based on the claim and visual disclosure. This evidence creates a triable issue of fact related to the validity of the '426 Patent.

Blazer argues that the single claim of the '426 Patent purports to claim two embodiments of a carpenter bee trap that are different in every material way. (*See* Doc. 163, p. 43). Indeed, Blazer points to five alleged differences between two drawings. And Blazer makes a similar argument about the '384 Patent. (*See* Doc. 163, p. 45) (explaining that the '384 Patent purports to claim four embodiments of a carpenter bee trap).

The Federal Circuit has explained that a visual disclosure "may be inadequate—and its associated claim indefinite—if it includes multiple, internally inconsistent drawings." *In re Maatita*, 900 F.3d 1369, 1375 (Fed. Cir. 2018). But the same court also explained "inconsistencies between drawings do not merit a § 112 rejection . . . if they 'do not preclude the overall understanding of the drawing as a whole.'" *Id.* at 1376 (citation omitted). And the same design patent can have multiple embodiments. *In re Rubinfield*, 47 C.C.P.A. 701, 270 F.3d 391, 391 (1959). In other words, different embodiments don't automatically render the Patent invalid.

Accordingly, the court finds that there is a genuine dispute of material fact as to whether the Design Patents are valid. Thus, the court will **DENY** Blazer's motion for summary judgment on Count 5 of Blazer's counterclaim.

### 2. Infringement (Counts 4 and 5)

The next issue is whether there is a genuine dispute of material fact as to whether Blazer infringed the Design Patents.

As explained above, DPCC presented an expert report from Dr. George Rotramel. Among other things, the report concludes that certain bee traps sold or offered for sale by Blazer infringe the Design Patents. At minimum, Dr. Rotramel's report creates a question of fact as to the infringement issue.

Accordingly, the court finds that there is a genuine dispute of material fact as to whether Blazer infringed the Design Patents. So the court will **DENY** Blazer's motion for summary judgment on Counts 4 and 5 of the Consolidated Complaint.

## F.   Blazer's Counterclaim: Count 7 (both moved for SJ)

In Count 7 of his counterclaim, Blazer alleges that DPCC infringed and continues to infringe at least claims 13-17 of Blazer's '421 Patent by selling and/or offering for sale its "Hanging AST Carpenter Bee Trap," "BM Carpenter Bee Trap," and Bottom Mounted Traps. Both parties moved for summary judgment on this Count. DPCC says that the '421 Patent is invalid, and its traps do not infringe. Blazer says he is entitled to summary judgment because DPCC's traps infringe his '421 Patent.

### 1. Validity—Obviousness

Blazer's reissued '421 Patent is presumed valid under 35 U.S.C. § 282. DPCC bears the burden of proving invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

DPCC's first argument is that the Asserted Claims of the '421 Patent are invalid under 35 U.S.C. § 103 over various combinations of the prior art of record here. "While the ultimate question of patent validity is one of law . . . the § 103 condition [obviousness] . . . lends itself to several basic factual inquiries." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).

A patent may not be obtained if the differences between (1) the subject matter sought to be patented and (2) the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter

pertains. 35 U.S.C. § 103. An obviousness analysis is based on several factual inquiries. Relevant considerations include (1) the scope and content of the prior art, (2) the differences between prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

DPCC presents evidence that the Asserted Claims of the '421 Patent are invalid based on obviousness analysis. (Doc. 161-18). But whether the subject matter would have been obvious to a person having ordinary skill in the art to which the subject matter pertains is a question of fact.

### 2. Validity—Original Patent Requirement

DPCC also argues that Claims 13-21 are invalid because Blazer enlarged the scope of his original patent, in violation of 35 U.S.C. § 251(d): "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."

The court agrees with DPCC that Claim 13 enlarged the scope of Claim 1. But § 251(d) allows a reissued patent to enlarge the scope if the application is filed "within two years from the grant of the original patent." *Id.* A quick search of the Patent Office website shows that Blazer filed his application one day before the two-year deadline, and his attorney verified that Blazer was seeking to broaden Claim 1:

I believe the original patent to be wholly or partly inoperative or invalid, for the reasons described below. (Check all boxes that apply.)

☐ by reason of a defective specification or drawing.

☑ by reason of the patentee claiming more or less than he had the right to claim in the patent.

☐ by reason of other errors.

At least one error upon which reissue is based is described below. If the reissue is a broadening reissue, a claim that the application seeks to broaden must be identified:

The patentee failed to present additional claims broader than issued independent claim 1 during the original patent examination. This omission renders the patent partly inoperative by failing to protect the disclosed invention to the full extent allowed by law. New independent claim 13 and new dependent claims 14-21 correct this error.

Patent Application # 14/625,478 (filed Feb. 18, 2015). Blazer thus complied with the reissue statute.

—

Because DPCC fails to show that the '421 Patent is invalid, the court proceeds to the infringement analysis.

### 3. Infringement

The patent owner has the burden of proving infringement and must meet his burden by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1998). When an accused infringer moves for summary judgment of non-infringement, such relief may be granted if at least one limitation of the claim does not read on an element of the accused product, either literally or under the doctrine of equivalents. *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005).

Courts apply a two-step analysis to determine whether infringement has occurred. *See PC Connector Sols., LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005); *see also Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) ("An assessment of the likelihood of infringement, like a determination of patent infringement at a later stage in litigation, requires a two-step analysis."). In step one, the court determines the scope and meaning of the patent claims asserted. *Oakley, Inc.*, 316 F.3d at 1339 (citation omitted). This step is often called "claim construction," and is a question of law. *Id.* (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc)). In step two, the properly construed claims are compared to the allegedly infringing device. *Id.* (citation omitted). Step two requires a determination that every claim limitation or its equivalent be found in the accused device. *Id.* (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)). Those determinations are questions of fact. *Id.* (citation omitted). Even so, if there is no genuine issue of material fact on step two, a grant of summary judgment can be proper. *See PC Connector*, 406 F.3d at 1364.

The '421 Patent contains two independent claims: Claim 1 and Claim 13. Both claims require that an infringing bee trap contain a "receptacle adapter." That claim term was recently construed by the Federal Circuit, which defined a "receptacle adapter" as "a structure configured to receive and help retain a

receptable." (Doc. 161-21, p. 11). Claim 13 also requires that the receptable be "located at the exit opening of the trap entrance unit."

DPCC argues that the Carpenter Natural Bee Trap does not contain a receptable adapter, and even if it did, it is not located at the exit opening of the trap entrance unit. Because reasonable minds can differ, this is a question for a jury to decide.

First, a reasonable juror could find that the wooden framing identified as E below is a structure that receives and helps retain the adapter through "friction fit," which the Fed Circuit said fits within Claim 13. *See Blazer* 2022 WL 16954848 *2.



DPCC's argument that wood is porous and thus a bad receptacle that requires screws is a fact issue/argument for the jury.

A reasonable juror could also find that the wooden framing identified as (E) above is "located at the exit opening" of the trap entrance unit, identified as (D). Indeed, the adapter (E) is all around and touching the exit opening (D).

Accordingly, the court will **DENY** Blazer's motion for summary judgment on Count 7 of the counterclaim and **DENY** DPCC's motion for summary judgment on Count 7 of the counterclaim.

## IV. CONCLUSION

For the reasons stated above, the court will **DENY** the motion to strike (doc. 168), **GRANT IN PART** Blazer's motion for summary judgment on Count 1 as it applies to Home Depot and other customers and **DENY IN PART** Blazer's motion for summary judgment on Count 1 as it applies to Amazon. The court will **DENY** Blazer's motion for summary judgment on Counts 2, Count 3, Count 4, and Count 5 of the Consolidated Complaint, and Counterclaim Count 1, 5, 6, and 7. The court will **DENY** DPCC's motion for summary judgment on Count 2 and Counterclaim 7.

The court will enter a separate order that carries out this ruling.

**DONE** on July 5, 2023.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE